IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRENDA L. LUCERO, HEATHER BARTON, ILONA
KOMPANIIETS and CYNTHIA HURTADO,
individually and on behalf of all others similarly
situated,

                   Plaintiffs,

  v.

CREDIT UNION RETIREMENT PLAN
ASSOCIATION, THE BOARD OF DIRECTORS OF
THE CREDIT UNION RETIREMENT PLAN
ASSOCIATION, THE BOARD OF TRUSTEES OF
THE CREDIT UNION RETIREMENT PLAN
ASSOCIATION and JOHN DOES 1-30,

                   Defendants.

OPINION and ORDER

22-cv-208-jdp

---

Plaintiffs are four participants in the Credit Union Retirement Plan Association 401(k) Plan, a multiple-employer plan with more than 20,000 participants and $1.5 billion in assets. Plaintiffs contend that the entities responsible for investing the Plan's assets are violating the Employee Retirement Income Security Act (ERISA) by breaching their fiduciary duties to plan participants. Specifically, plaintiffs say that defendants are failing to control the Plan's recordkeeping and administrative costs. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that plaintiffs haven't alleged enough facts to support their claims. For the reasons explained below, the court concludes that plaintiffs have stated a plausible claim, so the motion to dismiss will be denied.

ANALYSIS

A. **Standing**

A threshold jurisdictional requirement in every federal lawsuit is standing, which requires the plaintiff to show three things: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury "is likely to be redressed" if the plaintiff succeeds on the lawsuit. by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In this case, the parties agree that excess fees qualify as an injury in fact, that the fees are traceable to defendants' conduct, and that the fees would likely be reduced if plaintiffs prevail on this lawsuit. But defendants contend that plaintiffs' standing is limited to the fees charged to the plaintiffs themselves and does not extend to the fees charged to participants of another employer's plan.

This argument is premature. Courts do not dismiss *parts* of claims at the pleading stage. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Plaintiffs have standing to challenge any excessive fees charged to them, and that's all that matters for the purpose of defendants' motion to dismiss. Defendants rely on *Albert v. Oshkosh Corporation*, 47 F.4th 570, 577 (7th Cir. 2022), but the question in that case was about standing to assert particular claims; it wasn't about the scope of available relief on the claim. That issue may be relevant to deciding what the scope of any proposed class should be, but the court need not decide the issue now.

B. **Merits**

Plaintiffs are asserting two claims: (1) the Board of Trustees of the Credit Union Retirement Plan Association breached its duty of prudence by charging the Plan excessive

2

recordkeeping and administration fees;[1] and (2) the other defendants breached their duty to monitor the trustees by doing nothing to stop the trustees from acting imprudently. Defendants seek dismissal of both claims.[2] Plaintiffs refer to the Board of Trustees as the "Committee" throughout their complaint, so the court will do the same for the purpose of consistency. Plaintiffs define "recordkeeping" to cover of a wide range of administrative services.[3]

On a motion to dismiss, the question is whether the plaintiffs provided defendants with fair notice of their claims and alleged facts plausibly suggesting that they are entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). The court concludes that plaintiffs have met that standard on both claims.

1. **Duty of Prudence**

The parties agree for the purpose of the motion to dismiss that the Committee is a plan fiduciary that may be sued under ERISA and that the Committee has a duty to act prudently.

---

[1] Plaintiffs refer generally in their complaint and brief to "Defendants" breaching the duty of prudence, but plaintiffs assert the claim against the Board of Trustees (and its members) only, presumably because the board was responsible for managing the Plan's investments. *See* Dkt. 1, ¶¶ 31–32, 94.

[2] In their opening brief, defendants observe that the complaint makes "a passing reference" to defendants' duty of loyalty under 29 U.S.C. § 1104(a), but plaintiffs don't allege any facts suggesting a breach of that duty. Plaintiffs say nothing about this theory in their opposition brief, so the court will assume that plaintiffs aren't asserting a claim for a breach of the duty of loyalty.

