## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BRENDA L. LUCERO, HEATHER BARTON, ILONA KOMPANIIETS and CYNTHIA HURTADO, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: 3:22-cv-00208-jdp |
| v. | ) ) | |
| CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF DIRECTORS OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF TRUSTEES OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION and JOHN DOES 1-30. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

    A.    Plaintiffs have Standing to Pursue Claims on Behalf of Themselves and the Plan.3

    B.    The proposed class satisfies the requirements of Rule 23(B)(1) ............................4

        i.    There is no conflict between the class members, and Defendants' arguments to the contrary lack merit ............................................5

        ii.   A Ruling for the Putative class would be dispositive of the interest of all Class Members, and Defendants arguments to the contrary lack merit........................................ ................................................6

        iii.  There is a risk that inconsistent or varying adjudication with respect to individual class members would establish incompatible standards of conduct for Defendants ................................................................8

    C.    "Commonality" and "Typicality" are Satisfied and Defendants arguments to the contrary lack merit................................................................8

    D.    Plaintiffs are Adequate Class Representatives because Plaintiffs understand their claims and responsibilities as proposed class representatives and are commited to this litigation................................................................12

III.    CONCLUSION ................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Abbott v. Lockheed Martin Corp.*,
725 F.3d 803 (7th Cir. 2013) ...........................................................................................6

*Allen v. Wright*,
468 U.S. 737 (1984) ..........................................................................................................3

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ..........................................................................................................8

*In re Aquila ERISA Litig.*,
237 F.R.D 202 (W.D. Mo. 2006) ......................................................................................7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 310 (N.D. Ill. 2010) .......................................................................................9

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ..........................................................................................9

*Boley v. Universal Health Services, Inc.*,
337 F.R.D. 626 (E.D. Pa. 2021) .......................................................................................6

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009) ......................................................................................3, 11

*Buus v. WAMU Pension Plan*,
251 F.R.D. 578 (W.D. Wash. 2008) ...............................................................................14

*Caranci v. Blue Cross & Blue Shield of Rhode Island*,
194 F.R.D. 27 (D.R.I. 2000) .............................................................................................4

*Chavez v. Plan Benefit Servs., Inc.*,
77 F.4th 370 (5th Cir. 2023) .....................................................................................*Passim*

*Chorosevic v. MetLife Choices*,
No. 4:05-CV-2394 CAS, 2007 WL 2159475 (E.D. Mo. July 26, 2007) ...................10, 11

*Clark v. Duke University*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) ........................................................5, 7, 13

*Dann v. Lincoln Nat. Corp.*,
708 F.Supp.2d 481 (E.D. Pa. 2010) ..................................................................................4

ii

*DeFelice v. U.S. Airways, Inc.*,
235 F.R.D. 70 (2006) .................................................................................................5

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ......................................................................................4

*Garcia v. Alticor, Inc.*,
No. 1:20-cv-1078, 2021 WL 5537520 (W.D. Mich. Aug. 9, 2021) ..........................3

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ....................................................................................12

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) ..............................................................................12

*Knight v. Lavine*,
No. 12-cv-611, 2013 WL 427880 (E.D. Va. Feb. 2013) .............................................5

*Krueger v. Ameriprise Financial, Inc.*,
304 F.R.D. 559 (D. Minn. 2014) ................................................................................6

*Larson v. Allina Health Sys.*,
350 F.Supp.3d 780 (D. Minn. 2018) ...........................................................................3

*Leber, et al., v. Citigroup 401(k) Plan Inv. Comm.*,
323 F.R.D. 145 (S.D.N.Y. 2017) ...............................................................................6

*Lively v. Dynegy, Inc.*,
No. 05-cv-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) .....................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................................3

*In re Merck & Co., Inc., Sec. Derivative & ERISA Litig.*,
No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) .....................................4

*Moore v. Comcast Corp., et al.*,
268 F.R.D. 530 (E.D. Pa. 2010) ...............................................................................11

*Mulder v. PCS Health* Systems, Inc.,
216 F.R.D. 307 (D.N.J. 2003) ....................................................................................4

*Munro v. Univ. of So. Cal.*,
2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ...........................................................7

*Peterson, et al. v. Ins. Servs. Office, Inc.*,
2021 WL 1382168 (D.N.J. Apr. 13, 2021) ...............................................................11

iii

*Ramos v. Banner Health*,
325 F.R.D. 382 (D. Colo. 2018) ...........................................................................12

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ...................................................................................3

*Shanehchian v. Macy's Inc.*,
2011 WL 883659 (S.D. Ohio Mar. 10, 2011)........................................................2

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ...............................................................................5, 6

*Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*,
298 F.R.D. 54 (E.D.N.Y. 2014) ...........................................................................10

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966).........................................................................................12, 14

*Tracey, et al. v. MIT, et al.*,
2018 WL 5114167 (D. Mass. Oct. 19, 2018).........................................................7

*Vogt v. State Farm Life Ins. Co.*,
963 F.3d 753 (8th Cir. 2020) ..................................................................................7

*Wachala et al. v. Astellas US LLC*,
2022 WL 408108 (N.D. Ill. Feb. 10, 2022) ........................................................7, 9

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ................................................................................................9

**Statutes**

29 U.S.C. § 1104..........................................................................................................8

29 U.S.C. § 1132(a)(2)............................................................................................3, 11

Fed. R. Civ. R. 23(a) .................................................................................................14

Fed. R. Civ. R. 23(a)(2) ..............................................................................................9

Fed. R. Civ. R. 23(b) ...................................................................................................5

Fed. R. Civ. R. 23(B)(1) .............................................................................................4

Fed. R. Civ. R.. 23(b)(1)(A).........................................................................................8

**Other Sources**

The Employee Retirement Income Security Act of 1974 ...................................................*Passim*

Federal Rule of Evidence 702 ...........................................................................................................2

## I.  INTRODUCTION

Defendants hope to distract the Court from the overwhelming weight of authority that supports class certification for precisely the type of plan-representative ERISA claims brought here. As noted in our opening brief, class certification is so routine in these type of ERISA actions that defendants regularly stipulate to class certification. Defendants simply ignore that Plaintiffs bring their claims *on behalf of* the Plan[1] to recover losses stemming from the imprudent use of the Plan's assets.

Defendants' brief is premised on the false argument that because the Plan is a multiple employer plan, or MEP, it makes class certification different than if we were dealing with a single employer plan. This is not true. Defendants attempt to mischaracterize Plaintiffs' claims and make the case about the individual recordkeeping costs with respect to each employer in the MEP; however, Plaintiffs' claims are that the Defendant-Fiduciaries breached their fiduciary duties in failing to control recordkeeping fees, and this claim is the *same* for every class member. In an analogous ERISA case involving multiple employers (over 3,000) who contracted with a single fiduciary entity to design and administer employee benefits where individual employers were paying separate RKA fees under a single "Master Trust Agreement," the 5th circuit upheld class certification and held the following:

> We disagree with [defendants] that this case is *only* about the payment of excessive fees. The more apt characterization is detailed in Plaintiffs' complaint, which explains that this case is also about [Defendant's] alleged mismanagement of the trusts that they compel each employee to pay into through contracts with their employers. Likewise, the class that the district court eventually certified further reflects this understanding of Plaintiffs' theory.

*Chavez v. Plan Benefit Servs., Inc.*, 77 F.4th 370, 378 (5th Cir. 2023).

Like in *Chavez*, this case is not only about the payment of excessive fees. As Plaintiffs allege, this case is about "Defendants' mismanagement of the Plan, to the detriment of participants

---

[1] "Plan" refers to The Credit Union Retirement Plan Association 401(k) Plan.

and beneficiaries" constituting a "Breach of the fiduciary duty of Prudence (Count One) and failure to monitor fiduciaries (Count Two)." ¶¶ 12-13. Despite defendants' argument, this claim is the same as to all Participants, and therefore, class certification is proper.

With their Opposition, Defendants offer the Expert Declarations of Mark Werner and Michael Conte ("Werner Declaration" and "Conte Declaration") (Dkt. No. 70-71). Apart from improperly opining on ultimate elements of the class certification inquiry, the Werner and Conte Declarations are hopelessly flawed, reflecting fundamental misunderstandings of Plaintiffs' claims, allegations, and the calculation of damages in breach of fiduciary duty actions under ERISA § 502(a)(2). The Werner and Conte Declarations only serve to support the Defendants' flawed argument that there are "individualized" issues or purported "intra-class" conflicts, which in reality does not undermine the uniformity of the claims against Defendants which are brought in a representative capacity. The Werner and Conte Declarations boil down to an inappropriate effort to litigate the merits on an incomplete and misleading record of Defendants' choosing. For these reasons, the Werner and Conte Declarations are fundamentally unreliable and irrelevant, and it should be given little to no weight in the Court's consideration of Plaintiffs' Motion. Several courts have rejected similar expert reports at the class certification stage. In rejecting an identical argument (and expert analysis), another court perhaps best summarized the issue, noting:

> Defendants' concern that individualized 'optimal breach dates' create intra-class conflicts is misplaced and, if heeded, would effectively eliminate all ERISA fiduciary breach of duty class actions…. [T]he Court will make its determination of if and when Defendants breached their fiduciary duties to the Plans based on evidence in the record and the controlling law, irrespective of the 'preferred' or 'optimal' breach dates for any given individual.

*Shanehchian v. Macy's Inc.*, 2011 WL 883659, at *7 (S.D. Ohio Mar. 10, 2011).

Lastly, to the extent that Defendants intend to rely on the Warner and Conte Declarations for non-class certification purposes, Plaintiffs reserve their rights to challenge their admission under Federal Rule of Evidence 702.

## II.    ARGUMENT

### A. Plaintiffs have Standing to Pursue Claims on Behalf of Themselves and the Plan.

To establish constitutional standing, a plaintiff must show injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy this burden, the plaintiff must allege (1) an injury, (2) "fairly traceable to the defendant's alleged unlawful conduct," that is (3) "likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). A suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 593 (8th Cir. 2009); *see also In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 604 (3d Cir. 2009) (noting "the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2)").

Defendants' standing argument ignores the above fundamental character of ERISA breach of fiduciary duty claims; *i.e.*, they are representative actions. *Braden*, 588 F.3d at 593. Plaintiffs "participated in the Plan and were injured by Defendants' unlawful conduct," including the excessive administration and recordkeeping costs. ¶¶ 17-21. Those allegations are sufficient to allege standing. *See Larson v. Allina Health Sys.*, 350 F.Supp.3d 780, 792 (D. Minn. 2018) ("the fact that the representative Plaintiffs in this case did not invest in the ProManage option or the mutual fund window, does not prevent them from bringing a claim on behalf of the whole plan."); *Garcia v. Alticor, Inc.,* No. 1:20-cv-1078, 2021 WL 5537520, at *5 (W.D. Mich. Aug. 9, 2021) same. ("Defendants' argument here is somewhat confusing because they do not dispute that Hart has standing to bring a claim based on excessive recordkeeping fees […] instead arguing that he cannot bring a claim based on selection of challenged funds.").

To the extent Defendants argue Plaintiffs do not have standing to represent other plans that participated in the MEP, this too is a fallacy. In an analogous situation, a court stated it is erroneous to "suggest that a class action under ERISA could never be brought by plaintiffs representing unnamed individuals in different plans. This is clearly not true." *Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 39 (D.R.I. 2000) (citations omitted). Indeed, such a position has been rejected time and again by various courts which have found that a plaintiff has standing to sue on behalf of several plans where, such as here, each Plan is administered by the same Company or sponsor, and defendants' conduct is alleged to have affected participants in the different plans in a similar manner. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("[O]nce a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong."); *In re Merck & Co., Inc., Sec. Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) (finding named plaintiffs can properly assert claims on behalf of another plan despite not being participants in that plan); *Mulder v. PCS Health* Systems, Inc., 216 F.R.D. 307, 317 (D.N.J. 2003) (individual in one ERISA benefit plan may represent a class of participants in numerous other plans); *Dann v. Lincoln Nat. Corp.*, 708 F.Supp.2d 481, 487 (E.D. Pa. 2010) (court denied motion to dismiss and determined it "will defer the question of whether Dann may bring this action on behalf of the Agents' Plan and Delaware Plan until class certification").

Accordingly, Plaintiffs have established standing to bring claims on behalf of all participants in the Plan.

### B. The proposed class satisfies the requirements of rule 23(B)(1)

### i. There is no conflict between the class members, and Defendants' arguments to the contrary lack merit.

Defendants rely on the flawed Declarations of Werner and Conte in an attempt to show there is a "conflict" among the Movants and members of the Class. But as most courts have found, "[t]he representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class."[2] According to Defendants, the fact that certain class members may have paid reasonable RKA fees while others did not creates a conflict among the class that prevents certification. This "conflict" theory is widely discredited and is consistently rejected by courts. At the heart of the matter is the fact that "[n]o individual member of the proposed class has an incentive to maximize his or her individual recovery because the recovery in this case is on behalf of the Plan and is the same with respect to each Plaintiff and unnamed class member, that is, all of the loss to the Plan caused by the alleged fiduciary breaches." *Lively v. Dynegy, Inc.*, No. 05-cv-00063, 2007 WL 685861, at *13(S.D. Ill. Mar. 2, 2007). Contrary to Defendants' argument, *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), does not reject this truism. Defs. Opp. at 17 n.39.

In this case, Plaintiffs challenge Defendants' process (not the individual employers) in administering the Plan and seek recovery upon a Plan-wide right to relief. Plaintiffs' claims are based on the Plan-wide legal theory of "a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments." *Clark*, 2018 WL 1801946 at *5-*7 (finding typicality); *see also Emory Univ.*, 2018 WL 6332343 at *6 (finding typicality when class members' claims "are based on the same events and legal theories—breach of fiduciary duty in managing and monitoring the

---

[2] *Knight v. Lavine*, No. 12-cv-611, 2013 WL 427880 at *3 (E.D. Va. Feb. 2013) (citing *DeFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (2006).

Plans. Proof of the defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances."). Even the Court in *Spano*, upon which Defendants rely, agreed that "the assertion that [defendant] has failed to satisfy its fiduciary duties in its selection of investment options . . . describe[s a] problem[] that would operate across the plan rather than at the individual level." *Spano*, 633 F.3d at 586.

Defendants' suggestion that there is a conflict among class members who may have paid reasonable fees and members who did not is misguided. The gravamen of Plaintiffs' claim is the harm suffered by the *Plan* as a result of Defendants' singular fiduciary process. Unlike in *Spano*, this action seeks relief for the Plan's injuries based upon a consistent theory of liability, a distinction that numerous courts have recognized.[3] *See, e.g.*, *Leber*, 323 F.R.D. at 163; *Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 573 (D. Minn. 2014). Although the various RKA fees each individual participant paid may affect an eventual plan of allocation, "that inquiry is beyond the scope of class certification." *Boley*, 337 F.R.D. at 636.

### ii. A Ruling for the Putative class would be dispositive of the interest of all Class Members, and Defendants arguments to the contrary lack merit.

Defendants' argument that "a victory for one that his fees were too high may mean a loss for another who paid lower fees and may have to account for his share of fees" is a purported conflict that is not only speculative and hypothetical, it is entirely fabricated. Defs.' Memo at 14. In fact, the supposed conflicts raised by Defendants are premised on fundamental mischaracterizations of Plaintiffs' claims on behalf of the Plan. Defendants continue to make the false argument that each Plaintiff in the class has individualized issues, ignoring the fact that Plaintiffs bring claims on behalf of the Plan as a whole, consistent with the remedial scheme

---

[3] In *Abbott*, the Seventh Circuit clarified that it "has never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

established under ERISA § 502(a)(2). Court after court has held that "focusing on the individuals who benefitted from the allegedly imprudent investments does not affect the overarching legal issue of whether such investments constituted a breach of defendants' fiduciary duty." *Tracey, et al. v. MIT, et al.,* 2018 WL 5114167, at * 6 (D. Mass. Oct. 19, 2018). In other words, "because the crux of this case hinges on whether defendants acted imprudently with respect to the Plan and not the investments re individual participants, this Court [should] find[] no substantial intra-class conflict in the proposed class." *Id.*

In *Clark v. Duke University*, 2018 WL 1801946 at * 7 (M.D.N.C. April 13, 2018), defendants contended similar to Defendants here that "intra-class conflicts" existed "for multiple reasons" including that "some class members who currently pay nothing for recordkeeping would be harmed if the plaintiffs are successful and their recordkeeping fees go up." The court rejected each argument finding "[t]here is nothing to indicate that the plaintiffs' theories of liability, evidence, or case strategy will change if participants who profited from allegedly imprudent investments are included in the class. These potential conflicts are not fundamental and do not go to the heart of the role of the named plaintiffs as class representatives." *Id.* at * 8; *see also Wachala et al. v. Astellas US LLC*, 2022 WL 408108, at * 8 (N.D. Ill. Feb. 10, 2022) (agreeing with plaintiffs that "even if there are slightly divergent theories that maximize damages for certain members of the class, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.") (citing *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020)); *Munro v. Univ. of So. Cal.*, 2019 WL 7842551, at * 7 (C.D. Cal. Dec. 20, 2019) ("Even assuming, *arguendo*, that Defendants' economic analysis is correct, Defendants fail to articulate how the relief sought by Plaintiffs could actually harm putative class members. Participants who profited from allegedly imprudent investment options will not have to pay back their gains.").[4]

---

[4] *See, e.g.*, *In re Aquila ERISA Litig.*, 237 F.R.D. at 210 (noting that the intra-class conflict "argument was recently considered and rejected by the Eastern District of Virginia in *DiFelice* [*v. U.S. Airways*, 235 F.R.D. 70, 79 (E.D. Va. 2006)]," wherein the *DiFelice* court found that while "it may be true that each Plan participant who invested in the Company Stock Fund has an 'optimal prudence date,' this fact alone does not defeat [Plaintiff's] typicality. This is so because, it is also true that the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf

iii. **There is a risk that inconsistent or varying adjudication with respect to individual class members would establish incompatible standards of conduct for Defendants.**

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted). This is precisely such a case because the fiduciary duties imposed by ERISA are "duties with respect to a plan" that protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104. In discharging their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike.

Defendants here repeat the same argument that "the factual evidence Plaintiffs will need to present will vary by each employer-adopted plan." Defs.' Memo at 16. This is not true. Defendants continue to mischaracterize Plaintiffs' claims and make the case about the individual recordkeeping costs with respect to each employer in the MEP; however, Plaintiffs' claims are that the Defendant-Fiduciaries breached their fiduciary duties in failing to control recordkeeping fees, and this claim is the same for every class member. There are not multiple "employer-adopted plans" that Plaintiffs are asserting claims against. There is just the Plan, and Plaintiffs are asserting claims against the fiduciary of the Plan. This argument was rejected in *Chavez* where the court found, "'prosecuting separate actions could substantially impair the putative class members' ability to protect their interests because Plaintiffs are alleging two claims central to all class members.' Namely, whether [defendant] is or is not a fiduciary, and, if so, whether it breached their duties in that role." *Chavez v. Plan Benefit Servs., Inc.*, 77 F.4th at 387 (5th Cir. 2023).

_____

of the Plan, individual participants' 'optimal imprudence dates' are irrelevant. To the extent members of the class, including the class representative, have interests with respect to this date that are slightly divergent with each other, or with the Plan itself, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.").

### C. "Commonality" and "Typicality" are Satisfied and Defendants arguments to the contrary lack merit.

In order to satisfy commonality, "there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Commonality concerns "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (emphasis in original).

In ERISA cases involving defined-contribution plans, commonality "is easily satisfied" because, "'fund participants operate against a common background,' and allegations that a fiduciary has breached its duties in the selection of investment options describe a problem that operates across the plan rather than at the individual level.'" *Wachala*, 2022 WL 408108, at *5 (internal citations omitted).  Here, the overarching questions of law and fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to monitor or control the compensation paid for recordkeeping and administration services, as well as failing to monitor or control the total Plan costs paid by participants. *See* Gyandoh Decl., ¶ 13-17. All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all focus on the Defendants' "standardized conduct towards the members of the proposed class." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 310, 341 (N.D. Ill. 2010).

Defendants argue that there is not commonality because there are about 100 different employers and not all employers used the same methodology to calculate RKA fees with the Plan's recordkeeper. This is of no moment. The fact that there are different employers does nothing to change the fact that this lawsuit is about Defendant-Fiduciary conduct, not the individualized employers. As the 5th circuit held in *Chavez*,

> Simply put, Plaintiffs' claim that [defendants] mismanaged the trust to their detriment "does not implicate a significantly different set of concerns than does" [defendants'] mismanagement of the trust for the unnamed class members. 539 U.S. at 265, 123 S.Ct. 2411. That there is an abundance of employers and plans does nothing to shift the calculus of that conclusion either. Ultimately, Plaintiffs have

> undeniably suffered the same kind of loss as the unnamed class members because of FBG's alleged misconduct. *Id.* Put another way, the set of concerns here are identical between Plaintiffs and the unnamed class members: the return of trust funds that each plaintiff would otherwise have been entitled to if FBG had not violated ERISA.

77 F.4th at 385.

Here, like in Chavez, Plaintiffs claim that the Defendant-Fiduciaries mismanaged the Plan to the detriment of the Plaintiffs and the Plan as a whole. Therefore, commonality is satisfied.

Cases cited by the Defendants do not hold differently. *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2007 WL 2159475, at *2 (E.D. Mo. July 26, 2007), cited by Defendants involved an employee welfare benefit plan. *Chorosevic* involved employee welfare benefits with different facts that defeated commonality. There, Plaintiffs specifically identified as a common issue the "language at issue" related to multiple employee welfare benefits plans, but it became clear to the court that the "language at issue" only involved one of the plans. *Id.* at *8. Here, unlike in *Chorosevic*, Plaintiffs have not identified "language at issue" that is only relevant to some of the Plaintiffs as a central issue of their claim. Furthermore, Defendants cite *Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 74 (E.D.N.Y. 2014) in arguing lack of commonality, but it is completely unanalogous as it was not an ERISA claim, but instead had to do with overcharging merchants for credit card transaction fees. *Spread Enterprises, Inc.* 298 F.R.D. at 59.

Defendants also argue lack of commonality because in "2021, the expense mechanism for participating employers changed." Defs.' Mem. at 18. The Defendants repeat this argument later in their brief arguing that Plaintiffs are inadequate class representatives because "Plaintiffs are former Plan participants who by 2020 were no longer participating" while other participants were subject to "a new fee structure since November 2021." Defs.' Mem. at 23. Defendants also repeat this argument in their "typicality" section. Defs.' Mem. at 23, This argument is of no moment and has been consistently rejected by courts.

Because each Plaintiff was a participant in the Plan for at least a portion of the Class Period, they have standing to pursue all claims for the Plan. It all goes back to the nature of claims here as

being "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan." *Braden*, 588 F.3d at 593. Accordingly, in *Braden*, the Eight Circuit found Article III standing was satisfied for a participant to bring claims concerning harms that pre-dated his personal involvement in the Plan. 588 F.3d at 592–594. It stated "Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account. That injury is fairly traceable to appellees' conduct because he has alleged a causal connection between their actions—even those taken before his participation in the Plan—and his injury." *Id.* at 592. The court noted that "[a]t bottom, the gist of the question of standing is whether a plaintiff has such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Id.* at 593 (internal quotations omitted). *See also Moore v. Comcast Corp., et al.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010) (""[w]hile Moore's specific claim may occur over a shorter or different time period than other class members' claims, there is a 'strong similarity of legal theories' based on a single 'course of conduct' by defendants."); *Peterson, et al. v. Ins. Servs. Office, Inc.*, 2021 WL 1382168 (D.N.J. Apr. 13, 201) (finding plaintiffs to have standing because "Plaintiffs allege that Defendants' imprudent course of conduct, which arose prior to their participation in the Plan, caused injuries to themselves…[and] they may seek relief under § 1132(a)(2) that sweeps beyond [their] own injury.'").

Defendants also attempt to argue that the issue of whether the Defendants are fiduciaries of the Plan not common to all Plan members. This is also an issue that was addressed in the analogous case *Chavez*. The court in *Chavez* respond to this exact argument and held, "It explained that whether [defendant] owed a duty to Plaintiffs was a common question across the class. Moreover, it observed that whether that duty was breached was a similarly common question that was significant and likely dispositive over the entire class's claims. *Chavez* 77 F.4th at 390. Contrary to Defendants argument, *Chorosevic* does not hold differently. As discussed earlier, *Chorosevic,* involved multiple employee welfare plans with different operating language and potentially different fiduciaries. *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2007

11

WL 2159475, at *9 (E.D. Mo. July 26, 2007). Here, there is only one Plan at issue and Plaintiffs are only asserting claims against the fiduciaries of the Plan.

> **D. Plaintiffs are Adequate Class Representatives because Plaintiffs understand their claims and responsibilities as proposed class representatives and are committed to this litigation.**

Defendants' challenges to the Plaintiffs' adequacy to represent the class are without merit. The record shows that Plaintiffs made appropriate inquiries of their counsel before commencing this action, have worked diligently at all stages of these proceedings to date, and are committed to achieving relief on behalf of the Plan and the proposed Class. Plaintiffs far exceed the standard that "[a] class representative needs only a basic understanding of the claims and a willingness to participate in the case." *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966); *see also Gunnells*, 348 F.3d at 430. ("It is hornbook law, as the district court recognized, that '[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'").

Defendants' only criticisms of the Plaintiffs' testimony is that they were unaware of Defendants' breaches prior to their interactions with counsel, and that they don't have a sophisticated understanding of funds at issue and need the assistance of their counsel to understand these issues. Defs.' Mem. at 24-27. There is no support for their absurd position, and Defendants could not cite any ERISA class action case law to support their theory. Quite opposite, courts recognize the complexity of litigation of this type and expect Plaintiffs to reasonably rely on their counsel. See *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) ("[E]ven if Plaintiffs did not have reason to suspect that there were problems with the Plan before contacting counsel, that is simply the nature of a claim of this type. The average person would have no reason to believe that the administrator of his 401(k) plan was acting imprudently . . . .") *See also Ramos v. Banner Health*, 325 F.R.D. 382, 396 (D. Colo. 2018) (citing *Kanawi*, 254 F.R.D. at 111) ("ERISA is an enormously complex and detailed statute, [] and, the legal and factual complexity of

Plaintiffs' claims makes it highly unlikely they could be discovered without the investigation of experienced counsel . . . To the extent [Plaintiffs] lacked specific grievances prior to speaking with counsel, or lack a detailed command of their highly complex factual and legal claims, neither concern makes them inadequate representatives or precludes class certification."); *see also Clark*, 2018 WL 1801946 at \*9 ("The complex nature of ERISA fiduciary breach claims often requires investors to rely on their attorneys and hired experts and such reliance does not make the plaintiffs inadequate representatives.") (citation omitted).

Here, the evidence demonstrates Plaintiffs possess more than a "minimal degree of knowledge" necessary to satisfy the adequacy requirement. Plaintiffs' declarations acknowledge Plaintiffs' intents to represent the interests of the class until the conclusion of this case. *See* Lucero Declaration ¶¶ 10-11 (Dkt. No. 84-4), *See also* Barton Declaration ¶¶ 10-11 (Dkt. No. 84-5), *See also* Kompaniiets Declaration ¶¶ 10-11 (Dkt. No. 84-6), *See also* Hurtado Declaration ¶¶ 10-11 (Dkt. No. 84-7). Plaintiffs' deposition testimony demonstrated an understanding of the claims[5] and active participation in the lawsuit with the intent to represent the class.[6] Plaintiffs also testified

---

[5] Lucero Dep. 47:17-22 ("Q: What is it that you think Credit Union Retirement Plan Association Did did wrong? A: Based on the information provided, it appears that the fees that were incurred for recordkeeping and investments were overcharged for participants.") Barton Dep. 72:20-24 ("Q: From your understanding right now, not in the complaint, what specifically do you think was done wrong in this case? A: The fees for administering the plan were excessive.") Kompaniiets dep. 17:25-18:7 ("Q: Okay. And what did they [CURPA] do wrong? A. So the whole credit union is about keeping the fees low and taking case of members, being the members on the outside or employees. Abd the fact that the company that managed the 401(k)s for employees charged excessive fees when that contradicts the whole idea of takin care of the members, that sounds very wrong.") Hurtado Dep. 95:12-15 ("Q. And do you know what legal causes of action have been brought against those defendants? A: T For the excessive investment fees and the recordkeeping fees, excessive recordkeeping fees.")

[6] Lucero Dep. 102:21-103:9 ("Q: And what do you believe your duties to be as a class representative? A: Pretty much U need to monitor the case to see how it's ondoing; being briefed as far as any delays or – or whatnot; to participate in this current deposition with you all and answer any question that you may have; and, if need be, if it does go further and I would need to go testify in person, I would. Q: What do you do to monitor the case? A: I receive frequent updates from one of the – I'm assuming she's an aide. I'm not really sure of her position. I receive updates from somebody at Capozzi Adler.") Lucero Dep. 105:21-106:2 (Q:… Do you agree that you are only seeking damages that you are entitled to as an individual? A: No, Id like to see it for every plan participant that is involved in the case.") Barton Dep. 77:16-78:6 (Q: Okay. Do you understand what your duties and responsibilities are as a class representative? A: Yes. Q: Okay. Can you

that they maintain regular communication with the attorneys to stay abreast of the case's progression. *See* fn. 7. Plaintiffs need not possess an extensive financial background to meet the adequacy requirement. In fact, all of the Plaintiffs declared that they lack expertise in finance or investing. *See* Lucero Declaration ¶ 6 (Dkt. No. 84-4), *See also* Barton Declaration ¶ 6 (Dkt. No. 84-5), *See also* Kompaniiets Declaration ¶ 6 (Dkt. No. 84-6), *See also* Hurtado Declaration ¶ 6 (Dkt. No. 84-7). *See also Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 587 (W.D. Wash. 2008) ("Several decades ago, the Supreme Court remarked that Rule 23 should not be used to 'defeat the ends of justice' by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs.") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)).

## III.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court certify this action as a class action under FED. R. CIV. P. 23(a) and (b)(1), appoint Plaintiffs as representatives for the certified Class, and appoint Capozzi Adler as counsel for the certified Class. To the extent the Court believes the class definition must be narrowed or subclasses required, it is within the Court's inherent discretion to do so without denying the motion for class certification.

Dated:  September 19, 2023                                    Respectfully submitted,

---

elaborate on those, please? A: Well, they would be to ensure that when I received emails and contacts from my attorney, that I'm available, that I participate in discovery, and that I'm willing to appear for trial if this case, in fact, foes to trial. Q: Who do you believe is in the class that you seek to represent? A: The employees that have paid into the plan. Q: Which plan, just FirstLight's plan? A: No, all the – all the participants within the plan.") Kompaniiets Dep. 60:2-14 ("Q: Okay. And if you're appointed as a class representative, do you believe that you owe any duties to the other members of the class? A: Yes, I need to do the best I can and to answer my best knowledge. Q: What have you done to advance this case or prosecute this case? A: What can I do? I don't have any legal investment degrees, right, or any kind of knowledge in that area, so I rely on my lawyers. And I timely, you know, submitted all the documents, filed in the forms, talked to them, ask questions, so I did all that.") Hurtado Dep. 89:9-33 ("Q: Do you believe that you would make an excellent class representative? A: I believe so. Q: And why do you believe that? A: Just with my character, Im able to explain and answer questions… Q: Who do you believe is in the class that you seek to represent? A: Myself and to include the 20,000 individuals. Q: 20,000 individuals that what? A: That also participated in the Plan.)

14

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire (admitted *pro hac vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey, Esquire (admitted *pro hac vice*)
2933 North Front Street
Harrisburg, PA 17110
(717) 233-4101
Fax (717) 233-4103
Email: donr@capozziadler.com

Counsel for Plaintiffs and
the Putative Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2023, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  <u>/s/ *Mark K. Gyandoh*     </u>
       Mark K. Gyandoh, Esq.