IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRENDA L. LUCERO, HEATHER BARTON, ILONA
KOMPANIIETS, and CYNTHIA HURTADO,
individually and on behalf of all others similarly
situated,

                          Plaintiffs,

  v.

CREDIT UNION RETIREMENT PLAN
ASSOCIATION, THE BOARD OF DIRECTORS OF
THE CREDIT UNION RETIREMENT PLAN
ASSOCIATION, THE BOARD OF TRUSTEES OF
RETIREMENT PLANS, THE PLAN
ADMINISTRATIVE COMMITTEE, and
JOHN DOES 1-30,

                          Defendants.

OPINION and ORDER

22-cv-208-jdp

---

      Plaintiffs are former participants of the Credit Union Retirement Plan Association 401(k) Plan, a multiple-employer plan that has more than 100 employer members. Plaintiffs contend that several entities involved in administering the plan failed to control recordkeeping costs and thus breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA). Plaintiffs move to certify a class of nearly all individuals who have participated in the plan since 2016. Dkt. 46.

      For many ERISA plans, a claim regarding excessive fees would be an obvious candidate for class certification because the fees would be charged to all plan participants using the same formula. But the plan in this case operated differently while plaintiffs were participants. Rather than applying a set fee schedule for all plan participants, plan administrators allowed individual employers to negotiate their own fees with the recordkeeper, resulting in disparate fees. Among the named plaintiffs themselves, one of them was charged as little as $10.91 in fees while

another was charged as much as $471.53. In fact, three of the four plaintiffs (Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado) were charged fees that fall within what plaintiffs themselves contend is reasonable, and plaintiffs do not identify any other harm those plaintiffs suffered. So the court will dismiss those three plaintiffs for lack of standing.

Plaintiffs contend that differences among fees charged to participants are immaterial because plaintiffs are seeking relief under 29 U.S.C. § 1132(a)(2), which is based on harm to the plan as a whole, not individual participants. That argument has been rejected by the Court of Appeals for the Seventh Circuit, which has held that a district court may not certify a class of plan participants that includes both harmed and unharmed individuals, even for a claim under § 1132(a)(2).

Defendants made fee assessments more uniform starting in 2021. But none of the plaintiffs were plan participants at that point, so they could not represent a class challenging the new process. Plaintiffs do not ask to propose a narrower class, create subclasses, or substitute class representatives. So the case will proceed not as a class action, but on Brenda Lucero's claim only.

## ANALYSIS

**A. Standing**

A threshold jurisdictional requirement in every federal lawsuit is standing, which requires the plaintiff to show three things: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury is likely to be redressed if the plaintiff succeeds on the lawsuit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants assert two arguments about plaintiffs' standing in this case: (1) plaintiffs

Barton, Kompaniiets, and Hurtado lack standing to assert any claims because none of them ever paid fees that are higher than what plaintiffs themselves say is reasonable; and (2) no plaintiff has standing to bring claims on behalf of a participant who had a different employer because fees were not uniform across employers.

The question whether a plaintiff has standing is separate from the question whether a class should be certified, so defendants should have filed their own motion about the standing issues. *See Eggen v. Westconsin Credit Union*, No. 14-cv-873-bbc, 2016 WL 797614, at *2 (W.D. Wis. Feb. 26, 2016). But there is some overlap in determining whether a plaintiff has suffered an injury in fact and whether the plaintiff would be an appropriate class representative. In any event, the court has an independent obligation to consider standing, *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009), and the parties have briefed the standing issues, so the court will consider them. *See Dawson v. Great Lakes Educational Loan Services, Inc.*, 327 F.R.D. 637, 645 (W.D. Wis. 2018) (addressing standing issues on a class certification motion for these reasons).

As for their first argument, defendants say that Barton, Kompaniiets, and Hurtado paid fees between $10.91 and $69.78 between 2016 and 2020, which was the last year any of them were plan participants. Dkt. 69, at 13. Defendants then cite plaintiffs' complaint, which states that "the actual administration and recordkeeping fee CUNA could have achieved lies somewhere between the $20–$35 mark and the $100 mark." Dkt. 100, ¶ 96. Putting these two pieces of information together, defendants say that Barton, Kompaniiets, and Hurtado weren't injured because their fees were never higher than the range that plaintiffs themselves identified as reasonable. Lucero's fees were much higher—between $204.62 and $471.53—so defendants don't challenge her standing.

3

In response, plaintiffs don't contend either that the fees Barton, Kompaniiets, and Hurtado paid were unreasonable or that they would have paid even lower fees in the absence of a breach of fiduciary duty. So plaintiffs forfeited those arguments. Plaintiffs contend instead that it simply doesn't matter whether individual participants were injured because they are asserting a claim under 29 U.S.C. §§ 1132(a)(2) and 1109, which are brought to restore the plan rather than individual participants.[1] But the plan is not the plaintiff, individual participants are. Regardless of the relief that plaintiffs are seeking, they cannot sue unless they were personally injured: "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiffs identify no exceptions to that rule.

Plaintiffs cite *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), and *In re Biogen, Inc. ERISA Litigation*, No. 20-cv-11325, 2021 WL 3116331 (D. Mass. July 22, 2021), to support their contention that injury to the plan is enough to give standing to any plan participant. But neither case stands for that proposition. Rather, in both cases the courts concluded that the named plaintiffs had standing because they alleged that they were personally charged excessive fees. *See Braden*, 588 F.3d at 592–93 ("Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account."); *Biogen*, 2021 WL 3116331, at *4 ("Plaintiffs have asserted an injury in fact, as they allege that they personally paid excessive fees in connection with their own investments."). In this case, plaintiffs don't allege that the fees charged to three of them were excessive, and they don't

---

[1] Section 1132(a)(2) allows a plan participant to seek relief under § 1109, which makes a plan fiduciary liable for plan losses.

otherwise identify an injury that they suffered personally. Barton, Kompaniiets, and Hurtado also don't have any future injuries that could provide standing for injunctive relief claims because those plaintiffs are no longer plan participants, so they could not be harmed by any excessive fees charged in the future. *See Lopez-Aguilar v. Marion Cty. Sheriff's Dep't,* 924 F.3d 375, 395 (7th Cir. 2019) (no standing to seek injunctive relief when "there is no showing of any real or immediate threat that the plaintiff will be wronged again").

Defendants' second contention—that plaintiffs don't have standing to challenge fees incurred by participants who didn't share the same employer—isn't about whether plaintiffs were injured. It's about whether plaintiffs are adequate class representatives who have claims that are typical of the class. So the court will discuss this issue in the context of deciding whether to certify the class.

## B. Class certification

Plaintiffs seek to certify the following class: "All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Credit Union Retirement Plan Association 401(k) Plan, at any time between April 12, 2016, through the date of judgment." Plaintiffs identify two class claims: (1) the board of trustees and the plan committee failed to prudently manage the plan's recordkeeping and administration costs; and (2) the plan association and the board of directors failed to adequately monitor the other defendants. Dkt. 47, at 16.[2]

---

[2] Plaintiffs also make a passing reference to defendants' "failing to monitor the processes by which Plan investments were evaluated," Dkt. 47, at 16, but plaintiffs don't identify any specific failures other than those related to controlling fees. If plaintiffs mean to assert broader class claims regarding investment performance, those claims cannot be certified because plaintiffs haven't clearly defined them, as required by Rule 23(c)(1)(B). *See also Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 552 (7th Cir. 2016) (class certification decision "requires a precise

A proposed class may be certified under Rule 23 if it meets the following requirements: (1) the scope of the class and the class claims are clearly defined, using objective criteria, Fed. R. Civ. P. 23(c)(1)(B); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class is sufficiently numerous, includes common questions of law or fact, and is adequately represented by named plaintiffs who have claims typical of the class, Fed. R. Civ. P. 23(a); (3) class counsel is adequate, Fed. R. Civ. P. 23(g)(1); and (4) the class meets the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, plaintiffs seek to certify a class under Rule 23(b)(1)(A) and (B). Rule 23(b)(1)(A) applies when there is a risk that litigating claims individually could lead to inconsistent results and impose "incompatible standards of conduct" on the defendant. Rule 23(b)(1)(B) applies when there is a risk that litigating claims individually would impair the interests of other potential class members.

Some of the requirements are not in dispute. The class includes all plan participants after a certain date, so the scope of the class is clear. Defendants don't dispute plaintiffs' representation that there are more than 9,000 members of the class, so the class is sufficiently numerous to make joinder impracticable. The court is also satisfied that class counsel is adequate. Both class counsel and their law firm, Capozzi Adler, have significant experience litigating both class actions and ERISA cases, and they represent that they have adequate resources to litigate the case to completion. Dkt. 48, ¶¶ 32–43.

---

understanding of the nature of the plaintiffs' claims").

Defendants challenge plaintiffs' ability to meet the requirements for commonality, typicality, adequacy of the named plaintiffs, and Rule 23(b)(1). Defendants' primary argument is similar to one of their standing arguments: plaintiffs can't represent all plan participants because fees vary too much depending on the participant's employer. Defendants lay out the facts underlying this argument in declarations submitted by Michael Conte (the director of retirement of solutions) and Mark Werner (the chair of the board of trustees and the plan committee):

- From the beginning of the class period until 2021, the plan committee negotiated the maximum fees that the record keeper (CMFG Life Insurance Company) could charge each employer that was a member of the plan.

- Each employer could then negotiate with the record keeper for lower fees.

- By 2021, 91 out of 107 participating employers had negotiated lower fees for their own employees.

- In 2021, the plan committee negotiated a new fee structure with the record keeper.

- Under the new structure, fees are determined by the amount of assets each employer's participants had in the plan and the average account balance of the employer's participants.

Dkt. 71, ¶¶ 8–18 and Dkt. 70, ¶¶ 6–8. Plaintiffs call the declarations "incomplete and misleading" and contend that they are improper expert testimony. Dkt. 83, at 8. But plaintiffs identify no specific information cited above that is misleading, and they cite no contrary or additional evidence. And the testimony does no more than describe defendants' process for assessing fees, so it is not based on specialized knowledge. Plaintiffs identify no valid basis for disregarding the declarations or treating them as disputed.

The declarations suggest that defendants determined recordkeeping fees in two different ways, depending on the time. Before 2021, defendants established a ceiling for fees and then

7

allowed employers to negotiate directly with the recordkeeper for better rates. From 2021 on, defendants took a more uniform approach, determining fees based on assets and account balances. These are significantly different approaches, so the court will consider them separately.

### 1. Recordkeeping from 2016 to 2021

The court concludes that *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), precludes certification of a plan-wide class based on alleged breaches between 2016 and 2021. *Spano* was a consolidated appeal of two classes that a district court certified under Rule 23(b)(1). Like the plaintiffs in this case, the plaintiffs in *Spano* were participants in a defined-contribution plan, meaning that a participant's benefits were not guaranteed (unlike a defined-benefits plan such as a pension) but instead were based on the amount contributed to the participant's account and any gains or losses to those contributions. 29 U.S.C. § 1002(34). The plaintiffs contended that plan administrators breached their fiduciary duties in three ways: (1) causing the plan to pay excessive fees and expenses; (2) including imprudent investment options in the plan; and (3) concealing material information from participants. *Id.* at 576–77. *Id.* As in this case, the proposed classes in *Spano* were broad, including all plan participants except those affiliated with the defendants. *Id.* at 577. Also as in this case, the plaintiffs in *Spano* asserted claims under § 1132(a)(2), which is often referred to in the case law as § 502(a)(2).

The court of appeals began its analysis in *Spano* with an observation that "the question whether to certify a class asserting section 502(a)(2) claims is . . . a complex one if the underlying plan takes the defined-contribution form." *Id.* at 582. This is because there is more

variation in a defined-contribution plan than in a defined-benefits plan, and harms to one participant may not be shared by other participants. *Id.*

Applying Rule 23(a), the court of appeals first concluded that the proposed classes included common questions, including plaintiffs' contentions that defendants imposed excessive fees on all participants, breached its fiduciary duties in their selection of investment options, and made misleading statements. *Id.* at 586, 588–89. The court rejected the defendants' argument that the participants' selection of different investment options precluded a finding of commonality, reasoning that the participants made their choices "against a common background." *Id.* at 586.

But the court of appeals concluded that the proposed classes did not satisfy the requirements for typicality and adequacy of representation. The court focused on the claim regarding imprudent investments, which was based on a contention that the defendants should not have included two particular funds as investment options. That was a problem for typicality and adequacy because many plan participants had not invested in those funds, so they weren't harmed. The court held that typicality requires "a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Id.*

The court also concluded that the class did not meet the requirements of Rule 23(b)(1)(A) or (B), which were the provisions that the district court relied on. Rule 23(b)(1)(A) applies when there is a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The court concluded that the rule didn't apply because the defendants could "divide [the] plan into one or more sub-plans" so that they offered the challenged funds to some people

9

but not others. *Id.* at 588. Rule 23(b)(1)(B) applies when adjudicating an individual's claim could impair a nonparty's legal interests. The court concluded that Rule 23(b)(1)(B) requires a "common interest," which didn't exist because "the alleged conduct harmed some participants and helped others." *Id.*

The court of appeals did not say as much about the other two proposed class claims. As for the misrepresentation claim, the court concluded that certification would depend on the nature of the misrepresentation, and the court didn't have enough information about the claim to determine typicality and adequacy. *Id.* at 589. As for the excessive fees claim, the court noted the defendants' concession that "a claim accusing a plan of excessive, plan-wide administrative fees may be suitable for class treatment of some kind." *Id.* at 590. But the court went on to say that

> [e]ven this part of the case is more complicated than it appears to be at first glance. The complaint implies that some fees are fund-specific, while others may be imposed equally on every plan participant. Precision on this point is essential to ensure that the class representative's claim is typical.

*Id.*

In closing, the court of appeals rejected the view that "class actions are impossible" in the context of a defined-contribution plan. *Id.* at 591. But it also stated that "a greater number of issues will be suitable for class treatment in a defined-benefit case than will be in a defined-contribution case. There is greater potential for intra-class conflict in the defined-contribution context." *Id.* at 591.

Applying *Spano* to this case leads to the same result as that case. The court agrees with plaintiffs that they have raised common questions, such as whether defendants' method of determining recordkeeping fees was a breach of fiduciary duty. But plaintiffs' proposed class

suffers from the same typicality and adequacy problems as the *Spano* classes, which is that defendants' "alleged conduct harmed some participants and helped others." *Id.* at 588. It appears that there were widely disparate results from defendants' decision before 2021 to allow employers to negotiate directly with the recordkeeper regarding fees. For example, Komapaniiets paid between $12.60 and $26.07 in annual fees while Lucero paid between $204.62 and $471.53. As already discussed, plaintiffs do not contend that Kompanietts's fees should have been any lower than they were.

*Spano* included some statements suggesting that a claim involving excessive fees might be appropriate for class certification, but this is when the fees are "imposed equally on every plan participant" in the proposed class. *Id.* at 590. The undisputed evidence submitted by defendants shows that the fees imposed on plan participants differed significantly from 2016 to 2021 depending on the participant's employer. Following the principles in *Spano*, the court cannot certify plaintiffs' proposed class.

Despite *Spano*'s relevance to this case, plaintiffs said nothing in their opening brief about its analysis of typicality and adequacy, and they cited no other Seventh Circuit cases supporting certification in a case like this one. Even after defendants relied heavily on *Spano* in their opposition brief, plaintiffs' attempt to distinguish it was limited to one sentence in their reply brief: "Unlike in *Spano*, this action seeks relief for the Plan's injuries based upon a consistent theory of liability." Dkt. 83, at 12. But the problem in *Spano* wasn't with the plaintiffs' theory of liability; the problem was a class definition that included people who were not harmed by the defendants' alleged ERISA violations. Plaintiffs don't even attempt to distinguish that part of *Spano*'s analysis.

11

Instead, plaintiffs cite the statement in *Abbott v. Lockheed Martin Corp.* that "this court has never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." 725 F.3d 803, 813 (7th Cir. 2013). But *Abbott* is not instructive because the difference between $12.60 and $471.53 cannot be described as "trivial." In *Abbott*, the plaintiffs' claim was that one fund in the plan included imprudent investments, and the class was limited to participants who invested in the fund *and* were harmed as a result. *Id.* at 805–08. Plaintiffs' proposed class is not so limited.

Plaintiffs cite other cases in which courts outside this circuit have approved class certifications of excessive-fee claims. But plaintiffs don't cite any cases involving fees that are as divergent as they are in this case. In *Chavez v. Plan Benefit Services, Inc.*, the court approved class certification when the fees were "either uniform or amenable to a pricing grid in that all plans are charged the same amount of indirect compensation regardless of employers choices." 77 F.4th 370, 387 (5th Cir. 2023) (internal quotation marks and alterations omitted). And in *Khan v. Board of Directors of Pentegra Defined Contribution Plan*, the court concluded that the differences between fees were "minor." No. 20-cv-756, 2023 WL 6256204, at *4 (S.D.N.Y. Sept. 26, 2023). Neither case is instructive, nor is plaintiffs' string citation of other cases that have certified class actions involving excessive fees. *See* Dkt. 47, at 11. Plaintiffs don't dispute defendants' assertion that nearly all the cited cases involved uniform fees. Plaintiffs don't point to any cases that involved the types of variations in fees at issue in this case.

Plaintiffs also cite the statement in *Knight v. Lavine* that "[t]he representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class." No. 12-cv-611, 2013 WL 427880 at *3 (E.D. Va. Feb. 2013). That view was

12

flatly rejected in *Spano*, which noted the challenges of certifying a class of participants of a defined-contribution plan, even in the context of a § 502(a)(2) claim.

The bottom line is that plaintiffs' proposed class does satisfy Rule 23's typicality and adequacy requirements in light of *Spano*. The court will not approve a class based on defendants' conduct from 2016 to 2021.

### 2. Recordkeeping from 2021 to the present

As already discussed, defendants changed the way they assessed recordkeeping fees in 2021. Rather than allowing each employer to negotiate its own fees, defendants took a more uniform approach: fees were set based on the amount of assets each employer's participants had in the plan and the average account balance of the employer's participants. Neither side meaningfully discusses the implications (as they relate to class certification) of the change. Defendants say there were still fee differences among participants of different employers, but they don't say what the differences were or how significant they were, making it impossible to determine whether the court could certify a class of all plan participants on a claim challenging the new method. Plaintiffs do not address the issue at all.

But even if the court assumes that there wouldn't be significant differences in the claims of individuals who participated in the plan from 2021 to the present, the court could not certify such a class because none of the plaintiffs would be a member of it. It's undisputed that all of the plaintiffs withdrew from the plan before 2021, so none were charged fees under the new process. "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. Any claims arising after 2021 would be based on

a significantly different fee structure from the one used for plaintiffs, so plaintiffs' claims would not be typical of the class, and plaintiffs would not be adequate representatives of such a class.

**C. Next steps**

Plaintiffs' briefs do not include a request in the alternative for the opportunity to propose a narrower class or seek additional class representatives, so the court will not set a deadline for filing a renewed motion for class certification. This also makes it unnecessary to consider two of defendants' other arguments: (1) Lucero is not an adequate representative even for a subclass of participants employed by FirstLight Federal Credit Union because most of those participants received a partial refund of fees that she didn't receive; and (2) none of the named defendants are adequate class representatives because they are unfamiliar with the case and filed misleading declarations about the scope of their knowledge. The case will proceed on Lucero's claim only.

ORDER

IT IS ORDERED that plaintiffs' motion for class certification, Dkt. 46, is DENIED.

Entered January 9, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge