# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BRENDA L. LUCERO, HEATHER BARTON, ILONA KOMPANIIETS and CYNTHIA HURTADO, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 3:22-cv-00208-jdp |
| CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF DIRECTORS OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF TRUSTEES OF RETIREMENT PLANS, THE PLAN ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT, GRANTING CLASS CERTIFICATION FOR SETTLEMENT
PURPOSES, APPROVING FORM AND MANNER OF SETTLEMENT NOTICE,
PRELIMINARILY APPROVING PLAN OF ALLOCATION, AND
<u>SCHEDULING A DATE FOR A FAIRNESS HEARING</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

     A.     Procedural History ...............................................................................2

     B.     Terms of the Settlement Agreement ....................................................3

         1.     Consideration ............................................................................3

         2.     Payment to Participants...........................................................4

         3.     Class.........................................................................................4

         4.     Settlement Class.......................................................................4

         5.     Released Claims .......................................................................5

         6.     Notice ......................................................................................5

         7.     Attorney's Fees .......................................................................5

     C.     Reasons for the Settlement..................................................................5

II.     PROPOSED SCHEDULE ....................................................................................6

III.     DISCUSSION ......................................................................................................6

     A.     Certification of the Class for Settlement Purposes is Appropriate ........6

         1.     The Class Sough To Be Certified For Settlement Purposes Is Different Than The Class Plaintiffs Moved To Certify ............7

         2.     A District Court Is Permitted To Approval A Class For Settlement After A Denial of Class Certification .........................................8

         3.     The Proposed Class Satisfied the Requirements of Rule 23(a) ................10

             a.     The Proposed Class Satisfied the "Numerosity" Requirement of Rule 23(a)(1)........................................10

             b.     The Proposed Class Satisfies the "Commonality" Requirement of 23(a)(2) ................................................11

             c.     The Settlement Class Satisfies the "Typicality" Requirement of 23(a)(3) ................................................11

           i.    Typicality.................................................................12

           ii.   Adequacy and Standing.......................................13

  4.     The Class Satisfies the Requirements of Rule 23(b)(1)............................17

  5.     Rule 23(g) is Satisfied..............................................................18

B.    The Settlement Is Within The Range of Possible Approval ...................................19

  1.     Adequate Representation of the Class by Plaintiffs and Class Counsel ................................................................................19

  2.     The Settlement Was Negotiated at Arms' Length ....................................20

  3.     The Relief Provided for the Class Is Adequate........................................21

        (i)    the costs, risks, and delay of trial and appeal ...............................24

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ...................................................24

        (iii)  the terms of any proposed award of attorney's fees, including timing of payment ........................................25

        (iv)  any agreement required to be identified under Rule 23(e)(3).....................................................................26

  4.     The Proposal Treats Class Members Equitably Relative to Each Other ...................................................................................26

C.    The Settlement Merits Preliminary Approval Under Seventh Circuit Factors .....................................................................................26

  1.     The Strength of the Case for Plaintiffs on the Merits, Balanced Against the Extent of Settlement Offer Favor Preliminary Approval .............................................................................27

        a.    There Are Potentially Meritorious Defenses to the Class Action.............................................................................28

        b.    The Settlement Is Fair in Light of the Strength of Plaintiffs' Case...........................................................................29

c.    The Complexity, Expense and Likely Duration Favor Preliminary Approval ...................................................30

d.    The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement cannot be Determined at this Stage of the Approval Process ...................31

e.    The Opinion of Competent Counsel Favor Preliminary Approval ...................................................................31

f.    The Stage of the Proceedings and the Amount of Discovery Completed Favor Preliminary Approval .......................................32

D.    The Proposed Notice Satisfies Rule 23 of Due Process Requirement .................32

E.    Other Matters ...................................................................34

1.    Necessity of an Independent Fiduciary ...........................................34

2.    Attorneys' Fees and Inventive Award .............................................35

3.    The Scope of the Proposed Release is Justified .............................................36

IV.    CONCLUSION ...................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ............................................... 26

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................9, 16

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ...................................................................27

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................30, 33

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) .................................................................11

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014).................................................. 26

*Braden v. Wal-Mart Stores, Inc*,
588 F.3d 585 (8th Cir. 2009) ...........................................................10, 13, 15

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992).................................................................. 37

*In re CMS Energy Erisa Litigation*,
225 F.R.D. 539 (E.D. Mich. 2004)............................................................18

*Conrad v. Boiron, Inc.*,
869 F.3d 536 (7th Cir. 2017) ...................................................................16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. C 06-4333 PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013),
*report and recommendation adopted sub nom.*
*In re Dynamic Random Access Memory Antitrust Litig.*,
No. C 06-4333 PJH, 2014 WL 12879520 (N.D. Cal. June 27, 2014) ............8

*Feinberg v. T. Rowe Price Grp.*,
610 F. Supp. 3d 758 (D. Md. 2022)..........................................................35

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ...................................................................27

*Fish v. GreatBanc Tr. Co.*,
749 F.3d 671 (7th Cir. 2014)......................................................................37

*Gaines v. BDO USA, LLP*,
No. 22-cv 1878 (N.D. Ill. May 18, 2024) ....................................................23

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998)......................................................................25

*George v. Kraft Foods Glob., Inc.*,
251 F.R.D. 338 (N.D. Ill. 2008)..........................................................12, 17

*Gehrich v. Chase Bank USA, N.A.*:
316 F.R.D. 215, 231 (N.D. Ill. 2016) .........................................................37

*Godfrey v. GreatBanc Tr. Co.*,
No. 18-cv-7918, 2021 WL 6790683 (N.D. Ill. Feb. 21, 2021) ....................14

*Harzewski v. Guidant Corp.*,
489 F.3d 799 (7th Cir. 2007) ................................................................13, 14

*Howard v. Cook Cnty. Sheriff's Office*,
989 F.3d 587 (7th Cir. 2021) .....................................................................12

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ......................................................................37

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
No. 16 cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..................23

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
877 F.3d 276 (7th Cir. 2017) .....................................................................27

*LaRue, v. DeWolff, Boberger & Associates, Inc.*
128 S.Ct. (2008)........................................................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13MD02420YGRDMR, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020),
*aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ...............8

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) .................................................................28

*In re Marsh ERISA Litigation*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................35

*Mezyk v. U.S. Bank Pension Plan*,
No. 09-cv-384-JPG, 2011 WL 601653 (S.D. Ill. Feb. 11, 2011)...................................................18

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
No. 18-CV-01526, 2021 WL 5832788 (N.D. Ill. Nov. 22, 2021) ..................................................9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)...................................................................................................................33

*Pena v. Taylor Farms Pac., Inc.*,
No. 2:13-CV-01282-KJM-AC, 2020 WL 6392576 (E.D. Cal. Nov. 2, 2020) ..............................9

*Ramirez v. DeCoster*,
203 F.R.D. 30 (D. Me. 2001) .......................................................................................................9

*Rankin v. Conaway*,
No. 02-71045 (E.D. Mich. Feb. 9, 2006) ....................................................................................34

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)......................................................25

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ......................................................................................................29

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................................31, 32

*Sims v. BB&T Corp.*,
No. 15-cv-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019).......................................................23

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ................................................................................................12, 25

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
554 U.S. 269, 128 S.Ct. 2531, 2543, 171 L.Ed.2d 424 (2008)...................................................13

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966)...................................................................................................................17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .................................................................................................29, 30

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................................27, 28, 37

*In re TikTok, Inc., Consumer Priv. Litig.*,
713 F. Supp. 3d 470 (N.D. Ill. 2024) ..........................................................................................37

*T.K. Through Leshore v. Bytedance Technology Co., Ltd.,*
2022 WL 888943 (N.D. Ill. 2022) ...........................................................8

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
No. 15-cv-01614, 2018 WL 8334858 (C.D. Cal. July 30, 2018)..................23

*Valenzuela v. Advantage Sales & Marketing, LLC,*
2024 WL 5316279 (C.D. Cal. Nov. 18, 2024)...........................................36

*Vaughn v. Bay Env't Mgmt., Inc.,*
567 F.3d 1021 (9th Cir. 2009) ............................................................14

*Vogt v. State Farm Life Ins. Co.,*
963 F.3d 753 (8th Cir. 2020) .............................................................16

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
529 U.S. 765S.Ct. 1858, 146 L.Ed.2d 836 (2000)....................................13

*Wachala et al. v. Astellas US LLC,*
2022 WL 408108 (N.D. Ill. Feb. 10, 2022) ........................................11, 16

*In re Wachovia Corp. ERISA Litig.,*
No. 09-cv 262, 2011 WL 13262040 (W.D.N.C. Oct. 24, 2011)...................35

*Williams v. Gen. Elec. Capital Auto Lease, Inc.,*
159 F.3d 266 (7th Cir.1998) ..............................................................37

*Wong v. Accretive Health, Inc.,*
773 F.3d 859 (7th Cir. 2014) .............................................................27

## STATUTES

28 U.S.C. §§ 1715(d) ......................................................................6

29 U.S.C. § 1104 ..........................................................................2

FED. R. CIV. P. 23...................................................................30, 32

FED. R. CIV. P. 23(a) ...........................................................4, 10, 17

FED. R. CIV. P. 23(a)(1) .................................................................10

FED. R. CIV. P. 23(a)(2) .................................................................11

FED. R. CIV. P. 23(a)(3) .........................................................11, 12, 13

FED. R. CIV. P. 23(a)(4) .................................................................16

FED. R. CIV. P. 23(b)(1) ......................................................................... 1, 4, 17, 18

FED. R. CIV. P. 23(b)(1)(A) ................................................................................18

FED. R. CIV. P. 23(b)(1)(B) ................................................................................18

FED. R. CIV. P. 23(b)(2) ..................................................................................1, 4

FED. R. CIV. P. 23(e) ...........................................................................................27

FED. R. CIV. P. 23(e)(1)(B) ................................................................................19

FED. R. CIV. P. 23(e)(2) ........................................................................19, 23, 26

FED. R. CIV. P. 23(e)(2)(C)(ii) ...................................................................... 25, 26

FED. R. CIV. P. 23(e)(2)(D) .................................................................................26

FED. R. CIV. P. 23(e)(3) ........................................................................19, 26

FED. R. CIV. P. 23(f) ...........................................................................................3

FED. R. CIV. P. 23(g) ...........................................................................................18

FED. R. CIV. P. 30(e)(2) .......................................................................................19

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA") .................................................... 6

Employee Retirement Income Security Act of 1974 ........................................ *Passim*

*Newberg on Class Actions* § 4:63 (5th ed. 2021) ..............................................7

Newberg on Class Actions, §§ 8.12, 8:15, 8:17, 8:28; 8:33 (5th ed. 2014) ...................................33

## I.    INTRODUCTION

Plaintiffs Brenda L. Lucero, Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado, (collectively "Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in support of their renewed motion to the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement[1]") described herein; (2) certifying the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) for settlement purposes; (3) approving the form and method of Class Notice; (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, of payment of attorneys' fees and expenses, and of a potential Case Contribution Award to the Named Plaintiffs; and (5) enjoining Class Members from pursuing any claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the settlement.[2] Plaintiffs' instant motion and memorandum addresses concerns detailed in the Court's March 18, 2025 Opinion and Order ("Opinion") (Dkt. No. 209) denying without prejudice Plaintiffs' Unopposed Motion and Memorandum for Preliminary Approval of Class Action Settlement, and related relief (Dkt. No. 200 -206).

The Settlement provides monetary consideration to current and former participants in accordance with a Plan of Allocation specific to the two employers impacted by this Settlement – FirstLight Federal Credit Union or California Coast Credit Union.  In doing so, the Settlement resolves the claims filed against Defendants Credit Union Retirement Plan Association

---

[1] A copy of the Settlement Agreement was previously filed with the Court at Dkt. No. 202-01.  Plaintiffs re-attach the Settlement Agreement as Exhibit 1 to the Declaration of Mark K. Gyandoh in Support of Plaintiffs' Renewed Motion for Preliminary Approval ("Gyandoh Declaration" or "Gyandoh Decl.") filed herewith.

[2] Unless otherwise defined herein, capitalized terms shall have the meaning contained in the parties' Settlement Agreement.

("CURPA"), The Board of Directors of the Credit Union Retirement Plan Association ("Board"), the Board of Trustees of Retirement Plans ("Trustees") and the Plan Administration Committee ("PAC"), and John Does 1-30 (collectively "Defendants"), and was reached after vigorous arm's-length negotiations and Plaintiffs' consultation with a damages expert.[3]

### A.    Procedural History

To avoid unnecessary repetition, the full procedural history of this case is recounted in the accompanying Gyandoh Declaration.[4]  To summarize, on April 12, 2022, Plaintiffs filed a putative Class Action Complaint[5] (ECF No. 1) in this Court against Defendants, alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). *See* ECF No. 1.  The Complaint alleged that Defendants breached their fiduciary duties to the Credit Union Retirement Plan Association 401(k) Plan and its participants in violation of 29 U.S.C. § 1104 by failing to control the Plan's recordkeeping and administration costs. *Id*., at ¶11.

Following briefing on Defendants' Motion to Dismiss the Complaint, on March 9, 2023, the Court issued an Opinion and Order denying Defendants' motion to dismiss. *See* ECF No. 38. Defendants filed their Answer and Affirmative Defenses to the Complaint on April 6, 2023. *See* ECF No. 41.  On July 14, 2023, Plaintiffs filed their Motion for Class Certification. *See* ECF No. 46.  Following full briefing on the motion, on January 9, 2024, the Court denied Plaintiffs' motion for class certification. *See* ECF No. 104.

---

[3] This Memorandum shall not be construed or used as an admission, concession, or declaration by or against the Defendants of any fault, wrongdoing, breach, or liability, or a waiver of any claims or defenses, including but not limited to those as to the propriety of any amended pleadings or the propriety and scope of class certification.

[4] *See also* Dkt. No. 201, memorandum in support of motion for preliminary approval, at 2-3.

[5] On November 17, 2023, Plaintiffs filed an Amended Complaint for the sole purpose of correctly naming certain defendants and clarifying their roles. *See* ECF No. 100.

Plaintiffs filed a Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f), which the United States Court of Appeals for the Seventh Circuit denied on February 12, 2024. *See* ECF No. 116. Subsequently on March 3, 2024, Defendants filed a Motion for Summary Judgment and Defendants Proposed Findings of Fact in Support of Motion for Summary Judgment. *See* ECF Nos. 134-135, 137-167. On April 27, 2024, Plaintiffs filed their opposition. *See* ECF Nos. 176, 189-190.  The Court denied the Motion for Summary Judgment as moot after the Parties notified the Court that they reached a settlement. *See* Dkt. No. 196.

Prior to settling, the Parties conducted extensive discovery, which led to the production of approximately 25,409 pages of documents and the taking of 10 depositions. Plaintiff Lucero was deposed August 10, 2023; Plaintiff Barton was deposed August 11, 2023; Plaintiff Kompaniiets was deposed August 15, 2023; and Plaintiff Hurtado was deposed on August 21, 2023.  *See* client declarations attached to Gyandoh Decl. as Exs. 2 through 5. Board Member Anne Arrand was deposed on October 5, 2023, and former Board Member Susan Parisi was deposed on October 10, 2023. Mark Werner, Plan Administration Committee Chair, was deposed on October 17, 2023.

In addition, a total of three expert witnesses were deposed. Plaintiffs produced an expert report and a supplemental expert report from expert Michael Geist. Defendants produced expert reports from Peter Swisher and Steven Case.

**B.**     **Terms of the Settlement Agreement**

The following summarizes the principal terms of the Settlement.[6]

1.     **Consideration.** Defendants will contribute $570,000 to a qualified settlement fund.

---

[6] *See* Gyandoh Decl. at Ex. 1.

2.     **Payment to Participants.**   Payment will be made to the Settlement Class in accordance with a Plan of Allocation.  The Plan of Allocation first allocates the Net Settlement Amount[7] between the Plan as adopted by FirstLight Federal Credit Union and the Plan as adopted by California Coast Credit Union (each a "sub-Plan") based on the fees applicable to each and their length of time participating in the MEP.  The Plan of Allocation then allocates each sub-Plan's share of the Net Settlement Amount to Class Members based on their balances as a proportion to the total balances of all Class Members affiliated with each sub-Plan.

3.     **Class.** The Settlement contemplates that the Court will certify a non-opt-out class under FED. R. CIV. P. 23(a) and 23(b)(1) and/or (b)(2), including all participants and beneficiaries (or alternate payees of those individuals) in the Plan as adopted by the two employers addressed in the Settlement between April 12, 2016 and the date of Preliminary Approval of the Settlement.

4.     **Settlement Class**. The Settlement defines the Settlement Class to mean all persons, except Defendants and their immediate family members, who have been participants or beneficiaries of the Credit Union Retirement Plan Association 401(k) Plan as adopted by FirstLight Federal Credit Union or California Coast Credit Union ("Class Plan") from April 12, 2016 through the date of the Preliminary Approval Order, and any Alternate Payee of a Person subject to a QDRO who participated in the Class Plan at any time from April 12, 2016 through the date of the Preliminary Approval Order.

---

[7] The Settlement Agreement defines the "Net Settlement Amount" as the Gross Settlement Amount of $570,000 less:  (a) all Attorneys' Fees and Costs paid to Class Counsel as authorized by the Court; (b) all Case Contribution Awards as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for (i) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (ii) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (iii) an amount estimated for adjustments of data or calculation errors.

5.      **Released Claims.** The Settlement Agreement generally defines the Released Claims as claims brought by Plaintiffs or claims that could have been asserted by Plaintiffs based upon the allegations in the instant Action. *See* Gyandoh Decl. at Ex. 1, Art. 1.36.

6.      **Notice.** A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement. The Preliminary Approval Order provides for the following notices: (a) a Proposed Notice of Class Action Settlement and Fairness Hearing (Exhibit A to the Settlement Agreement), to be mailed to the last known mail address of members of the Settlement Class (or email if available); and (b) internet publication of the Settlement Agreement and Class Notice on www.CreditUnionERISAsettlement.com along with a toll- free telephone support line.

7.      **Attorneys' Fees.** By separate application to be filed prior to the Fairness Hearing, Class Counsel will seek an award of attorneys' fees, expenses and Case Contribution Awards for the Named Plaintiffs. Class Counsel will seek an award of $158,317.50 for attorneys' fees, up to $95,000 for reimbursement of litigation expenses, and a Case Contribution Award for each of the Named Plaintiffs up to $10,000.

**C.      Reasons for the Settlement**

Plaintiffs have entered into this proposed Settlement with an understanding of the strengths and weaknesses of their claims. This understanding is based on: (1) the Rule 12 motion practice undertaken by the parties; (2) investigation and research; (3) the likelihood that Plaintiffs would prevail on their claims; (4) the range of possible recovery; (5) the substantial complexity, expense, and duration of litigation necessary to prosecute this action through trial, post-trial motions, and likely appeals, and the significant uncertainties in predicting the outcome of such complex litigation; and (6) Defendants' determination to fight and contest the case. Having undertaken this

analysis, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval.

## II.     PROPOSED SCHEDULE

The Parties have agreed to the following schedule of events, the dates of which will be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing of Class Notice | Within thirty-five (35) days of entry of the Preliminary Approval Order |
| Deadline for posting Class Notice to website | Within thirty (30) days of entry of the Preliminary Approval Order |
| Deadline for filing Plaintiffs' motions for final approval, attorneys' fees and expenses, and Case Contribution Award to the Named Plaintiffs | Forty-five (45) days prior to the Fairness Hearing |
| Deadline for members of the Settlement Class to comment upon or object to the proposed Settlement and any notice of intent to appear at the Fairness Hearing | Twenty-one (21) days prior to the proposed Fairness Hearing |
| Deadline for filing Plaintiffs' supplemental memorandum in support of motions for final approval, attorneys' fees and expenses, and Case Contribution Award to the Named Plaintiffs, and for either Parties to respond to any comments or objections | Seven (7) days prior to the proposed Fairness Hearing |
| Proposed Fairness Hearing | A date to be set by the Court, no sooner than ninety (90) days after the motion for entry of the Preliminary Approval Order[8] |

## III.     DISCUSSION

The Court having reviewed the previously filed motion (and memorandum in support) for Preliminary Approval of the Settlement (Dkt. Nos. 200 -206), identified several areas of concern. Plaintiffs address these concerns below.

### A.     Certification of the Class for Settlement Purposes is Appropriate

---

[8] Pursuant to the U.S. Class Action Fairness Act of 2005, at 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

### 1. The Class Sought To Be Certified For Settlement Purposes Is Different Than The Class Plaintiffs Moved To Certify

As the Court acknowledges in the Opinion *(id.* at 3)*,* the Class sought to be certified for settlement purposes is not the same as the one Plaintiffs moved to certify in their Motion for Class Certification filed on July 14, 2023. (ECF No. 46).  In that Motion, Plaintiffs sought to certify a class with all participants in the Credit Union Retirement Plan Association 401(k) Plan from April 12, 2016 through the date of judgment.  (*Id.* at 1).  Defendants presented evidence regarding the differences in how each employer negotiated the fees and terms of the version of the plan they separately adopted (ECF No. 69 at 10-11, ECF Nos. 70-71) and thus the Court concluded there were too many differences to certify all participants in a single class.  (ECF No. 104 at 10-14).

The class sought to be certified for settlement purposes, however, differs from that proposed class to account for the evidence presented by Defendants and the Court's ruling. Specifically, the class sought to be certified for settlement purposes is limited to participants of the specific Plaintiffs' employers and is now defined as ""[a]ll Persons, except Defendants and their immediate family members, who have been participants or beneficiaries of the Class Plan from April 12, 2016 through the date of the Preliminary Approval Order, and any Alternate Payee of a Person subject to a QDRO who participated in the Class Plan at any time from April 12, 2016 through the date of the Preliminary Approval Order."

Defendants do not contest that as among each employer in the Class Plan, the participants were treated uniformly (e.g. all participants affiliated with FirstLight Financial Credit Union were charged the same asset-based recordkeeping fee and likewise for all participants affiliated with

California Coast Credit Union).[9]  Thus, as is discussed in greater detail below, there is now typicality as how this new class is defined for settlement purposes.

### 2. A District Court Is Permitted To Approve A Class For Settlement After A Denial of Class Certification

From a strictly procedural perspective, a district court is permitted to certify a class for settlement purposes in a circumstance such as that presented here.

Many courts have held that individualized issues that may bar certification for litigation purposes do not pose the same problems in the context of certification for settlement purposes. *See T.K. Through Leshore v. Bytedance Technology Co., Ltd*., 2022 WL 888943, at *5, *13 (N.D. Ill. 2022) (quoting 2 William Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2021)) (noting that "'individualized issues' that may bar certification for adjudication purposes will not necessarily bar certification for settlement"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013), *report and recommendation adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, No. C 06-4333 PJH, 2014 WL 12879520 (N.D. Cal. June 27, 2014) (granting certification for settlement purposes where the court had previously denied certification for litigation purposes, stating that nothing in the court's prior ruling prevents the two proposed settlement classes "from being certified for *settlement* purposes"); *In re Lithium Ion Batteries Antitrust Litig*., No. 13MD02420YGRDMR, 2020 WL 7264559, at *10 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (certifying settlement classes although the court had previously denied certification of the same class for litigation purposes).

Indeed, the Supreme Court ruled that "settlement is a factor in the calculus," highlighting

---

[9] This is so for the time period prior to 2021 and for 2021 to present.

that the certification inquiry is not the same in the settlement context as it is when certification is for purposes of trial. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).  Specifically, although individual interests may divide class participants in certain respects for litigation purposes, courts may find that those same individual issues are unlikely to divide the class against itself for settlement purposes. *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2020 WL 6392576, at *8 (E.D. Cal. Nov. 2, 2020) (ruling that, "[i]n light of the settlement agreement, the individualized issues described [in prior denial of class certification] appear unlikely to divide the class against itself"); *see also Ramirez v. DeCoster*, 203 F.R.D. 30 (D. Me. 2001) (finding that, while individual inquiries remained, these inquiries had "los[t] their predominance.").

And, it is clear that courts can certify classes for purposes of settlement even when those courts previously denied certification if the parties modify the class definition to resolve concerns noted in the denial of class certification. *Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18-CV-01526, 2021 WL 5832788, at *5 (N.D. Ill. Nov. 22, 2021).  Here, the Court raised concerns with certifying the class requested in the original motion due to typicality concerns, noting that the recordkeeping fees varied between employers both pre- and post-2021. (ECF No. 104 at 10-14). The classes proposed for purposes of settlement, however, remedy these concerns. [10]  In the Opinion, the Court states:

> The parties' new proposed class definition is narrower and addresses the court's first concern because it includes only the plan participants who worked for the same employers as the class representatives. The parties represent that there are at least 1,000 class members in the modified class, Dkt. 201, at 19, so the class is still sufficiently numerous. But the parties say little in their motion about the court's second concern about the named plaintiffs' adequacy to represent current plan

---

[10] In addition, the Court's order denying class certification remains subject to appeal.  Although the Seventh Circuit concluded that it would not grant an interlocutory appeal to review that ruling under Rule 23(f) (ECF No. 116), if the case is continued to be litigated, the decision denying class certification remains open for review by the Seventh Circuit once there is a final decision on the merits of the Action by this Court.

participants.

Opinion at 3.  More specifically, the Court states the Parties do not address whether the Named Plaintiffs can adequately represent the proposed Settlement Class, which is defined as April 12, 2016 through the date of the Preliminary Approval Order," when "none of the named plaintiffs were plan participants after 2021."  Opinion at 3.  As explained more fully below in Section_III.A.3c.ii, Plaintiffs are adequate to represent the entire Settlement Class because under ERISA, plaintiffs advancing claims on behalf of a plan can "seek relief… that sweeps beyond [their] own injury." *Braden v. Wal-Mart Stores, Inc*, 588 F.3d 585, 593 (8th Cir. 2009).

### 3. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### a. The Proposed Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Initially, Plaintiffs alleged that the Class consists of over 9,000 individuals (see ECF No. 104, at 6), which was the approximate number of participants employed in over 100 participating employers in the Plan. However, for settlement purposes, as discussed above, Plaintiffs revise the Class definition to only those participants employed by FirstLight Federal Credit Union or California Coast Credit Union. In 2016, FirstLight Federal Credit Union had 393 employees that were participants in the Plan. By 2021, the number of FirstLight Federal Credit Union participants increased to 413. In 2018, California Coast Credit Union had 655 employees that were participants in the Plan. By 2021, the number of California Coast Credit Union participants increased to 759. Therefore, there are at least 1,000 Class members. The Settlement Class is thus too large for joinder to be practicable. Further, the Court previously determined that numerosity is established. See ECF No. 104, at 6 ("the class is

sufficiently numerous to make joinder impracticable."). The Court's reasoning applies equally here.

### b. The Proposed Class Satisfies the "Commonality" Requirement of 23(a)(2)

Plaintiffs must also demonstrate the existence of common questions of law or fact. FED. R. CIV. P. 23(a)(2). In order to satisfy commonality, "there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018).

Plaintiffs have alleged a series of common questions of law and fact, including: (a) whether Defendants are fiduciaries of the Plan; (b) whether Defendants breached their fiduciary duties of prudence by engaging in the conduct alleged in the Complaint; and (c) whether the Board failed to adequately monitor the Committee and other fiduciaries to ensure the Plan was being managed in compliance with ERISA. In sum, here, like in other ERISA cases involving defined-contribution plans, commonality "is easily satisfied" because, "fund participants operate against a common background, and allegations that a fiduciary has breached its duties in the selection of investment options describe a problem that operates across the plan rather than at the individual level." *Wachala,* 2022 WL 408108, at *5 (internal citations omitted).

The Court previously determined that Plaintiffs satisfied the commonality requirement. *See* ECF No. 104, at 9 ("The [C]ourt agrees with plaintiffs that they have raised common questions, such as whether defendants' method of determining recordkeeping fees was a breach of fiduciary duty."). Those same issues exist with respect to the settlement class now sought to be certified for settlement purposes.

### c. The Settlement Class Satisfies the "Typicality" Requirement of 23(a)(3)

The Court previously determined that the "proposed class suffers from the same typicality

and adequacy problems as the *Spano* classes, which is that defendants' 'alleged conduct harmed some participants and helped others.'" See ECF No. 104, at 11 (*citing Spano v. The Boeing Co.*, 633 F.3d 574, 588 (7th Cir. 2011)).  This revised Settlement Class satisfies both requirements.

i.      *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Typicality "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 605 (7th Cir. 2021).

As explained in detail below, none of the Class Plan participants, including Plaintiffs Barton, Kompaniiets, Hurtado, and post-2021 participants, benefited from the alleged breach of fiduciary duties. Had Defendants negotiated a lower benchmark asset-based percentage for recordkeeping fees, all participants, including those that paid fees that were less than the benchmark, would have been reduced proportionally. Even when fees were reduced as of November 2021 for the Class Plan, Plaintiffs allege they were higher than they should have been. Therefore, none of the participants in the Plan benefited from Defendants establishing a ceiling for fees.

In the Seventh Circuit, courts "focus the typicality inquiry on what the defendants' behavior was toward the Plan as a whole and not what it was or what the result of that behavior was on individuals." *See George v. Kraft Foods Glob., Inc.*, 251 F.R.D. 338, 350 (N.D. Ill. 2008). Plaintiffs allege that the failure to negotiate lower recordkeeping fees was a breach of fiduciary duty to the Plan, and as a result, all Plan participants paid excessive recordkeeping fees. Plaintiffs' claims arise from the same course of events as the claims of the Settlement Class. Moreover, with each member of the Settlement Class asserting the same claims arising from the same conduct by

Defendants and seeking the same relief on behalf of the Plan, there can be no fair dispute that the claims asserted by Plaintiffs are typical for purposes of Rule 23(a)(3). Further, as discussed in Section III.A.1., the modified class definition for the Settlement Class addresses the typicality issues raised by the Court in denying Plaintiffs' Motion for Class Certification.

### ii.    *Adequacy and Standing*

As noted *supra*, the Court raises the issue of whether Plaintiffs have standing to represent Plan participants during the post-2021 period given that none of the Plaintiffs were participants in the Plan during that time period. Opinion at 3. Plaintiffs have such standing.

In an analogous situation in a case before the Eighth Circuit, it found that a plaintiff has standing to assert claims on behalf of retirement plan participants even if a plaintiff himself was not a participant in the plan during the entire period. In *Braden*, the district court dismissed the plaintiff's claim because "[i]t concluded that Braden could not possibly have suffered injury before October 31, 2003," the date he first contributed to the Plan." *Braden*. 588 F.3d at 590. In reversing the district court, the Eighth Circuit reasoned as follows:

> Article III generally requires injury to the plaintiff's personal legal interests, *see Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771–72, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), but that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries. To the contrary, constitutional standing is only a threshold inquiry, and 'so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others.' *Id*. at 501, 95 S.Ct. 2197. In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 2543, 171 L.Ed.2d 424 (2008) ( "[F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit.").

*Id*. at 591-592.

The Seventh Circuit's opinion in *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir.

2007) is also instructive. The case involved "cashed out" participants' standing where the Seventh Circuit reasoned "[Defendant] by imprudent management caused the account to be half as valuable as it would have been under prudent management. The benefit in a defined-contribution pension plan is, to repeat, just whatever is in the retirement account when the employee retires or *whatever would have been there had the plan honored the employee's entitlement,* which includes an entitlement to prudent management." *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804-05 (7th Cir. 2007) (emphasis in original).

In applying *Harzewski,* the court in *Godfrey v. GreatBanc Tr. Co.*, held that "the defendants' argument that certain class members lack standing because they left the Plan or did not hold stock at the time of the transactions is unavailing. The Seventh Circuit has rejected this sort of argument." *Godfrey v. GreatBanc Tr. Co.*, No. 18-cv-7918, 2021 WL 679068, at *3 (N.D. Ill. Feb. 21, 2021). Typicality and adequacy were satisfied in *Godfrey* because the named plaintiffs "were all members of the Plan during the proposed class period, and are making the same claims that other class members could make […] even if they did not hold shares at the time of the challenged transaction." *Id.*, at *6.

The Ninth Circuit has held that "[s]ince *Harzewski* was decided, five other circuits have held that former employees who have cashed out their individual accounts but allege that they are entitled to additional benefits as a result of a breach of fiduciary duty have standing as 'participants' under ERISA, […], and the Supreme Court has cited the Seventh Circuit case with approval." *Vaughn v. Bay Env't Mgmt., Inc*., 567 F.3d 1021, 1028 (9th Cir. 2009) (citing *LaRue,* 128 S.Ct. at 1026 n. 6).

Accordingly, the fact that Plaintiffs ceased to be participants in the Class Plan after 2021 is not an obstacle to finding they have standing to represent participants who were still in the Class

Plan in 2021. Plaintiffs and the post-2021 Class Plan participants share a similar injury (*i.e.,* the purported payment of excessive fees).

In particular, although the Court dismissed Plaintiffs Barton, Kompaniiets and Hurtado for lack of standing on January 9, 2024 because they "were charged fees that [fell] within what plaintiffs themselves contend is reasonable" (*see* ECF No. 104, at 2), the Court was referring to the $100 per participant charge cited in Plaintiffs' Amended Complaint (*see* ECF No. 100, at ¶91). Plaintiffs later asserted in their Motion for Reconsideration that evidence discovered after that submission supports Plaintiffs' allegations sufficient to find that those Plaintiffs do have standing to proceed.

Specifically, discovery demonstrated that Defendants collected recordkeeping fees through an asset-based percentage fee and that the amount participants paid for recordkeeping fees was a function of a percentage level and the assets in each participant's account – meaning that the actual amounts paid by Plan participants varied according to the assets in their accounts. Plaintiffs argued that, if the average per participant fee was reduced to $100, the pro rata rates for all participants, including Plaintiffs Barton, Kompaniiets and Hurtado, would drop proportionally according to the level of assets in their accounts, and thus Plaintiffs Barton, Kompaniiets and Hurtado have standing to represent the Class because they were harmed through precisely the same mechanisms and process failures that caused harm to all participants across the Plan. *See Braden*, 588 F.3d at 593 (a plaintiff with standing "may seek relief . . . that sweeps beyond his own injury."). The same injury applies to persons who were participants in the Class Plan after 2021.

As discussed below, Plaintiffs' calculated damages did not include damages for the Class Plan from 2022 to the present because while damages exist according to Plaintiffs' theory of the case, it would be nominal. *See* Report of Mike Geist filed at Dkt. No. 113, Ex. 3. According to

Plaintiffs' expert Michael Geist, it was not until November 8, 2021, that the Class Plan participants received a reduced recordkeeping and administration ("RKA") fee rate. *Id.* at ¶ 281. However, "the Updated Fee Schedule still resulted in Bundled RKA fee rates that were far higher than what other recordkeepers would have bid and accepted to provide materially identical Bundled RKA services." *Id.* at ¶ 285. Accordingly, although the RKA costs were reduced post-2021, Plaintiffs believe the fees were still above what Plaintiffs allege was reasonable. Thus, the post-2021 Class Plan participants (to the extent they were not already participants in the Class Plan pre-2022) suffered damages but maybe not to the extent of the pre-2022 Plan Class members. Such differences do not preclude typicality or adequacy. *See Wachala et al. v. Astellas US LLC*, 2022 WL 408108, at * 8 (N.D. Ill. Feb. 10, 2022) (agreeing with plaintiffs that "even if there are slightly divergent theories that maximize damages for certain members of the class, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.") (citing *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020)).

Although the Court declined to reinstate Plaintiffs Barton, Kompaniiets and Hurtado because the "argument [came] too late" (*see* ECF No. 132, at 3), for purposes of certifying a class for settlement purposes, the Court can now consider Plaintiffs' argument and determine that all Plaintiffs have standing sufficient to represent the Settlement Class.

Additionally, Plaintiffs will adequately protect the interest of the Class, satisfying Rule 23(a)(4). Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent. "In order to be an adequate representative, the named plaintiff must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (*quoting Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)).

These requirements are met here. As discussed *supra*, Plaintiffs need not have been in the Plan after 2021 to adequately represent all members of the Class. Indeed, Plaintiffs' interests are the same as those of the absentee members of the Settlement Class: all seek to increase the retirement security of the Plan's participants, through monetary and nonmonetary relief. There can be no question that the Plaintiffs' interests are aligned with those of the Settlement Class, and they have retained qualified counsel with extensive experience in representing plaintiffs in class litigation, including ERISA cases.

"A named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained. Rather, the class representative must know the basic facts underlying the lawsuit as alleged in the complaint, and must be willing to participate in discovery." *George*, 251 F.R.D. at 351 (*citing Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966)). Here, each Plaintiff has demonstrated that she fulfilled the duties required of a class representative by appearing for a deposition, responding to discovery requests, reviewing the documents provided by Class Counsel, and maintaining regular communication with counsel in order to stay informed about the case. *See* Declarations of Plaintiffs Hurtado, Kompaniiets, Barton, and Lucero, attached as Exs. 2-5. Finally, Plaintiffs were willing to attend trial, if the matter proceeded that far. Plaintiffs have demonstrated that they understood their responsibilities and duties as class representatives and took all steps necessary to protect the interests of the proposed Class. *Id.*

### 4. The Class Satisfies the Requirements of Rule 23(b)(1)

A class may be certified under FED. R. CIV. P. 23(b)(1) if, in addition to meeting the requirements of FED. R. CIV. P. 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible

standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members. FED. R. CIV. P. 23(b)(1)(A) and (B).

Courts have certified classes under FED. R. CIV. P. 23(b)(1) in ERISA cases for those very reasons. *See In re CMS Energy Erisa Litigation*, 225 F.R.D. at 546; *see also Mezyk v. U.S. Bank Pension Plan*, No. 09-cv-384-JPG, 2011 WL 601653, at *9 (S.D. Ill. Feb. 11, 2011) (Rule 23(b)(1)(A) certification appropriate "to establish one single standard of conduct for the defendants' administration of [a defined benefit Plan]" where participants sought "broad declaratory and injunctive relief" regarding whether plan provisions violated ERISA.).

Moreover, the Advisory Committee on Rule 23 specifically noted that actions that "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of ... beneficiaries" – *i.e.*, an action like the present action – "should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

### 5. Rule 23(g) is Satisfied

FED. R. CIV. P. 23(g) requires the Court to examine the capabilities and resources of class counsel. Class Counsel has explained the claims brought in this action, and the time and effort already expended in connection with this litigation. Moreover, Class Counsel are among the leading ERISA class action plaintiffs' firms, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Class Counsel thus satisfy the requirements of Rule 23(g). *See* Gyandoh Decl., ¶¶ 82-90.

**B.     The Settlement Meets All Rule 23(e)(2) Settlement Approval Requirements[11]**

Pursuant to FED. R. CIV. P. 23(e), at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).   Rule 23(e)(2), in turn, specifies factors the court must ultimately consider at the final approval stage:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Settlement satisfies each of these factors.

**1.  Adequate Representation of the Class by Plaintiffs and Class Counsel**

The Settlement Class was adequately represented by Plaintiffs and Class Counsel in this matter.   Among other things, Class Counsel developed the issues in this case to an appropriate point for settlement. They conducted an extensive investigation, including: (1) a pre-suit request

---

[11] The Opinion stated the Parties must address the "Rule 30(e)(2)" factors in Plaintiffs' renewed motion.  *Id.* at 4. The Parties assume the Court was referring to Rule 23(e)(2).

for Plan documents pursuant to ERISA Section 104(b); (2) reviewing publicly available materials concerning the Plan, such as Form 5500 filings with the Department of Labor, participant account statements, participant disclosure notices, and Summary Plan Descriptions; (3) served written discovery and received responses to the same, along with the production of thousands of pages of documents which were reviewed; (4) participated in extensive negotiations concerning the issues in this litigation; and (5) retained an expert for purposes of trial and to assess damages and to assist in creating a Plan of Allocation.

In addition, as noted above, the written discovery in this matter resulted in the production of approximately 25,409 pages of documents which Class Counsel reviewed. Class Counsel also took several depositions and defended the depositions of the Named Plaintiffs. This formal discovery, in addition to Class Counsel's extensive investigation, gave Class Counsel adequate information to evaluate its position in this dispute.

Plaintiffs also represented the Class admirably.  Each Plaintiff appeared for a deposition, responded to discovery requests, reviewed the documents provided by Class Counsel, and maintained regular communication with counsel in order to stay informed about the case.   These are hallmarks of adequate representation.  The attached client declarations explain in detail the duties the Named Plaintiffs performed in this Action.  *See* Declarations of Plaintiffs Hurtado, Kompaniiets, Barton, and Lucero, attached as Exs. 2-5 (detailing work performed in this action to justify a $10,000 incentive award).

### 2.   The Settlement Was Negotiated at Arms' Length

There can be little doubt that this Settlement was negotiated at arm's length.  After the Court denied Plaintiffs' motion for class certification, on March 15, 2024, Class Counsel communicated a demand to Counsel for Defendants to resolve the litigation on behalf of a

Settlement Class, narrower than the class for which Plaintiffs initially sought class certification. Gyandoh Decl., ¶46. The Parties thereafter engaged in active and arms' length negotiations over several weeks via email and telephone, and eventually, the Parties agreed to resolve the litigation for a Gross Settlement Fund of $570,000. *Id.*, ¶46.

### 3. The Relief Provided for the Class Is Adequate

The Opinion states "the parties provided almost no information about how they arrived at $570,000 as an appropriate settlement amount." Opinion at 4. After negotiations between the Parties regarding the competing methodologies of both Parties' experts, for purposes of using a common methodology to reach a settlement, the Parties settled on the methodology utilized by Plaintiffs' expert Micheal Geist in order to determine damages attributed to the FirstLight Federal Credit Union and California Coast Credit Union plans. As demonstrated below, using what Mr. Geist determined to be the reasonable rate for just the two credit union employers at issue, Plaintiffs' damages totaled $474,396.45:

**FirstLight Federal Credit Union**

| Year | Geist Reasonable Fee | Geist Per-Participant Fee[12] | Difference | No. of Participants | Settlement Calculation |
|------|------|------|------|------|------|
| 2016 | $78 | $179.26 | $101.26 | 393 | $39,795.18 |
| 2017 | $77 | $222.45 | $145.45 | 389 | $56,580.05 |
| 2018 | $66 | $203.43 | $137.43 | 406 | $55,796.58 |
| 2019 | $70 | $245.21 | $175.21 | 414 | $72,536.94 |
| 2020 | $74 | $280.75 | $206.75 | 440 | $90,970 |
| 2021 | $73 | $109.71 | $36.71 | 413 | $15,161.23 |
| | | | | | FirstLight Total: $330,839.98 |

**California Coast Credit Union**

| Year | Geist Reasonable Fee | Geist Per-Participant Fee[13] | Difference | No. of Participants | Settlement Calculation |
|------|------|------|------|------|------|

---

[12] Geist Report Exhibit 9-Plans, cells AZ64–BE64 (available to be emailed to the Court if not accessible on the docket).
[13] Geist Report Exhibit 9-Plans, cells AZ87–BC87.

| 2018 | $66 | $126.29 | $60.29 | 655 | $39,489.95 |
| 2019 | $70 | $140.98 | $70.98 | 698 | $49,544.04 |
| 2020 | $74 | $151.20 | $77.02 | 756 | $58,363.02 |
| 2021 | $73 | $67.94 | $5.06 | 759 | ($3,840.54) |
| | | | | California Coast Total: | $147,397.01 |

**Total: $474,396.45**

Of the total damages, FirstLight's damages represent 69.7%, and California Coast's damages represent 31.1%. For ease of administration, these amounts were rounded to 70% and 30% of the total. In addition to these damages, Plaintiffs negotiated for an additional $95,000 to add to the Gross Settlement Fund so as to lessen the impact of any attorneys' fees and costs awarded by the Court from the Gross Settlement Amount. The total of $569,396.45 was rounded to $570,000 for settlement purposes.

Plaintiffs did not specifically include damages for the Class Plan from 2022 to the present because while damages exist according to Plaintiffs' theory of the case, it would be nominal. *See* Report of Mike Geist filed at Dkt. No. 113, Ex. 3. The chart above shows damages for FirstLight Federal Credit Union plan in 2021 was $15,161.23, and for the California Coast Credit Union plan it was -$3,840.54   As noted above, it was not until November 8, 2021, that the Class Plan participants received a reduced recordkeeping and administration ("RKA") fee rate. *Id.* at ¶ 281. However, "the Updated Fee Schedule still resulted in Bundled RKA fee rates that were far higher than what other recordkeepers would have bid and accepted to provide materially identical Bundled RKA services." *Id.* at ¶ 285. For example, Plaintiffs' Complaint had alleged other retirement plans had paid as little as $21 to $30 per participant for RKA fees. *See* Complaint, ECF. No. 1, ¶ 89. Accordingly, although the RKA costs were reduced post 2021, Plaintiffs believe they were still above what Plaintiffs allege was possible. *Id.* Nonetheless, for purposes of resolving this case, the Parties negotiated a Settlement Amount using the damages numbers Plaintiffs' expert

22

had calculated through 2021.

Given the low number of participants in the FirstLight and California Coast plans, a significant reduction in fees as happened in November 2021 would make damages largely nominal assuming Plaintiffs could prove at trial their reasonable rate or lower rate was appropriate. It would be impractical to continue to calculate potential damages up until the Court preliminarily approves the Settlement even though damages theoretically would continue to accrue until the present under Plaintiffs' theory of the case. Moreover, given that the Gross Settlement Amount – after subtraction of attorneys' fees - represents close to 100% of the damages for the Class Plan, even doubling the potential damages for the Class Plan to account for potential damages from 2022 to 2025 still results in a remarkable settlement.

Put another way, if one were to assume potential damages from April 12, 2016 (first day of the Class Period) to the present was $948,792 ($474,396.45 x2 ), the Settlement Amount would still be reasonable because it would account for more than 50% of the damages. *See, e.g., Johnson v. Fujitsu Tech. & Business of America, Inc.*, No. 16 cv-03698, 2018 WL 2183253, at \*\*6-7 (N.D. Cal. May 11, 2018) (approving an ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Gaines v. BDO USA, LLP*, No. 22-cv 1878, slip op. at 3 (N.D. Ill. May 18, 2024) (approving settlement that was less than 3% of plaintiffs' claimed damages in an ERISA case); *Sims v. BB&T Corp.*, No. 15-cv-732, 2019 WL 1995314, at \*5 (M.D.N.C. May 6, 2019) (approving a settlement of 19% of the total damages sought by the plaintiffs); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-cv-01614, 2018 WL 8334858, at \*5 (C.D. Cal. July 30, 2018) (approving settlement amounting to 17-54% of potential damages). Moreover, it is likely the majority of Class Plan participants from 2022 to the present are the same people who were in the Class Plan pre-2022 given the nature of retirement

plans as long term retirement vehicles.

The Relief provided for the class is also adequate taking into consideration the following factors delineated under FED. R. CIV. P. 23(e)(2):

(i)    **the costs, risks, and delay of trial and appeal**;

If this Settlement is not approved, a substantial amount of work would need to be completed, including the filing of Defendants' renewed motion for summary judgment. Plaintiffs believe that their claims would survive summary judgment, but nonetheless are aware of the risks associated with proceeding to trial. Additionally, because the Court denied class certification (discussed above) the motion for summary judgment and potential trial would involve only Plaintiff Lucero's claim, and not a class-wide claim. After entry of final judgment (win or lose), Plaintiff Lucero would likely appeal the final judgment and all intervening decisions, including the denial of class certification. The cost, risk and potential delay of the case thus justifies settlement of this matter.

(ii)    **the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;**

The relief provided is adequate and equitable to all Settlement Class members as the proposed Plan of Allocation provides for a *pro rata* distribution. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In addition, the Settlement Agreement ensures prompt payment to the Plan, which will ultimately be credited to the accounts of Class members who are still currently in the Class Plan. Settlement Class members who are no longer participants in the Class Plan, and are entitled to a Settlement distribution, will be mailed a check. *See* Plan of Allocation, at ¶ II.F. No Settlement Class member will be required to submit a claim form as all relevant information will be in the hands of the Settlement Administrator who will be responsible for calculations under the Plan of Allocation.

24

The Court in its Opinion asked the Parties to explain Section II.H of the Plan of Allocation which authorizes the Settlement Administrator to make necessary changes to the methodology of the Plan of Allocation.  Opinion at 8.  The reasoning behind this provision is to give the Settlement Administrator limited discretion in implementing the Plan of Allocation so long as the method of distribution remains *pro rata.*  The Parties believe this discretion is necessary to account for any unanticipated anomalies with the Class Plan data to be provided by Defendants.  Because the Court retains jurisdiction over the Plan of Allocation, *see*  Plan of Allocation, Section III, the Parties will inform the Court if any changes are necessary to the Plan of Allocation, and will seek leave before implementing any such changes.

In short, the Plan of Allocation satisfies the requirement of Rule 23(e)(2)(C)(ii).

### (iii) the terms of any proposed award of attorney's fees, including timing of payment;

The terms of the proposed award of attorneys' fees is fair to the Class.  Class Counsel will seek no more than $158,317.50 in attorneys' fees and will cap any request for reimbursement of expenses from the Gross Settlement Fund at $95,000.  The details of these requests are set forth in the Gyandoh Declaration.  Further, the estimated settlement administration cost is approximately $22,106.[14]  The requested attorneys' fees represents roughly 28% of the total Gross Settlement Amount of $570,000.  This amount would be paid only after the Court grants final approval and the Settlement becomes final.

The proposed 28% of the Gross Settlement Amount as attorneys' fees is less than the one-third of the settlement fund that is typically awarded in analogous ERISA class actions and will likely be approved by the Court.  "[A] customary contingency fee would range from 33 1/3% to

---

[14] *See* RG/2 declaration, ¶3

40% of the amount recovered." *Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001); *see also Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998) ("[t]he typical contingent fee [contract] is between 33 and 40 percent…"); *Spano v. The Boeing Co.,* 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (awarding 1/3 of the settlement fund); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (same); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

The amount sought is also reasonable when viewed through the lens that Class Counsel has expended over $800,000 in fees on this case to date. However, excluding time spent on the prior motion for preliminary approval Class Counsel has expended $719,606 using July 8, 2024 (over a year ago) as the cut-off. *See* Gyandoh Decl., 67. Class Counsel also has out-of-pocket expenses of $142,333,69. The amount of fees spent thus far means Class Counsel's multiplier is .22. *Id*. 67 Effectively, the attorneys' fee requested represents **_78% less_** money than Class Counsel put into the case. And the expenses sought represents $47,333.69 **_less_** than the expenses actually incurred.

Accordingly, the requirement of Rule 23(e)(2)(C)(ii) will likely be met.

### (iv) any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

### 4.  The Proposal Treats Class Members Equitably Relative to Each Other

Finally, the Plan of Allocation detailed in the Settlement Agreement clearly treats class members equitably relative to each other because of the *pro rata* nature of the proposed distribution, thereby satisfying the requirement of Rule 23(e)(2)(D).

### C.  The Settlement Merits Preliminary Approval Under Seventh Circuit Factors

The Seventh Circuit has also enumerated factors that encompass the scope of the Fed. R.

CIV. P. 23(e)(2) factors described above, and which Plaintiffs satisfy as described below. Preliminary approval is warranted when a proposed class action settlement is "within the range of possible approval" so as to provide a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The Seventh Circuit has specified the factors, which overlap with the Rule 23(e) factors addressed above, that should be considered in determining whether the proposed settlement is within the range of possible approval and with regard to its fairness, reasonableness and adequacy to class members:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed…

*In re TikTok, Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d at 1087 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

"[T]he Seventh Circuit has "instructed district courts to refrain from resolving the merits of the controversy or making a precise determination of the parties respective legal rights" when considering the first factor, *i.e.*, strength of the case for plaintiffs on the merits. *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017) (internal quotations and citations omitted).

**1. The Strength of the Case for Plaintiffs on the Merits, Balanced Against the Extent of Settlement Offer Favor Preliminary Approval**

The Settlement provides substantial monetary relief to the Plan for distribution to members of the Class. The Settlement was achieved only after arm's-length negotiations between well-informed and experienced counsel after hard-fought motion practice and a substantial exchange of discovery. The arm's-length nature of the settlement negotiations creates a presumption that the Settlement is fair. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate).

a. <u>There Are Potentially Meritorious Defenses to the Class Action</u>

Throughout the litigation, Defendants have forcefully disputed their liability at every stage, raising a host of factual and legal defenses. The Parties have exhaustively analyzed and debated their respective positions as part of their negotiations. While Class Counsel believe strongly in their claims and the legal basis for them, they also appreciate the risk inherent in this litigation. Specifically, the area of the law involved in the case – ERISA – is one of the most nuanced, unpredictable, and rapidly developing areas of law. As a result, any prediction of success at trial and post-trial appeals is far from reliable.

If this Settlement is not approved, a substantial amount of work would need to be completed, including Defendants' renewed motion for summary judgment. Plaintiffs believe that their claims would be successful, but nonetheless are aware of the risks associated with proceeding to trial. Additionally, because the Court denied class certification (discussed above) the motion for summary judgment and potential trial would involve only Plaintiff Lucero's claim, and not a class-wide claim. After entry of final judgment (win or lose), Plaintiff Lucero would likely appeal the final judgment and all intervening decisions, including the denial of class certification.

Consequently, the Court need not undertake a "mechanical mathematic valuation exercise" in determining whether the amount of the Settlement is fair, reasonable and adequate. *In re TikTok, Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d at 1088. Instead, the Court "need only recognize that the proposed settlement ensures meaningful, immediate monetary … relief" for the Plan and its participants and "weigh those benefits against the substantial risks that Plaintiffs would face in seeking a better outcome at trial." *Id.*

b. <u>The Settlement Is Fair in Light of the Strength of Plaintiffs' Case</u>

The uncertain nature of the legal issues implicated by proceeding to trial makes it difficult to calculate a precise probability of success. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ("In conducting this analysis, the district court should begin by 'quantifying the net expected value of continued litigation to the class.'") (quoting *Reynolds*, 288 F.3d at 284–85).

The Parties agreed to resolve the litigation for a Gross Settlement Fund of $570,000 with the net amount of money available to the Settlement Class estimated to be roughly $240,000 after deduction of attorneys' fees, expenses, potential Case Contribution Awards, and settlement administration fees. *See* Gyandoh Decl., ¶ 48.  This amount is nearly half of the potential maximum damages of $531,000.00 Plaintiffs calculated for the FirstLight Federal Credit Union and California Coast Credit Union participants through 2021 who comprise the Settlement Class ($346,339.24 in damages for participants employed by FirstLight Federal Credit Union and $185,173.57 in damages for participants employed by California Coast Credit Union). The underlying rationale for these amounts are explained *supra* in Section III.B.3.

In light of potentially serious impediments to success that Plaintiffs would experience should they attempt to continue this litigation, the net expected value to the Class Members of

29

following that course would likely be less than the recovery afforded by the proposed Settlement. This is because numerous obstacles could undo the litigation, including the inability to get a class certified and a failure to maintain class certification through trial, *Daubert* challenges to Plaintiffs' expert witnesses, and dispositive motions, which could leave Class Members without any recovery whatsoever. "Plaintiffs would face an uphill battle" in obtaining greater relief at trial. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 963 (N.D. Ill. 2011).

> c. The Complexity, Expense and Likely Duration Favor Preliminary Approval

"The Seventh Circuit has held that the likely complexity, length, and expense of continued litigation are relevant factors in determining whether a class-action settlement is fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) (citing *Synfuel Technologies, Inc.*, 463 F.3d at 653). "[S]ettlement avoids the costs, delays, and multiple of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).

If the Court approves the Settlement, the present litigation will come to an end and Class Members will realize immediate benefits as a result. If the Court denies approval, however, protracted litigation over several years would likely ensue. Plaintiff Lucero would face an onslaught of motions, including *Daubert* motions, a renewed summary judgment motion, and motions *in limine*. If the case were to survive the summary judgment stage, it would proceed to trial. Given the complex factual issues implicated by this ERISA class action, a trial, and subsequent appeals, would be both lengthy and expensive.

Class Counsel believe that pursuant to ERISA, Defendants breached their fiduciary duties to the Plan participants. However, as demonstrated throughout the Action, Plaintiffs are also aware

that Defendants adamantly dispute this position and that the Court (and ultimately the Seventh Circuit) could disagree with Plaintiffs.

Throughout the litigation, Defendants have forcefully raised defenses to Plaintiffs' claims, and there is no reason to believe they would not continue to do so through trial and appeals if necessary. The monetary consideration to the Class Plan is far better for the Class Plan's participants than the possibility of a more significant recovery, if any, after an expensive and protracted trial and appeal. Thus, the complexity, length, and expense of continued litigation support preliminary approval of the Settlement in this case.

<blockquote>

d.  <u>The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement cannot be Determined at this Stage of the Approval Process</u>
</blockquote>

Class Counsel will address any objections at the Fairness Hearing if the Court grants preliminary approval of the Settlement.

<blockquote>

e.  <u>The Opinion of Competent Counsel Favor Preliminary Approval</u>
</blockquote>

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Here, Class Counsel have extensive experience in prosecuting class action ERISA litigation. Furthermore, Class Counsel have been able to develop the issues in this case to an appropriate point for settlement. They have conducted an extensive investigation, including: (1) a pre-suit request for Plan documents pursuant to ERISA Section 104; (2) reviewing publicly available materials concerning the Plan such as Form 5500 filings with the Department of Labor, participant account statements, participant disclosure notices, and Summary Plan Descriptions; (3) served written discovery and received responses to the same, along with the production of thousands of pages of documents; (4) participated in extensive negotiations concerning the issues

in this litigation; and (5) retained an expert to assess damages and create a Plan of Allocation. While much additional work would need to be done to prepare the case for trial, Plaintiffs possess a comprehensive understanding of both the strengths and the weaknesses of their claims, and believe that the Settlement is fair, reasonable and is in the best interests of the Class Plan and the Class. This opinion weighs heavily in favor of preliminary approval of the Settlement.

> f. The Stage of the Proceedings and the Amount of Discovery Completed Favor Preliminary Approval

In this case, prior to filing their claims, Class Counsel extensively investigated the publicly available information and investigated the facts, including review and analysis of Plan-related documentation and analysis of the Plan's publicly available financial statements. Gyandoh Decl. ¶ 32. In addition, Defendants produced Plan-related documents. As indicated above, the Parties conducted extensive discovery, which led to the production of approximately 25,409 pages of documents and ten (10) depositions. This formal discovery, in addition to Class Counsel's extensive investigation, gave Class Counsel adequate information to evaluate its position in this dispute. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (ruling "that counsel conducted no formal discovery prior to settlement does not necessarily preclude final approval."). Thus, the stage of proceedings at which this case settled supports preliminary approval.

**D.     The Proposed Notice Satisfies Rule 23 of Due Process Requirements**

As an initial matter, Class Counsel has asked the Court to approve the selection of RG/2 Claims Administration, LLC ("RG/2") as the Settlement Administrator for the Settlement. *See* Proposed Preliminary Approval Order, ¶ 8. Located at 30 South 17th Street, Philadelphia, PA 19103, RG/2 Claims is a full-service class action settlement administrator offering notice, claims processing, allocation, distribution, tax reporting, and class action settlement consulting services.

RG/2 Claims' experience includes the provision of notice and administration services for settlements arising from antitrust, data security breach, consumer, civil rights, employment, negligent disclosure, and securities fraud allegations. Since 2000, RG/2 Claims has administered and distributed in excess of $2 billion in class action settlement proceeds. *See* Decl. of RG/2.

In order to satisfy due process considerations, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). However, "[d]ue process does not require that every class member receive notice." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011).

Here, the proposed Class Notice describes in plain English the Settlement; the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate; the maximum attorneys' fees and Case Contribution Award for the Named Plaintiffs that may be sought; the procedure for objecting to the Settlement; and the date and place of the Fairness Hearing.

With the Court's approval, the Class Notice will be mailed to each member of the Settlement Class, no later than thirty-five (35) days after the entry of the Preliminary Approval Order and posted to the dedicated Settlement website (described below) within thirty (30) days. Last known addresses of members of the Class are available from the Plan's current recordkeeper. In addition, the Settlement Agreement and Class Notice will be published on www.CreditUnionERISAsettlement.com. Defendants agree to search for and provide any available email addresses and telephone numbers of the members of the Settlement Class. RG/2

will disseminate notice via these avenues to the extent the information is made available within thirty-five (35) days after entry of the Preliminary Approval Order.

The proposed forms of notice will fairly apprise members of the Class of the Settlement Agreement and their options with respect thereto, and therefore, fully satisfy due process requirements. *See* Newberg on Class Actions, §§ 8.12, 8:15, 8:17, 8:28; 8:33 (5th ed. 2014). Similar Notice Plans in ERISA settlements have been approved. *Rankin v. Conaway*, No. 02-71045 (E.D. Mich. Feb. 9, 2006)

Prior to mailing the Settlement Notice, the Settlement Administrator shall conduct an advanced address research (via skip-trace databases) to identify current mailing address information for the Settlement Class members. Additionally, the Settlement Administrator must update the Settlement Class member address information using data from the United States National Change of Address ("NCOA") database. After mailing the Settlement Notice, the Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

### E. Other Matters

### 1. Necessity of an Independent Fiduciary

The Opinion states "The parties do not explain why they need a third party to review the settlement, why they did not seek approval from the third party before seeking approval from the court, or why it is appropriate to use money from the settlement fund to pay for the review." Opinion at 5.

Whenever retirement plan fiduciaries enter into a settlement, they need to retain an independent fiduciary on behalf of the plan in order to (i) determine whether to approve the Settlement on behalf of the plan and (ii) determine whether the Settlement satisfies the

requirements of Prohibited Transaction Class Exemption 2003 39, as amended (also known as the "Settlement Class Exemption"). In relevant part, the exemption provides relief for certain prohibited transactions that may arise during the settlement of litigation involving employee benefit plans and parties in interest. Specifically, it allows a plan or plan fiduciary to release a claim against a party in interest in exchange for consideration (money or other assets) given by the party in interest to the plan as part of the settlement. The Independent Fiduciary determines whether the exemption has been met by, among other things, reviewing pre-settlement documents filed with the Court, including the Complaint, and interviewing counsel for the parties. The Independent Fiduciary then issues a report which the parties will file with the Court as part of the settlement final approval process. *See, e.g., Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) ("an independent fiduciary reviewed the proposed settlement and determined not to object to any portion of it after interviewing counsel for both sides, reviewing filings, and researching the case."); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv 262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non-opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy."); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (finding the approval of the independent fiduciary persuasive in an ERISA case).

The Independent Fiduciary's review and report only comes after the settlement has been finalized so that it can fully review all the terms of the settlement. Review of the settlement prior to its finalization risks compromising the Independent Fiduciary's role as a non-biased third party uninvolved with the bargain struck by the parties. Numerous ERISA settlements have followed this procedure. *See* Gyandoh Decl. (listing cases) ¶¶ 74-78. Further, because approval of the

Settlement by the Independent Fiduciary benefits the Settlement Class, it is appropriate to pay the Independent Fiduciary out of the Gross Settlement Fund.

### 2. Attorneys' Fees and Inventive Awards

Although Plaintiffs have herein provided information supporting attorneys' fees and incentive awards, at this preliminary stage they are not seeking these awards. If Preliminary Approval is obtained, Plaintiffs will fully brief these issues under the proposed schedule. *See* Proposed Preliminary Approval Order, ¶ 9 (requesting that the petition for attorneys' fees, litigation costs, and Case Contribution Awards, be submitted 45 days before the Fairness Hearing). Regarding Named Plaintiffs' Case Contribution Awards, as a preliminary matter, Plaintiffs believe the amounts sought are justified in light of the work conducted in this action and the results achieved. Nonetheless, the Settlement Agreement only sets a maximum amount to be sought. When filing their petition for attorneys' fees and case contribution awards, Plaintiffs will follow any guidance provided in the Court's Preliminary Approval Order, including seeking less than the $10,000 per person case contribution awards, if appropriate.

### 3. The Scope of the Proposed Release is Justified

The Court states in the Opinion that "This case was limited to claims about recordkeeping fees, so a release of all claims about the plan goes well beyond the scope of the case. The parties have not attempted to assess the value of the other released claims or otherwise explain why it is fair and reasonable to impose such a broad release." Opinion at 8.

The Parties believe the scope of the release is appropriate in this Action because the gravamen of Plaintiffs' claim is that Defendants implored an imprudent process that resulted in harm to Plaintiffs, specifically being charged excessive recordkeeping fees. *See, e.g., Valenzuela v. Advantage Sales & Marketing, LLC*, 2024 WL 5316279 at * 6 (C.D. Cal. Nov. 18, 2024) ("Here,

the inference that there was a flawed process is reasonable based on the allegations that the process in place allowed for excessive recordkeeping fees and the retention of underperforming funds.") As demonstrated in the *Valenzuela* case, any claims that can be traced to an alleged imprudent process, such as underperforming fund allegation, are ones that could have been brought in this Action.

Plaintiffs did not see any evidence of underperforming funds in this Action so there was no need to place a value on such a claim or other claims being released. But importantly, those claims can be released given they fall within the scope of potential malfeasance contemplated under the Complaint (*e.g.,* fiduciary breaches resulting from an imprudent process). In other words, a general release makes sense in an ERISA breach of fiduciary duty case because "ERISA imposes ***general*** standards of loyalty and prudence." *Fish v. GreatBanc Tr. Co*., 749 F.3d 671, 679 (7th Cir. 2014) (emphasis added). Claims generally relate to overall oversight of the Plan- an ongoing, overarching fiduciary process. "The duty of prudence requires a fiduciary to assess the prudence of each investment both individually and relative to the entire plan[,]" and to do so "at regular intervals." *Hughes v. Nw. Univ.*, 63 F.4th 615, 624, 626 (7th Cir. 2023). This accords with Seventh Circuit precedent regarding releases, chiefly, *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir.1998). *Williams* has been upheld in several reascent cases. For example*, Gehrich v. Chase Bank USA, N.A.*:

> Regarding the release, "[a] federal court may release not only those claims alleged in the complaint but also a claim based on the identical factual predicate as that underlying the claims in the settled class action ***even though the claim was not presented and might have not been presentable in the*** class ***action***." *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir.1998) (internal quotation marks and alteration omitted); *see also id.* at 274 ("***It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other***.").

*Gehrich*, 316 F.R.D. 215, 231 (N.D. Ill. 2016) (emphasis added).

More recently, in *In re TikTok, Inc., Consumer Priv. Litig.*, the court found:

> Namely, "***a federal court may release not only those claims alleged in***

> ***the complaint, but also a claim based on the identical factual predicate*** *** as that underlying the claims in the settled class action even though the*** *** claim was not presented and might not have been presentable in the class*** *** action."*** *Williams*, 159 F.3d at 273–74 (emphasis *487 removed) (quoting *** Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). A*** version of this standard has been applied by courts in nearly every circuit, including the Seventh, and no circuit has rejected.

*In re TikTok, Inc., Consumer Priv. Litig.*, 713 F. Supp. 3d 470, 486–87 (N.D. Ill. 2024) (emphasis added).

Accordingly, the scope of release contemplated by the Settlement is not too broad but is rather in accord

with the claims brought or that could have been brought.

## IV.    CONCLUSION

Class Counsel respectfully request the Court grant Plaintiffs' renewed motion and (i) enter

the Preliminary Approval Order, which provides for notice to the Class as described herein, and

(ii) sets a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for

award of attorneys' fees and expenses and for a Case Contribution Award for the Named Plaintiffs

and (b) file their motion for final approval of the proposed Settlement.

Dated: July 15, 2025                         Respectfully submitted,


                                             **CAPOZZI ADLER, P.C.**

                                             */s/Mark K. Gyandoh*
                                             Mark K. Gyandoh, Esquire
                                             James A. Maro, Esquire
                                             James A. Wells, Esquire
                                             (admitted *pro hac vice*)
                                             312 Old Lancaster Road
                                             Merion Station, PA 19066
                                             Tel: (610) 890-0200
                                             Fax (717) 233-4103
                                             Email: markg@capozziadler.com
                                                    jamesm@capozziadler.com
                                                    jayw@capozziadler.com

                                             *Attorneys for Plaintiffs, the Plan*
                                             *and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 15, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

/s/ <u>*Mark K. Gyandoh*</u>
Mark K. Gyandoh
