UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRENDA L. LUCERO, HEATHER BARTON, ILONA KOMPANIIETS and CYNTHIA HURTADO, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF DIRECTORS OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF TRUSTEES OF RETIREMENT PLANS, THE PLAN ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30.<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO.: 3:22-cv-00208-jdp |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, GRANTING CLASS CERTIFICATION FOR SETTLEMENT PURPOSES, APPROVING FORM AND MANNER OF SETTLEMENT NOTICE, PRELIMINARILY APPROVING PLAN OF ALLOCATION, AND <u>SCHEDULING A DATE FOR A FAIRNESS HEARING</u>**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1.　I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey, and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.　I am a partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

1

*Procedural History*

3. Plaintiffs commenced this action by filing an initial complaint on April 12, 2022 (ECF No. 1) against Credit Union Retirement Plan Association ("CUNA"), The Board of Directors of the Credit Union Retirement Plan Association ("Board"), the Board of Trustees of the Retirement Plan Association ("Trustees") and John Does 1-30 (collectively "Defendants")[1], alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). (ECF No. 1).

4. Defendants filed a Motion to Dismiss (ECF Nos. 18-21) on August 29, 2022.

5. Plaintiffs filed their Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 25-26) on September 19, 2022.

6. Defendants filed their Answer and Affirmative Defenses (ECF No. 41) on April 6, 2023.

7. On July 14, 2023, Plaintiffs filed their Motion for Class Certification (ECF Nos. 46-52).

8. Defendants filed their Opposition to Plaintiffs' Motion for Class Certification (ECF Nos. 60) on September 6, 2023.

9. On September 19, 2023, Plaintiffs filed their Reply Memorandum in Support of Motion for Class Certification (ECF No. 83).

10. Defendants filed a Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification (ECF No. 87) on September 27, 2023.

---

[1] The Board of Directors of the Credit Union Retirement Plan Association, the Board of Trustees of the Credit Union Retirement Plan Association, and John Does 1-30 were originally named as Defendants in Plaintiffs' complaint but were dismissed by agreement between the parties. *See* ECF. No. 48.

11. Defendants filed a Motion to Compel Discovery Responses (ECF No. 92-93) on October 16, 2023.

12. On October 23, 2023, Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Compel Plaintiffs' Discovery Responses (ECF No. 95).

13. Defendants filed their Reply in Further Support of their Motion to Compel Discovery Responses (ECF No. 96) on October 30, 2023.

14. On November 17, 2023, Plaintiffs filed a Motion for Leave to File Amended Complaint (ECF No. 97).

15. Defendants filed their Response to Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 98) on December 4, 2023.

16. On December 5, 2023, the Court issued an Electronic Order (ECF No. 99) granting Plaintiffs' Motion for Leave to File Amended Complaint.

17. On December 5, 2023, Plaintiffs filed their First Amended Complaint ("FAC") (ECF No. 100), against Credit Union Retirement Plan Association ("CURPA"), The Board of Directors of the Credit Union Retirement Plan Association ("Board"), the Board of Trustees of Retirement Plans ("Trustees"), the Plan Administrative Committee ("PAC") and John Does 1-30 (collectively "Defendants").

18. Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Amended Class Action Complaint (ECF 103) on December 19, 2023.

19. On January 9, 2024, the Court issued an Opinion and Order (ECF No. 104) denying Plaintiffs' Motion to Certify Class.

20. On January 10, 2024, the Court issued an Electronic Order (ECF No. 105) denying Defendants' motion to compel discovery.

21. On January 23, 2024, Plaintiffs filed a Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) (ECF No. 1) in the United States Court of Appeals for the Seventh Circuit.

22. Defendants/Respondents filed a Response to Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) (ECF 3) on February 2, 2024.

23. On February 9, 2024, Plaintiffs/Petitioners filed a Motion for Leave to File Reply Brief to Respondents' Response to Petition to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) (ECF No. 3).

24. On February 12, 2024, the Court issued an Order (ECF No. 5) Denying Plaintiffs/Petitioners permission to appeal and denying Defendants/Respondents leave to reply.

25. On February 10, 2024, Plaintiffs/Petitioners filed a Motion for Reconsideration of Denial of Class Certification (ECF Nos. 109-116).

26. On February 22, 2024, the Court issued an Opinion and Order (ECF No. 132) denying Plaintiffs' Motion for Reconsideration.

27. Defendants filed a Motion for Summary Judgment (ECF Nos. 134-135) and Defendants Proposed Findings of Fact in Support of Motion for Summary Judgment (ECF Nos. 137-167) on March 3, 2024.

28. On April 27, 2024, Plaintiffs file their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (ECF Nos. 176) and Plaintiffs' Responses to Defendants' Proposed Findings of Fact (ECF No. 189-190).

29. On May 14, 2024, the Parties filed a Joint Motion to Stay the Case (ECF No. 191).

30. On May 31, 2024, the Court issued an Electronic Order (ECF No. 194) granting the motion stay while the parties attempted to finalize a settlement.

4

31. On June 12, 2024, the Parties filed a Notice of Settlement (ECF No. 195).

32. Plaintiffs filed a motion for preliminary approval of the Settlement on August 16, 2024 (Dkt. No. 200).

33. On March 18, 2025 the Court denied the motion for preliminary approval without prejudice (Dkt. No. 209).

*Discovery Practice*

34. Before initiating this action, Plaintiffs consulted with their in-house experts, reviewed publicly filed Plan documents, and the Plaintiffs' personal account information.

35. On October 22, 2020, February 10, 2021, and April 1, 2021, prior to filing the suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

36. On January 27, 2023, Plaintiffs and Defendants served their Initial Disclosures.

37. On April 28, 2023, Defendants, the Board of Trustees and CURPA served their first set of Requests for Production of Documents on Plaintiffs.

38. On May 1, 2023, Plaintiffs served their First Requests for Interrogatories and First Request for Production of Documents on Defendants.

39. On June 2, 2023, Plaintiffs served their responses to Defendants' First Set of Interrogatories and First Request for Production of Documents.

40. On June 7, 2023, Defendants served their responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents.

41. On August 25, 2023, Defendants served Supplemented Answers to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents.

42. On October 20, 2023, Defendants served a Second Supplemented Responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents.

43. On January 17, 2024, Plaintiffs served Supplemental Responses to the Board of Trustees and CURPA First Set of Interrogatories

44. On January 19, 2024, Plaintiffs served Supplemental Responses to Defendants' First Set of Interrogatories.

45. The Parties conducted extensive discovery. Discovery led to the production of approximately 25,409 pages of documents and six fact witness depositions and three expert depositions. Plaintiff Brenda Lucero was deposed on August 10, 2023, Plaintiff Heather Barton was deposed on August 11, 2023, Plaintiff Ilona Kompaniiets was deposed on August 15, 2023 and Plaintiff Cynthia Hurtado was deposed on August 21, 2023. Defendants' 30(b)(6) representative was deposed on October 5, 2023, in both her official and company capacity and individual capacity. Plaintiffs' Expert, Michael Geist was deposed on January 10, 2024 and Defendants' Experts, Steve Case and Pete Swisher, were deposed on January 15, 2024 and January 17, 2024, respectively.

*Settlement Negotiations*

46. After the Court denied Plaintiffs' motion for class certification, on March 15, 2024, Class Counsel communicated a demand to Counsel for Defendants to resolve the litigation on behalf of a Settlement Class, narrower than the class for which Plaintiffs initially sought class certification.

47. The Parties thereafter engaged in active and arms' length negotiations and eventually, the Parties agreed to resolve the litigation for a Gross Settlement Fund of $570,000. Plaintiffs agreed to cap any request for reimbursement of expenses from the Gross Settlement Fund

6

at $95,000. The proposed Settlement Administrator, RG/2 Claims Administration, LLC ("RG/2") has estimated $22,106 to effectuate settlement administration. *See* Ex. 2 (RG/2 declaration). Additionally, the Settlement Agreement allows for payment for an Independent Fiduciary up to $15,000 from the Gross Settlement Amount.

48.     Accordingly, the net amount of money available to the Settlement Class after deduction of proposed attorneys' fees ($158,317.50) and expenses ($95,000), settlement administration costs ($22,106), Independent Fiduciary costs ($15,000), and potential Case Contribution Awards ($40,000) is $239,576.50 for the 1,000+ Class Members. This amount is nearly half of the potential maximum damages of $531,000.00 Plaintiffs calculated for the FirstLight Federal Credit Union and California Coast Credit Union participants through 2021 who comprise the Settlement Class ($346,339.24 in damages for participants employed by FirstLight Federal Credit Union and $185,173.57 in damages for participants employed by California Coast Credit Union).

49.     As explained in the accompanying memorandum, it is Plaintiffs' Counsel's opinion that the proposed settlement is fair and reasonable.

***The Settlement Terms***

50.     The Settlement provides for a Gross Settlement Amount of $570,000 to be allocated to the Settlement Class on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 3.1.2 of the Settlement Agreement). The Gross Settlement Amount will be used to pay the Class Members' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

51.     A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.C.  For Class Members with an Active Account (an account with a positive balance) as of the date of calculation of the Final Entitlement Amount, they will have their proceeds allocated into their Plan account.  *Id.* at II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F.

52.     Defendants intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan.  As explained in the accompanying memorandum, the Independent Fiduciary is retained on behalf of the Class Plan to (i) determine whether to approve the Settlement on behalf of the Clas Plan and (ii) determine whether the Settlement satisfies the requirements of Prohibited Transaction Class Exemption 2003 39, as amended (also known as the "Settlement Class Exemption").

53.     The Independent Fiduciary's review and report only comes after the settlement has been finalized so that the Independent Fiduciary can fully review all the terms of the settlement. Review of the settlement prior to its finalization risks compromising the Independent Fiduciary's role as a non-biased third party uninvolved with the bargain struck by the parties.  Numerous ERISA settlements have followed this procedure.  *See, e.g,* Report of the Independent Fiduciary ("IF") for the Settlement in *Kennedy, et al. v. Aegis Media Americas, Inc., et al.* (attached as Exhibit 2); IF report in *Brown, et al. v. The Mitre Corp., et al.* (attached as Exhibit 3); IF report in *Hawkins, et al. v. Cintas Corp., et al* (attached as Exhibit 4); IF report in *Miguel, et al. v. Salesforce.com, Inc., et al.* (attached as Exhibit 5); IF report in *Coviello, et al. v. BHS Management Services, Inc. et al.* (attached as Exhibit 6).

**Settlement Notice Plan**

54. Class Counsel asks the Court to approve the selection of RG/2 Claims Administration, LLC ("RG/2") as the Settlement Administrator for the Settlement. *See* Proposed Preliminary Approval Order, ¶ 8.

55. RG/2 has submitted a declaration describing their business and accomplishments. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Renewed Motion for Preliminary Approval of the Settlement signed by William Wickersham ("RG/2 Decl.") (attached as Exhibit 13).

56. RG/2 will send notice to the Settlement Class via first class mail or by email if available and establish a Settlement Website to post relevant case documents. RG/2 estimates a budget for the administration to be approximately $22,106.

57. The notice program will apprise Settlement Class members of the terms of the Settlement and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. As noted above, the Class Notice will also be posted on a dedicated website – www.Credit_UnionERISAsettlement.com – through which the public and the Class Plan's current and former participants can view copies of important case documents, including the Settlement Agreement with Exhibits, and the date and time of the Fairness Hearing.

### *Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable*

58. This was a vigorously prosecuted case which Class Counsel began investigating in 2020. It involved considerable time and resources to investigate the action, review and analyze documents produced through discovery, and negotiate an excellent result for the Settlement Class.

59. Class Counsel undertook this action aware of the possibility they could be left uncompensated for their time and out-of-pocket expenses.

60. The recovery of $570,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on their decades of experience with complex ERISA class action litigation of this type.

61. As payment for services rendered in achieving such a result, Class Counsel will seek an award of attorneys' fees up to $158,317.50 and expenses of $95,000 reasonably incurred by Class Counsel. Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

62. The attorneys' fee request amounts to roughly 28% of the Gross Settlement Amount.

63. As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case. We have aggressively, efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan. Over the course of the litigation, we have incurred the following expenses:

| Expense Category | Total |
| --- | ---: |
| FedEx | $535.78 |
| Court Filing Costs | $2,292.00 |
| Travel Expenses | $662.78 |
| Westlaw and other Research | $6,770.55 |
| E-Discovery | $6,984.86 |
| Transcripts | $24,360.38 |
| Experts | $105,989.23 |
| **Total** | $147,595.58 |

64. The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the

expenses. These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

65. Under the Settlement Agreement, however, Class Counsel has agreed to cap the amount it can recover in unreimbursed expenses at $95,000.00.

66. The firm's hours and lodestar devoted to this matter to date are over $800,000. The Court, however, instructed that in submitting their renewed motion for preliminary approval, Class Counsel "may not seek credit for time spent on their unsuccessful motion for preliminary approval and certification." Opinion (Dkt. No. 209) at 7. Accordingly, for purposes of the renewed motion for preliminary approval, Class Counsel re-ran their time using July 8, 2024 as the cut-off. This is very conservative as it excludes time within the last year that was not directly related to the unsuccessful motion for preliminary approval of the Settlement.

67. Even cutting over a year of work from Class Counsel's time results in the following hours and lodestar:

| Name | Position | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $915.00 | 157.2 | $143,838.00 |
| Donald R. Reavey | Partner | $885.00 | 18.4 | $16,284.00 |
| Gabrielle P. Kelerchian | Mid-Level Associate | $550.00 | 8.6 | $4,730.00 |
| Brandon Williams | Mid-Level Associate | $550.00 | 83.8 | $46,090.00 |
| Linda Gussler | Paralegal | $350.00 | 144.9 | $50,715.00 |
| Lauren Phillips | Paralegal | $335.00 | 1 | $335.00 |
| Tina Scheetz | Paralegal | $335.00 | 15.4 | $5,159.00 |
| Thomas Sinclair | Mid-Level Associate | $550.00 | 200.4 | $110,220.00 |
| Giulia Conboy | Mid-Level Associate | $450.00 | 90 | $40,500.00 |
| James Wells | Partner | $700.00 | 370.7 | $259,490.00 |
| Jessica Murphy | Paralegal | $250.00 | 147.8 | $36,950.00 |
| James Maro | Partner | $900.00 | 0.2 | $180.00 |

11

| Peter Muhic[2] |  | $950.00 | 4.2 | $3,990.00 |
|---|---|---|---|---|
| Kendall Adams | Paralegal | $250.00 | 1.9 | $475.00 |
| Raashira Ragland | Legal Secretary | $250.00 | 2.6 | $650.00 |
|  |  |  | 1247.1 | $719,606.00 |

68. Attached as Exhibit 12 are the billing records that support the above table which is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

69. I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation. Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation. Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters. These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

70. In total, Class Counsel has spent a minimum of 1,247.1 hours on this case with a corresponding lodestar of $719,606.00. Meaning Class Counsel's multiplier in this action is .22, well below the range approved in other matters. *See e.g., Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (internal citations omitted) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at * 8 (D. Colo. April 21, 2015) (collecting cases approving multipliers ranging from 1.87 to 4.6).

---

[2] Mr.Muhic is a partner at Muhic Law LLC who is acting as co-counsel in this action.

71. Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude. Protecting the retirement funds of employees, and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

### *Capozzi Adler's Hourly Rates Compare Favorably to Their Peers*

72. For its contingency practice, Capozzi Adler charges partner rates of $885 to $915 per hour; mid-level associate rates of $550 per hour; and paralegal and professional staff rates that range from $335 to $350 per hour. More junior support staff are billed at $250 per hour. These hourly rates are commensurate with the firm's degree of skill, experience, and reputation. Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described above, to command their hourly rates.

73. In the course of my 20-year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice. In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

74. Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:17-cv-00563 (S.D.N.Y.). Like this Action, *Beach* involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan. *Id.* Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

75. My former firm Kessler Topaz Meltzer & Check, LLP (KTMC), a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from $400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250. *See* Exhibit 7 (Excerpts of KTMC declaration).

76. Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $775 to $875; associate rates that range from $425 to $575; paralegal and professional staff rates of $250. *See* Exhibit 8 (Excerpts of Nichols Kaster declaration).

77. Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $765 to $1,035; associate rates that range from $400 to $650; and professional staff rates that range from $225 to $325. *See* Exhibit 9 (Excerpts of Keller Rohrback declaration)

78. Robbins Geller Rudman & Dowd LLP, with an office in the state of New York and a national ERISA practice, charges partner rates that range from $760 to $1,325; associate rates that range from $460 to $575; paralegal rates that range from $275 to $350; and professional staff rates that range from $290 to $295. *See* Exhibit 10 (Excerpts of Robbins Geller declaration).

79. Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

80. The Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580). *See* Exhibit 11 (Excerpts of Valeo Report).

81. Finally, Capozzi Adler's rates have been implicitly approved by numerous courts while granting requests for fees. *See, e.g., Diaz v. BTG Int'l, Inc.*, No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-05738-MAK (ECF No. 93) (E.D. Pa. June 11, 2021); *Gerken et al. v. Mantech Int'l.* No. 1:20-cv-01356-TSE (ECF No. 41) (E.D. Va. May 21, 2021); *Harding et al. v. Southcoast Hosp. Group et al.*, No. 1:20-cv-12216-LTS (ECF. No. 51) (D. Mass. April 25, 2022).

***Counsel's Experience***

82. I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I clerked for a year with the Hon. Dennis Braithwaite of the New Jersey State Appellate Court.

83. I have been litigating ERISA fiduciary breach lawsuits for 19 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am a partner and chair of the Fiduciary Practice Group. Over my career I have been actively involved in many high-profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

84. Rounding out the ERISA team are other attorneys and our support staff which includes paralegals and other paraprofessionals who assist in the practice.

85. Capozzi Adler has significant resources with three office locations. We have been serving clients for over 25 years offering a full range of legal services. I and my firm have been

15

lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions. Recently, Capozzi Adler was appointed class counsel in the following matters: *McCool v AHS Management*, No. 3:19-cv-001158 (ECF 130) (appointing Capozzi Adler as Class Counsel); *Sweet v. Advance Auto Stores Co., Inc.*, No. 7:21-cv-549, 2023 WL 3959779 (W.D. Va. June 9, 2023) (ECF. 54); *Huang, et al., v. TriNet HR III, Inc., et al.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836 (M.D. FL. Oct. 21, 2022) (ECF 85) (appointing Capozzi Adler as Class Counsel); *Stengl et al. v. L3Harris Technologies, et al.*, No. 6:22-cv-572, Slip Op. (M.D. Fla. June 5, 2023) (ECF. 92); *Lucas, et al., v. MGM Resorts International, et al.*, 2:20-cv-01750-JAD-NJK (D.C. NV Oct. 20, 2022) (ECF 112) (appointing Capozzi Adler as Class Counsel); *Nunez, et al., v. B. Braun Medical, Inc., et al.*, No. 5:20-cv-04195 (E.D. Pa. June 30, 2022) (ECF. 69) (appointing Capozzi Adler as Class Counsel); *Boley, et al. v. Universal Health Servs., Inc., et al.*, 2021 WL 859399 (E.D. Pa. Mar. 8, 2021) (appointing Capozzi Adler as co-lead counsel in analogous breach of fiduciary duty action).

86.     The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Tobias et al v. NVIDIA Corp.*, 4:20-cv-06081-JST (N.D. Cal. Sept. 11, 2023) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071-D (ECF No. 28) (E.D.N.C. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar*

*ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Jones v. Dish Network Corp.*, No. 22-cv-00167-CMA-STV (D. Colo. Nov. 6, 2023); *Seibert v. Nokia Corp. of America*, No. 21-20478 (D.N.J. Aug. 8, 2023).

87. We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions. *See e.g., Kruchten, v. Ricoh USA, Inc.*, No. 23-1928, 2024 WL 3518308 (3rd Cir. Jul. 24, 2024) (reversing dismissal of ERISA excessive fee action); *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) (same); *Kong et al. v. Trader Joe's Co.*, No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) (same); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (same). Conversely, we have successfully obtained affirmance of correctly decided cases. *See, e.g., Hawkins et al. v. Cintas Corp.*, No. 21-3156 (6th Cir. Apr. 27, 2022) (upholding denial of motion to compel arbitration in ERISA case).

88. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members. *See, e.g., McNeilly v. Spectrum Health System*, Civil Action No. 1:20-cv-00870 (W.D. Mich. 2023) (recovered $6,000,000.00 class settlement); *Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Dean v. Cumulus Media, Inc.*, Civil Action No. 1:22-cv-04956-TWT (N.D. Ga. 2023) (recovered $1,000,000.00 settlement); *Loomis v. Nextep, Inc.*, Civil Action No.: 5:21-cv-00199-HE (W.D. Okla. 2023) (recovering $1,100,000.00); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered

$4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

89. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation efforts to date, including conducting discovery and attending mediation.

90. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs *Nunez v. B. Braun Med., Inc.*, No. 20-4195 (E.D. Pa. Aug. 18, 2023), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

***Plaintiffs Are Adequate Class Representatives and the Case Contribution Awards Sought Are Reasonable***

91. Each of the Named Plaintiffs supports the Settlement and has submitted declarations in support of the renewed motion for preliminary approval attesting to the work they have done on this matter.

92. Attached as Exhibit 14 is the Declaration of Brenda L. Lucero in Support of the Settlement.

93. Attached as Exhibit 15 is the Declaration of Heather Barton in Support of the Settlement.

94. Attached as Exhibit 16 is the Declaration of Ilona Kompaniiets in Support of the Settlement.

95. Attached as Exhibit 17 is the Declaration of Cynthia Hurtado in Support of the Settlement.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 15th day of July, 2025, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*
