**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| BRENDA L. LUCERO, HEATHER BARTON, ILONA KOMPANIIETS and CYNTHIA HURTADO, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO.: 3:22-cv-00208-jdp |
| | ) | |
| CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF DIRECTORS OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF TRUSTEES OF RETIREMENT PLANS, THE PLAN ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT, GRANTING CLASS CERTIFICATION FOR**
**SETTLEMENT PURPOSES, APPROVING FORM AND MANNER OF SETTLEMENT**
**NOTICE, PRELIMINARILY APPROVING PLAN OF ALLOCATION, AND**
**<u>SCHEDULING A DATE FOR A FAIRNESS HEARING</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II  DISCUSSION .......................................................................................................2

    A.  Calculation of Class Damages for Purposes of Settlement......................................2

    B.  Revised Plan of Allocation Accounts for the Reduction in Fees............................6

    C.  The Revised Plan of Allocation Meets all Requirements of Rule 23(e)(2)(C)(ii) ...........................................................................................9

III.  PROPOSED SCHEDULE .....................................................................................9

IV.  CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Braden v. Wal-Mart Stores, Inc*,
588 F.3d 585 (8th Cir. 2009) ......................................................................................................3

**STATUTES**

28 U.S.C. §§ 1715(d) ..................................................................................................................10

FED. R. CIV. P. 23(b)(1) ...............................................................................................................1

FED. R. CIV. P. 23(b)(2) ...............................................................................................................1

FED. R. CIV. P. 23(e)(2)(C)(ii).....................................................................................................9

FED. R. CIV. P. 23(e)(2)(D) ..........................................................................................................9

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA")............................................................................ 10

## I. INTRODUCTION

Plaintiffs Brenda L. Lucero, Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado, (collectively "Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in support of their second renewed unopposed motion to the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement[1]") described herein; (2) certifying the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) for settlement purposes; (3) approving the form and method of Class Notice; (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, of payment of attorneys' fees and expenses, and of a potential Case Contribution Award to the Named Plaintiffs; and (5) enjoining Class Members from pursuing any claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the Settlement.[2]

Plaintiffs' instant motion and memorandum addresses the main concern detailed in the Court's October 27, 2025 Opinion and Order ("Opinion") (Dkt. No. 224) denying without prejudice Plaintiffs' Unopposed Renewed Motion and Memorandum for Preliminary Approval of Class Action Settlement, and related relief (Dkt. No. 213 -217). As stated by the Court:

> Plaintiffs have addressed most of the court's concerns, but there is still one problem that relates to the way that the settlement agreement apportions each class member's share of the settlement....Plaintiffs admit that defendants significantly reduced recordkeeping fees at the end of 2021, so much so that damages from 2022 to the present "would be nominal." Dkt. 214, at 24.1 That is a problem because the class includes anyone who participated in the relevant plans between 2016 to the present. Plaintiffs did not submit an estimate of post-2021 damages, so the court cannot assess what a fair apportionment for post-2021 participants would be. But plaintiffs' admission strongly suggests that participants' pro-rata share should

---

[1] A copy of the Settlement Agreement was previously filed with the Court at Dkt. No. 215-01.

[2] Unless otherwise defined herein, capitalized terms shall have the meaning contained in the parties' Settlement Agreement.

reflect the 2021 change so that it is higher for balances before 2021 and lower for balances after 2021.

Opinion at 1-2.

The Court further stated the Parties must either "provide at least a rough estimate of the proposed class's damages for the time period after defendants lowered their fees; and (2) modify the formula for calculating a class member's pro-rata share so that it reflects the lower fees after 2021" or "[a]lternatively, the parties may agree to exclude post-2021 participants from the class so that all members are similarly situated." *Id.* at 2.

After conferring with Defendants, Plaintiffs propose to revise the current Plan of Allocation to equitably treat Class Members by (1) creating sub-classes of pre and post 2021 account holders in the FirstLight Federal Credit Union ("FFCU Plan") and California Coast Credit Union ("CCCU Plan"), and (2) modifying the calculations such that a lower pro-rata share of the Net Settlement Amount will go to Class Members with accounts post-2021 in order to reflect the alleged lower damages amounts for those Class Members. Defendants do not oppose the revised Plan of Allocation.

## II.     DISCUSSION

Given the narrow focus of this Second Renewed Motion, and to avoid unnecessary repetition, Plaintiffs incorporate herein by reference, and as if stated in full, their renewed motion and memorandum in support of Preliminary Approval of the Settlement (ECF Nos. 213- 220; and 223). Defendants do not agree with the concept that Plaintiffs have incurred any damages and admit no liability in this matter but do not object to proposal set forth below for settlement purposes.

### A.  Calculation of Class Damages for Purposes of Settlement

As discussed in the prior renewed motion for preliminary approval briefing, discovery in

this Action demonstrated that Defendants collected recordkeeping fees through an asset-based percentage fee and that the amount participants paid for recordkeeping fees was a function of a percentage level and the assets in each participant's account – meaning that the actual amounts paid by Plan participants varied according to the assets in their accounts. *See* ECF No. 214 at page 24 of 48. For example, if the average per participant fee was reduced to $100, the *pro rata* rates for all participants, including Plaintiffs Barton, Kompaniiets and Hurtado, would drop proportionally according to the level of assets in their accounts, and thus Plaintiffs Barton, Kompaniiets and Hurtado would have standing to represent the Settlement Class because they were harmed through precisely the same mechanisms and process failures that allegedly caused harm to all participants across the Plan. *See Braden*, 588 F.3d at 593 (a plaintiff with standing "may seek relief . . . that sweeps beyond his own injury."). The same injury applies to persons who were participants in the Class Plan after 2021. *See* ECF 214, at page 24 of 48.

As previously explained, according to Plaintiffs' expert Michael Geist, it was not until November 8, 2021, that the Class Plan participants received a reduced recordkeeping and administration ("RKA") fee rate. ECF No. 214, at 25 of 48. However, according to Mr. Geist, "the Updated Fee Schedule still resulted in Bundled RKA fee rates that were far higher than what other recordkeepers would have bid and accepted to provide materially identical Bundled RKA services." *Id.* at ¶ 285. For example, Plaintiffs' Complaint had alleged other retirement plans had paid as little as $21 to $30 per participant for RKA fees. *See* Complaint, ECF. No. 1, ¶ 89. Accordingly, although the RKA costs were reduced post-2021, Plaintiffs believe the fees were still above what Plaintiffs allege was reasonable. Thus, the post-2021 Class Plan participants (to the extent they were not already participants in the Class Plan pre-2022) suffered damages, but maybe not to the extent of the pre-2022 Plan Class members.

After negotiations between the Parties regarding the competing methodologies of both Parties' experts, for purposes of using a common methodology to reach a settlement, the Parties settled on the methodology utilized by Plaintiffs' expert Micheal Geist in order to determine damages attributed to the FirstLight Federal Credit Union and California Coast Credit Union plans. *See* ECF 214, page 30 of 48.  As demonstrated below, using what Mr. Geist determined to be the reasonable rate for just the two credit union employers at issue, Plaintiffs' damages totaled $474,396.45:

**FirstLight Federal Credit Union**

| Year | Geist Reasonable Fee | Geist Per-Participant Fee[3] | Difference | No. of Participants | Settlement Calculation |
|---|---|---|---|---|---|
| 2016 | $78 | $179.26 | $101.26 | 393 | $39,795.18 |
| 2017 | $77 | $222.45 | $145.45 | 389 | $56,580.05 |
| 2018 | $66 | $203.43 | $137.43 | 406 | $55,796.58 |
| 2019 | $70 | $245.21 | $175.21 | 414 | $72,536.94 |
| 2020 | $74 | $280.75 | $206.75 | 440 | $90,970 |
| 2021 | $73 | $109.71 | $36.71 | 413 | $15,161.23 |
| | | | | FirstLight Total: | $330,839.98 |

**California Coast Credit Union**

| Year | Geist Reasonable Fee | Geist Per-Participant Fee[4] | Difference | No. of Participants | Settlement Calculation |
|---|---|---|---|---|---|
| 2018 | $66 | $126.29 | $60.29 | 655 | $39,489.95 |
| 2019 | $70 | $140.98 | $70.98 | 698 | $49,544.04 |
| 2020 | $74 | $151.20 | $77.02 | 756 | $58,363.02 |
| 2021 | $73 | $67.94 | $5.06 | 759 | ($3,840.54) |
| | | | | California Coast Total: | $147,397.01 |

**Total: $474,396.45**

*See* ECF 214, at pages 30-1 of 48. Of the total damages, FirstLight's damages represent 69.7%, and California Coast's damages represent 31.1%.  For ease of administration, these amounts were

---

[3] Geist Report Exhibit 9-Plans, cells AZ64–BE64 (available to be emailed to the Court if not accessible on the docket).
[4] Geist Report Exhibit 9-Plans, cells AZ87–BC87.

rounded to 70% and 30% of the total. *Id.*

As indicated in prior briefing, Plaintiffs did not specifically include damages for the Class Plan from 2022 to the present because while damages exist according to Plaintiffs' theory of the case, it would be nominal. *See* Report of Mike Geist filed at Dkt. No. 113, Ex. 3. For purposes of addressing the Court's concerns, however, Plaintiffs have estimated the damages for the post-2021 Class Members in order to amend the Plan of Allocation to fairly allocate the Net Settlement Fund to this group.

To estimate damages for the post-2021 period of the Class, Plaintiffs first compared the recordkeeping fees pre-2022 and post 2022. Using Mr. Geist's damages methodology, the average per participant fee from the start of the Class Period to 2021 was $206.80 for the First Light Plan and $121.60 for the California Coast Plan. The average fees were determined by adding up the yearly fees calculated by Mr. Geist and dividing by 6 (the total number of years). *See* ECF No. 214 at pages 30-31). Second, Plaintiffs determined the percentage of decrease in fees from 2022 to the present. Plaintiffs determined this by comparing the pre-2022 fees (*See* ECF No. 143-2 at page 5 of 13) with the post December 31, 2021 fees (*See* ECF No. 143-3 at page 4 of 5). The charts below detail the results.

First Light Federal Credit Union

| | 2016-2021Geist Per Participant Fee Average[5] | 2022 to Present | |
|---|---|---|---|
| No. Participants | | 423[6] | |
| Assets | | $22,385,758[7] | |
| Average Participant Account | | $52,921.41(a) | |

---

[5] *See* Memo iso Renewed Motion for Preliminary Approval, ECF 2014, pages 30-31 of 48.
[6] First Light Plan Review, CUNA_0000023.
[7] As of Sept. 2022. *See* CUNA_0000023.

| | | .14%[8] (b) | |
|---|---|---|---|
| Asset-Based Fee | | | |
| Est. Annual Dollar Amt Per Participant | | $74 = (a) x( b) | |
| | $206.80 | | |
| Dollar Amt. Decrease | | $132.80 | |
| **Estimated Percent Decrease from Pre-2022 to start of 2022 through present** | | **64%** | |

California Coast Credit Union

| | 2016-2021Geist Per Participant Annual Fee Average[9] | 2022 to Present | |
|---|---|---|---|
| No. Participants | | 785[10] | |
| Assets | | $43,800,000[11] | |
| Average participant account | | $55,796.18 (a) | |
| Asset-based fee | | .12%[12] (b) | |
| Est. Annual dollar Amt Per Participant | | $67 = (a) x( b) | |
| | $121.60 | | |
| Dollar Amt. Decrease | | $54.60 | |
| **Estimated Percent Decrease from Pre-2022 to start of 2022 through present** | | **45%** | |

Based on the fee disclosures, RKA costs roughly reduced by 64% and 45% respectively,

for the First Light and California Coast Plans from pre-2022 to 2022 to the present.

## B. Revised Plan of Allocation Accounts for the Reduction in Fees

Based on the decrease in RKA fees, Plaintiffs have modified the Plan of Allocation to

account for this decrease. The pertinent parts of the Plan of Allocation that need to be modified

---

[8] *See* Fee Disclosure Fee Schedule, effective Nov. 8, 2021, DEF_0003982. According to the Fee Disclosure, a .14% fee applies to plans with between $20 million and $24,999,999 in assets and average participant balances of between $30,000-$59,999. The First Light Plan fits these parameters.

[9] *See* Memo iso Renewed Motion for Preliminary Approval, p. 21-22.

[10] Fiduciary Decisions Benchmarking, CUNA_0002433.

[11] As of Sept. 2022. *See id.*

[12] *See* Fee Disclosure Fee Schedule, effective Nov. 8, 2021, DEF_0003982. According to the Fee Disclosure, a .12% fee applies to plans with over $40 million in assets and average participant balances of between $30,000-$59,999. The California Coast Plan fits these parameters.

are sections II. B through D. Attached to the Gyandoh Declaration as Exhibit 1 is the revised Plan of Allocation. For the Court's reference, Exhibit 2 is a redline comparison of the revised Plan of Allocation with the original Plan of Allocation showing the changes.

Under the revised Plan of Allocation, the Net Settlement Amount, as defined in the Settlement Agreement, will be allocated as follows:

1. The Net Settlement Amount will be apportioned between the Plan as adopted by FirstLight Federal Credit Union ("FFCU Plan") and the Plan as adopted by California Coast Credit Union ("CCCU Plan") as follows: 70% of the Net Settlement Amount to Class Members of the FFCU Plan ("FFCU Net Settlement Amount) and 30% to CCCU Plan ("CCCU Net Settlement Amount").

2. For the FFCU Plan, Class Members will be divided into two sub-classes: those with accounts in the Plan from April 12, 2016 to December 31, 2021 and those with accounts in the Plan from January 1, 2022 to the end of the Settlement Class Period. The pre-January 1, 2022 sub-class will receive 64% of the FFCU Plan's portion of the Net Settlement Amount, while the post-January 1, 2022 sub-class will receive 36% of the FFCU Plan's portion of the Net Settlement Amount.[13]

3. For the CCCU Plan, Class Members Class Members will be divided into two sub-classes: those with accounts in the Plan from April 12, 2016 to December 31, 2021 and those with accounts in the Plan from January 1, 2022 to the end of the Settlement Class Period. The pre-January 1, 2022 sub-class will receive 55% of the CCCU Plan's portion of the Net Settlement Amount, while the post-January 1, 2022 sub-class will receive 45% of the CCCU Plan's portion of the Net Settlement Amount.[14]

4. In order to apportion the FFCU Net Settlement Amount to Class Members associated with the FFCU Plan ("FFCU Class Members"), the following calculations will be made for each sub-class:

---

[13] This amount is determined based on the calculation that Pre-January 1, 2022 FFCU Plan members paid on average 64% more for recordkeeping fees than post-January 1, 2022 FFCU Plan members.

[14] This amount is determined based on the calculation that Pre-January 1, 2022 CCCU Plan members paid on average 55% more for recordkeeping fees than post-January 1, 2022 CCCU Plan members.

a. Sum each FFCU Class Member's account balances for each year of the sub-class period on the data as of the dates above. This amount shall be that Class Member's "Balance."

b. Sum the Balance for all FFCU Class Members in the sub-class period. The Balance for all FFCU Class members in the sub-class period is the "FFCU Balance."

c. Allocate to each FFCU Class Member in the sub-class a share of the FFCU sub-class amount determined above in proportion to the sum of that FFCU Class Member's Balance as compared to the sum of the FFCU Balance, *i.e.* where the numerator is the FFCU Class Member's Balance and the denominator is the FFCU Balance.

5. In order to apportion the CCCU Net Settlement Amount to Class Members associated with the CCCU Plan ("CCCU Class Members"), the following calculations will be made for each sub-class:

a. Sum each CCCU Class Member's account balances for each year of the sub-class period based on the data as of the dates above. This amount shall be that Class Member's "Balance."

b. Sum the Balance for all CCCU Class Members in the sub-class period. The Balance for all CCCU Class members in the sub-class period is the "CCCU Balance."

c. Allocate to each CCCU Class Member in the sub-class a share of the CCCU sub-class amount determined above in proportion to the sum of that CCCU Class Member's Balance as compared to the sum of the CCCU Balance, *i.e.* where the numerator is the CCCU Class Member's Balance and the denominator is the CCCU Balance.

The amounts resulting from this initial calculation shall be known as the Preliminary Entitlement Amount. Current Participants with a Preliminary Entitlement Amount of $0 shall not receive a distribution from the Net Settlement Amount. The Settlement Administrator shall recalculate the entitlement amount excluding those participants receiving $0. The resulting calculation shall be the "Final Entitlement Amount" for each Settlement Class Member within a sub-class. The sum of the Final Entitlement Amount for each remaining Settlement Class Member in the sub-classes must equal the dollar amount of the Net Settlement Amount. If Class Members

8

are part of both sub-classes, their Final Entitlement Amount will be the combined Final Entitlement Amounts from both sub-classes.

Accordingly, the allocation between pre-2022 and post December 31, 2021 Class Members will be weighted in favor of the pre-2022 Class Members who suffered alleged greater damages.

### C. The Revised Plan of Allocation Meets all Requirements of Rule 23(e)(2)(C)(ii).

Finally, this revised Plan of Allocation treats class members equitably relative to each other because of the *pro rata* nature of the proposed distribution and weighted amounts described above, thereby satisfying the requirement of FED. R. CIV. P.23(e)(2)(D). The relief provided is adequate and equitable to all Settlement Class members as the proposed revised Plan of Allocation provides for a *pro rata* distribution. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In addition, the Settlement Agreement ensures prompt payment to the Plan, which will ultimately be credited to the accounts of Class members who are still currently in the Class Plan. Settlement Class members who are no longer participants in the Class Plan, and are entitled to a Settlement distribution, will be mailed a check. *See* revised Plan of Allocation, at ¶ II.F. No Settlement Class member will be required to submit a claim form as all relevant information will be in the hands of the Settlement Administrator who will be responsible for calculations under the Plan of Allocation.

In short, the Plan of Allocation satisfies the requirement of Rule 23(e)(2)(C)(ii).

## III. PROPOSED SCHEDULE

Just as before, the Parties have agreed to the following schedule of events, the dates of which will be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing of Class Notice | Within thirty-five (35) days of entry of the Preliminary Approval Order |
| Deadline for posting Class Notice to website | Within thirty (30) days of entry of the Preliminary Approval Order |
| Deadline for filing Plaintiffs' motions for final approval, attorneys' fees and expenses, and Case Contribution Award to the Named Plaintiffs | Forty-five (45) days prior to the Fairness Hearing |
| Deadline for members of the Settlement Class to comment upon or object to the proposed Settlement and any notice of intent to appear at the Fairness Hearing | Twenty-one (21) days prior to the proposed Fairness Hearing |
| Deadline for filing Plaintiffs' supplemental memorandum in support of motions for final approval, attorneys' fees and expenses, and Case Contribution Award to the Named Plaintiffs, and for either Parties to respond to any comments or objections | Seven (7) days prior to the proposed Fairness Hearing |
| Proposed Fairness Hearing | A date to be set by the Court, no sooner than ninety (90) days after the motion for entry of the Preliminary Approval Order[15] |

## IV.     CONCLUSION

Class Counsel respectfully request the Court grant Plaintiffs' second renewed motion and (i) enter the Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) sets a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and expenses and for a Case Contribution Award for the Named Plaintiffs and (b) file their motion for final approval of the proposed Settlement.

Dated: December 19, 2025                    Respectfully submitted,


                                            **CAPOZZI ADLER, P.C.**

                                            */s/Mark K, Gyandoh*
                                            Mark K. Gyandoh, Esquire

---

[15] Pursuant to the U.S. Class Action Fairness Act of 2005, at 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

James A. Maro, Esquire
James A. Wells, Esquire
(admitted *pro hac vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com
      jamesm@capozziadler.com
      jayw@capozziadler.com

*Attorneys for Plaintiffs, the Plan*
*and the Proposed Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on December 19, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

/s/ *Mark K. Gyandoh*
Mark K. Gyandoh