[3] Plaintiffs identify the following services as examples of recordkeeping: transaction processing, administrative services related to converting a plan from one recordkeeper to another, participant communications, maintenance of an employer stock fund, plan document services, plan consulting services, accounting and audit services, including the preparation of annual reports, compliance support, compliance testing to ensure the plan complies with U.S. Internal Revenue Service nondiscrimination rules, loan processing, brokerage services/account maintenance, distribution services, processing of qualified domestic relations orders. Dkt. 1, ¶¶ 73–76.

That duty is set forth in 29 U.S.C. § 1104(a)(1)(B), and it requires the fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." The duty includes "choosing wise investments and monitoring investments to remove imprudent ones." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

The parties also agree that the duty of prudence under ERISA doesn't require the fiduciary to limit fees below a predetermined threshold. *See Albert*, 47 F.4th at 579 ("[T]he ultimate outcome of an investment is not proof of imprudence." (internal quotation marks omitted)). Rather, "courts examine both the process used by the fiduciaries to reach their decision as well as an evaluation of the merits." *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014).

In this case, like many cases involving claims for breach of fiduciary duty, plaintiffs don't know what process the fiduciary used to determine the fees paid for recordkeeping and administration, so plaintiffs must rely on circumstantial allegations to support a plausible claim. Plaintiffs rely on the following allegations in their complaint:

1) The Plan's total costs are higher than plans of a similar size. During the class period, the Plan had assets between $633 million and nearly $1.6 billion, and there were between 9,249 and 20,728 participants in the Plan. Dkt. 1, ¶¶ 53, 88. The Plan's total costs were .33 percent of total assets in 2020 and .43 percent in 2018. Dkt. 1. ¶¶ 53, 70. According to a study by the Investment Company Institute, the average asset-weighted total plan costs of plans worth more than $1 billion was .24 percent in 2019 and the median total plan cost for the same group was .28 percent in 2018. *Id.*, ¶ 69.[4]

---

[4] The complaint says that the average asset-weighted total plan cost was .22 percent, but, as defendants point out, the study says .24 percent. Dkt. 20-3, at 56. The 10th percentile was .15 percent and the 90th percentile was .45 percent. *Id.* at 57. The study says that "total plan costs" include "asset-based investment management fees, asset-based administrative and advice fees, and other fees (including insurance charges) from the Form 5500 and audited financial statements of 401(k) plans covered by ERISA." *Id.* at 54.

2) The Committee did not conduct requests for proposal at reasonable intervals during the class period. *Id.*, ¶ 84.

3) The Plan's "per participant" fees were between $235 and $271 from 2016 to 2021. *Id.*, ¶ 86. If individual employer members of the Plan had approached Vanguard, they could have obtained "per participant" fees of $100. *Id.*

4) The Plan's fees are higher than other large plans. Plaintiffs list six plans that have between 31,330 and 48,353 participants and between $2.7 billion and $10.9 billion in assets. *Id.*, ¶ 89. The recordkeeping and administrative costs of those plans ranged from $21 and $33 per participant in 2019. *Id.*

5) The cost of providing services "often" depends on the number of participants in a plan. *Id.*, ¶ 78.

From this, plaintiffs say that reasonable recordkeeping fees for the Plan would be between $35 and $100. *Id.*, ¶ 91.

While the parties were briefing defendants' motion to dismiss, the Court of Appeals for the Seventh Circuit decided *Albert*, 47 F.4th 570, another case in which the plaintiff asserted a claim against a plan fiduciary for excessive fees. As in this case, the plaintiff relied on allegations in the complaint that the defendant paid higher recordkeeping fees than similar plans. Specifically, the comparator plans paid an average annual recordkeeping fee of $32 to $45 per plan participant, but the defendant paid an average annual recordkeeping fee of $87 per participant. *Id.* at 579. The court held that identifying similar plans that charged lower fees wasn't enough to state a plausible claim that the defendant breached its duty of prudence. *Id.* The court agreed with the defendant that the comparison wasn't sufficient because the complaint was "devoid of allegations as to the quality or type of recordkeeping services the comparator plans provided." *Id.* The court relied on *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022), which held that an ERISA plaintiff failed to state a duty-of-

prudence claim because the complaint "failed to allege that the [recordkeeping] fees were excessive relative to the services rendered."

Defendants say that *Albert* requires dismissal of plaintiffs' duty-of-prudence claim because plaintiffs' complaint doesn't identify the services that defendants or the comparator plans offer. The question is a close one, but the court concludes that *Albert* is distinguishable for multiple reasons and that defendants' objections are better addressed in a motion for summary judgment rather than at the pleading stage.[5] The court of appeals "emphasize[d] that recordkeeping claims in a future case could survive the context-sensitive scrutiny of a complaint's allegations" if the complaint "provide[s] the kind of context that could move this claim from possibility to plausibility." *Albert*, 47 F.4th at 580. Plaintiffs have provided the necessary context.

First, plaintiffs allege in their complaint that there isn't a meaningful difference in the recordkeeping services offered by large plans and that whatever differences there are "do not affect the amount charged by recordkeepers." Dkt. 1, ¶ 75. Those allegations were missing in *Albert*, and other district courts in the Seventh Circuit have concluded since *Albert* that similar allegations are enough to infer that the services rendered by the cheaper plans are comparable. *See Coyer v. Univar Solutions USA Inc.*, No. 22 CV 362, 2022 WL 4534791, at *2 (N.D. Ill. Sept. 28, 2022) (allegation that defendant charged higher fees than comparable plans with "virtually the same package of services" was sufficient to state a claim); *Guyes v. Nestle USA,*

---

[5] The court agrees with defendants that the Committee's alleged failure to solicit bids was not in itself a breach of fiduciary duty. *Albert* reaffirmed the court's holding from *Divane v. Northwestern Univ.*, 953 F.3d 980, 990–91 (7th Cir. 2020), "reject[ing] the notion that a failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence." But plaintiffs rely on more than just a failure to solicit bids to support their claim.

6

*Inc.*, No. 20-CV-1560, 2022 WL 18106384, at *8 (E.D. Wis. Nov. 21 2022) (allegation that "services are essentially the same no matter who provides them . . . provides the necessary context to make this claim plausible."), *report and recommendation adopted Guyes v. Nestle USA Inc.,* No. 20-CV-1560, 2023 WL 22629, at *1 (E.D. Wis. Jan. 3, 2023).

Second, the plaintiffs allege in this case that defendants' recordkeeping fees are approximately 10 times higher than the fees of plans with a similar number of participants. That difference is much larger than the disparity alleged in *Albert*. A cheaper plan isn't necessarily better, *see Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), but the difference is so significant that it provides some basis for inferring that defendants are using an imprudent process to choose investments.

Third, plaintiffs allege that the Plan's fees per participant are substantially higher even than much smaller plans of fewer than 1,000 participants. Plaintiffs also allege that the cost per participant should decrease as the number of participants increases, so it is reasonable to infer that the Plan's fees per participant should not be higher than plans that a fraction of the size.

Fourth, plaintiffs allege that the Plan's total costs are substantially higher than the average plan of a similar size. This case is about recordkeeping fees, not costs generally, so total costs provide limited insight. But the higher total costs suggest that higher recordkeeping costs are not offset by lower costs elsewhere, so the allegation supports a plausible inference that the Committee is acting imprudently.

Defendants challenge the strength of plaintiffs' allegations on several grounds. First, defendants submit the tax documents (Form 5500) that plaintiffs relied on in their complaint

7

to compare the Plan's fees with other plans.[6] Specifically, plaintiffs used the figure entered in Schedule C, Section 2(d), which is for "direct compensation paid by the plan." Defendants point out that Section 2(b) lists the codes for the services that are covered by Section 2(d) and that the service codes listed in defendants' form are not the same as the service codes for the other plans. For example, defendants listed services for recordkeeping, information management, consulting, participant loan processing, participant communication, investment management, direct payments from the plan, and investment management fees paid indirectly by the plan, Dkt. 20-1, at 11; the WPP Group plan listed services for recordkeeping, information management, consulting, directed trustee services, participant loan processing, investment management fees paid indirectly by plan, and "other fees," Dkt. 20-7, at 7; and the Deseret plan listed services for recordkeeping only, Dkt. 20-5, at 7.[7]

Defendants say that the different codes show that plaintiffs are comparing apples and oranges. But the court must draw all reasonable inferences in plaintiffs' favor at this stage of the case. *Vesuvius USA Corporation v. American Commercial Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018). The codes listed by the other plans are not identical to defendants' codes, but there is substantial overlap in the services listed by plans such as the WPP Group plan, which has fees of $27 per participant. Defendants don't explain how the few differences between the services provided by the plans account for approximately $200 per participant in fees.

---

[6] The court can consider these documents without converting the motion to dismiss into a motion for summary judgment because plaintiffs relied on the documents in their complaint. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Plaintiffs do not object to considering these documents.

[7] Plaintiffs cite the Form 5500 instructions in their complaint, and defendants provided a copy of those instructions with their motion. Dkt. 20-10. The instructions identify the services that correspond with the codes printed in the schedule. *Id.* at 28.

Furthermore, the Deseret plan lists only the recordkeeping code, and that plan has fees of $22 per participant, a similar amount to the WPP Group plan, which lists several other codes. This supports plaintiffs' allegation that differences in services don't have a substantial impact on the fees charged by recordkeepers.

Second, defendants say that all the comparators that plaintiffs identify are single-employer plans rather than multiple-employer plans like the plan at issue in this case. Citing a rule-making notice in the Federal Register, defendants say that "the scale efficiencies of [multiple-employer plans] catering to small businesses would . . . likely be smaller than the scale efficiencies enjoyed by very large single-employer plans" because multiple-employer plans incur costs related to each employer member. 84 Fed. Reg. 31,777, 31,784 (July 3, 2019).

This argument cannot carry the day in the context of a motion to dismiss. Plaintiffs allege that the number of participants in a plan has the greatest effect on fees per participant, and the court must accept that allegation as true. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 526 (7th Cir. 1999). The same notice that defendants cite repeatedly states that multiple-employer plans can reduce their fees because of their larger size.[8] It is true that the notice also states that the savings of multiple-employer plans would likely be smaller than large single-employer plans, but nothing in the notice cited by defendants supports

---

[8] 84 Fed. Reg. 31777, 31,783 ("Most MEPs could be expected to benefit from scale advantages that small businesses do not currently enjoy and to pass on some of the savings to participating employers and employees."); *id.* at 31,784 ("As scale increases, MEPs would spread fixed costs over a larger pool of participating employers and employee participants. Scale efficiencies can be very large with respect to asset management and may be smaller, but still meaningful, with respect to recordkeeping."); *id.* ("[I]n most cases, the savings from the scale efficiency of [multiple-employer plans] would be greater than the savings from scale efficiencies that other providers of bundled financial services may offer to small employers.").

the view that a multiple-employer plan should have recordkeeping costs that are 10 times higher than a single-employer plan with a similar number of participants.

Third, defendants make a similar argument that Vanguard recordkeeping fees charged to smaller employer plans aren't comparable because multiple-employer plans must comply with regulatory requirements that don't apply to smaller plans. Defendants again cite the Federal Register notice for this proposition, but the central premise of that notice is that multiple-employer plans have advantages over smaller, single-employer plans, including lower fees. Defendants also say that the $100 figure from Vanguard is misleading because the brochure plaintiffs cite offers fees ranging from $50 to $231 per participant. Dkt. 20-2. But the higher fees are for plans with fewer than 15 participants, so that does not undermine plaintiffs' theory that more participants generally translate into lower fees per participant.

Defendants have raised fair points about the probative value of the evidence cited in plaintiffs' complaint to show a violation of defendants' duty of prudence. If plaintiffs had presented the same evidence in response to a summary judgment motion, the court would grant the motion. But at the pleading stage, plaintiffs' burden is to allege facts that raise their right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Plaintiffs have met that relatively low burden, so the court will deny defendants' motion to dismiss the claim against the Committee.

### 2. Duty to monitor

Plaintiffs contend that the Credit Union Retirement Plan Association and the Board of Directors for the Credit Union Retirement Plan Association breached their fiduciary duty to plaintiffs in the following ways:

1) failing to monitor and evaluate the performance of the Committee or have a system in place for doing so while the Plan suffered significant losses as a result of the Committee's imprudent conduct;

2) failing to monitor the processes by which Plan investments were evaluated; and

3) failing to remove Committee members who maintained investments with excessive fees.

Dkt. 1, ¶ 105.

Defendants acknowledge that a failure to monitor is a valid theory for breach of fiduciary duty under ERISA, and they agree that the Association and the Board of Directors had a duty to monitor the Committee. The court of appeals recognized the duty in *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011), relying on the following guidance from the Department of Labor:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of procedure.

*Id.* at 573 (quoting 29 C.F.R. § 2509.75–8 at FR–17).

Defendants challenge this claim on two grounds. First, they say that plaintiffs haven't alleged any facts supporting the claim. Second, they say that a claim for failing to monitor is derivative of a claim for failing to invest prudently, so the duty-to-monitor claim fails for the same reasons that the duty-of-prudence claim fails. The court need not consider the second argument because the court has rejected defendants' argument that the duty-of-prudence claim should be dismissed.

As for defendants' argument that plaintiffs haven't pleaded enough facts, this is another close question, but the court concludes that plaintiffs have stated a plausible claim for breach of the duty to monitor. Defendants say that plaintiffs should have included allegations about what an appropriate monitoring process would have been, how defendants should have known that the Committee was breaching its fiduciary duty, or how better monitoring would have prevented plaintiffs' alleged losses. But these facts are either not required or can be reasonably inferred from the complaint.

The specificity required to state a claim depends on context, especially the complexity of the claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Plaintiffs' claim for breach of the duty to monitor is relatively straightforward. It is essentially a failure-to-intervene theory: the Association and the Board of Directors failed to use their supervisory authority over the Committee to stop the Committee from continuing with investments that charged obviously exorbitant fees. In this context, plaintiffs' allegations against the Committee are doing most of the work. A claim that the other defendants should have stopped the Committee doesn't add a significant amount of complexity. And it is reasonable to infer from plaintiffs' allegations about the breach of fiduciary duty that the fees were so excessive that the other defendants should have known that they needed to intervene. Plaintiffs didn't identify specific facts about any monitoring process that defendants had in place, but defendants identify no way that plaintiffs would know facts about an internal process. *See Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) ("Plaintiffs' pleading burden should be commensurate with the amount of information available to them.").

Defendants cite three cases in which district courts dismissed failure-to-monitor claims for the plaintiff's failure to allege enough facts. But the problem in all of those cases was that it wasn't reasonable to infer from the allegations in the complaint that the defendants would have known that another fiduciary was breaching its duties. *See Szalanski v. Arnold,* No. 19-cv-940-wmc, 2022 WL 2315593, at *6 (W.D. Wis. June 28, 2022) (failure-to-monitor claim based on another fiduciary's decision to approve a single transaction); *Bartnett v. Abbott Laboratories*, 492 F. Supp.3d 787, 797–98 (N.D. Ill., 2020) (failure-to-monitor claim based on a failure to prevent a scam); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023–24 (N.D. Ill. 2009) (failure-to-monitor claim based solely on "the short amount of time between [the fiduciary's] appointment and the deal" being challenged in the lawsuit). In this case, plaintiffs' claim is based on an alleged problem that persisted for years, so it is reasonable to infer at the pleading stage that defendants knew about the problem and failed to do anything about it.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 18, is DENIED.

Entered March 9, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge