**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

BRENDA L. LUCERO, HEATHER BARTON, ILONA KOMPANIIETS and CYNTHIA HURTADO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF DIRECTORS OF THE CREDIT UNION RETIREMENT PLAN ASSOCIATION, THE BOARD OF TRUSTEES OF RETIREMENT PLANS, THE PLAN ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30.

Defendants.

CIVIL ACTION NO.: 3:22-cv-00208-jdp

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND CASE CONTRIBUTION AWARDS TO THE PLAINTIFFS**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. STANDARD OF REVIEW ........ 7

IV. ARGUMENT ........ 7

A. Plaintiffs' Request for Attorney's Fees Is Reasonable ........ 7

1. The actual agreements between the parties as compared to the marketplace and similar cases (Factors 1 and 4) ........ 9

i. The Parties' Agreement ........ 9

ii. Class Counsel's rate and lodestar multiplier ........ 11

iii. Percentage-of-the fund crosscheck ........ 15

2. The risk of non-payment ........ 16

3. The caliber of Class Counsel's performance ........ 18

4. Other Factors Supporting the Fee Award ........ 19

i. No objections to attorneys' fees further supports the adequacy of plaintiffs' request ........ 20

ii. Time limitations imposed by the client or the circumstances ........ 21

iii. Society benefits by incentivizing attorneys to litigate ERISA class actions ........ 21

B. The Court Should Reimburse Plaintiffs' Counsel for Expenses Incurred ........ 21

C. The Requested Case Contribution Awards for the Named Plaintiffs Are Reasonable ........ 23

V. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
No. 06–CV–701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................23

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ....................2, 17

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ....................8

*Beesley v. Int'l Paper Co.*,
No. 3:06–CV–703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ....................15, 24

*Blackmon v. Zachary Holdings, Inc.*,
No. 20-cv-00988, 2022 WL 3142362 (W.D. Tex. Aug. 5, 2022)....................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................7

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ....................21, 22

*Brooks v. CenterPoint Energy, Inc.*,
No. 4:24-CV-2940 (S.D. Tx. June 16, 2026)....................12

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) ....................22

*Cassell v. Vanderbilt Univ.,*
No. 16-cv-02086, 2019 WL 13160853 (M.D. Tenn. Oct. 22, 2019)....................21

*Chesemore v. All. Holdings, Inc.*,
No. 09-CV-413, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014),
*aff'd sub nom. Chesemore v. Fenkell*,
829 F.3d 803 (7th Cir. 2016) ....................20, 24, 25

*City of Burlington v. Dague*,
505 U.S. 557 (1992)....................8

*Colon v. Johnson*,
No. 8:22-CV-888, 2024 WL 5133933 (M.D. Fla. Dec. 13, 2024),
*R&R adopted*,
No. 8:22-CV-888, 2024 WL 5131566 (M.D. Fla. Dec. 17, 2024) ..............................................15

*The Contingency Factor in Attorney Fee Awards*,
90 Yale L.J. 473 (1981) ..............................................................................................16

*Cont'l Illinois Sec. Litig.*,
962 F.2D (7th Cir. 1992) ..............................................................................................*Passim*

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-CV11060, 2025 WL 732300 (E.D. Mich. Jan. 27, 2025).........................................*Passim*

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-CV-11060, 2025 WL 732300 (E.D. Mich. Jan. 27, 2025) ..............................................21

*Diaz v. BTG, Int'l, Inc.*,
No. 19-CV-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021).......................................12, 17, 24

*Dover v. Yanfeng US Automotive Interior Systems I LLC*,
No. 20-cv-11643, 2023 WL 2309762 (E.D. Mich. Mar. 1, 2023)..............................................25

*Florin v. Nationsbank of Georgia, N.A.,*
34 F.3d 560 (7th Cir.1994) (*Florin I* ) ......................................................................................8

*Florin v. Nationsbank of Georgia, N.A.*,
60 F.3d 1245 (7th Cir. 1995) (*Florin II*).....................................................................................8

*Gaines v. BDO USA, LLP*,
No. 1:22-cv-01878 (N.D. Ill. June 18, 2024)......................................................................12, 14, 15

*George v. Kraft Foods Glob., Inc*
641 F.3d 786 (7th Cir. 2011) ..................................................................................................11, 13

*Griffin v. Flagstar Bancorp, Inc.*,
No. 2:10–cv–10610, 2013 WL 6511860 (E. D. Mich. Dec. 12, 2013)........................................14

*Hawkins v. Cintas Corp.*,
No. 19-CV1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025).................................11, 17, 18, 21

*Henderson v. Emory Univ.,*
No. 16-CV-2920, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020) ..................................................24

*Holloway v. Kohler Co.*,
No. 23-CV-1242, 2024 WL 5088316 (E.D. Wis. Dec. 12, 2024) ..............................11, 12, 14, 15

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
No. 16 cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ....................18

*Karpik v. Huntington Bancshares Inc.*,
No. 17-CV-1153, 2019 WL 7482134 (S.D. Ohio Feb. 18, 2021) ....................14, 16, 22

*Kelly v. Johns Hopkins Univ.*,
No. 16-CV-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020)....................15, 17

*Kiskeravage, v. Lehigh Valley Health Network, Inc.*,
No. 5:24-cv 05567 (E.D. Pa. Mar. 27, 2026) ....................12

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-CV-02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ....................*Passim*

*Laux v. Am. Axle & Mfg. Inc.*,
No. 20-C-270, 2021 WL 1311430 (E.D. Wis. Apr. 8, 2021) ....................8

*In re LinkedIn ERISA Litig.*,
No. 5:20-CV-05704, 2023 WL 8631678 (N.D. Cal. Dec. 13, 2023)....................15

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................14, 17, 21

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ("*Cont'l Illinois Sec. Litig.*") ....................7

*Nado v. John Muir Health*,
No. 24-CV-01632, 2026 WL 82232 (N.D. Cal. Jan. 12, 2026)....................22

*Nat'l Veterans Legal Servs. Program v. United States*,
724 F. Supp. 3d 1 (D.D.C. 2024),
*aff'd*,
170 F.4th 1353 (Fed. Cir. 2026) ....................23

*Nesbeth v. ICON Clinical Rsch. LLC*,
No. 21-CV-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022)....................18

*Nguyen v. Westlake Servs. Holding Co.*,
No. 8:23-CV-00854, 2025 WL 2087575 (C.D. Cal. Jan. 27, 2025)....................14

*Nolte v. Cigna Corp.*,
No. 2:07–CV–2046, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) ....................23

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
No. 19-CV-05738, 2021 WL 5609864 (E.D. Pa. June 11, 2021)....................12, 17

*Pledger v. Reliance Trust Co.*,
No. 15-CV-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ....................16, 18

*Randall v. GreatBanc Tr. Co.*,
No. 22-CV-2354, 2026 WL 1068035 (D. Minn. Apr. 20, 2026)....................22

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ....................16

*Savani v. URS Professional Solutions LLC,*
121 F. Supp. 3d 564, 577 (D.S.C. 2015)....................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 2:08-cv-01432, 2012 WL 1964451 (D.N.J. May 31, 2012)....................10

*Shaw v. Quad/Graphics, Inc.*,
No. 20-CV-1645, 2026 WL 710944 (E.D. Wis. Mar. 13, 2026) ....................12

*Sims v. BB&T Corp.*,
No. 15-cv-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019) ....................18

*Singh v. Capital One Financial Corp.*,
No. 1:24-cv-08538 (S.D.N.Y. June 1, 2026) ....................12

*Spano v. Boeing Co.*,
No. 06-CV-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................14, 15, 23, 24

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ("*Synthroid I*") ....................9, 24

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ("*In re TikTok, Inc.*") ....................*Passim*

*Weigand v. Grp. 1001 Ins. Holdings, LLC,*
*No. 1:23-CV-01452, 2024 WL 6891436 (S.D. Ind. Oct. 3, 2024)....................Passim*

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ....................8

*Winkelman v. Whole Foods Market, Inc.*,
No. 1:23-cv-01352 (W.D. Tex. Jan. 23, 2026) ....................12

**STATUTES**

FED. R. CIV. P. 23(a) ....................5

FED. R. CIV. P. 23(b)(1) .......... 5

FED. R. CIV. P. 23(e)(2) .......... 6

FED. R. CIV. P. 23(g) .......... 5

FED. R. CIV. P. 23(h) .......... 7, 21

**Other Sources**

Employee Retirement Income Security Act of 1974 .......... *Passim*

## I. INTRODUCTION

Plaintiffs, Brenda L. Lucero, Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado ("Plaintiffs"), respectfully submit this Memorandum of Law in support of Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Case Contribution Awards to the Plaintiffs.[1] Each of these requests are based on the facts of this litigation, the prevailing market rates in similar circumstances, and Seventh Circuit precedent. After several years of contentious litigation and comprehensive discovery, Class Counsel and Plaintiffs were able to obtain a Settlement for the benefit of over 2,500 class members, despite staunch opposition and the risk of nonpayment in this risky ERISA case alleging that Defendants' breaches of fiduciary duties resulted in the Class paying excessive recordkeeping fees. The Gyandoh Declaration ("Gyandoh Decl.") further discusses the extensive efforts and risks of Class Counsel in achieving this excellent result.

Plaintiffs herein request an award of attorneys' fees of $158,317.50, the maximum amount contemplated by the Settlement and communicated to the Class. Plaintiffs' request is based on a "capped lodestar" approach, wherein Plaintiffs' actual lodestar is $995,793.50 as of July 9, 2026. Plaintiffs request reimbursement of out-of-pocket costs and expenses incurred in connection with the prosecution of this Action capped at $95,000 – the maximum amount permitted under the

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") in Support of Plaintiffs' Motions for Final Approval of Class Action Settlement, Maintaining Class Certification for Settlement Purposes and Approving Plan of Allocation and for Award of Attorneys' Fees and Reimbursement of Expenses and Case Contribution Awards to Plaintiffs. The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein. Thus, all capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement. "Class Counsel" or "Capozzi" refer to Capozzi Adler, P.C., lead counsel in this Action.

Agreement, although Plaintiffs actual expenses total at least $150,340.69. Class Counsel also asks the Court to approve the payment of Case Contribution Awards in the amount of $10,000.00 to each Plaintiff in recognition of their contributions to this Action. Each request has been communicated to the Class, and no objections have been filed.

## II. BACKGROUND

This settlement comes after over four years of hard-fought litigation. Class Counsel successfully litigated this Action through a contentious motion to dismiss, class certification, and Defendants' motion for summary judgment.[2] After months of pre-suit investigation, including consultation with experts, Plaintiffs filed this ERISA action on April 12, 2022. Dkt. 1; Gyandoh Decl. ¶¶ 3, 47-48. Defendants moved to dismiss the complaint in its entirety. Between August 2022 and February 2023, the Parties fully briefed the motion, including Defendants' notice of the intervening precedent in *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022). *See* Dkts. 18-22, 25-26, 34-37. This Court denied the motion entirely, concluding that *Albert* presented "a close" call, but was distinguishable in multiple respects. Dkt. 38 at 6.

Following Defendants' Answer and Affirmative Defenses on April 6, 2023, the Parties engaged in extensive merits discovery. *See* Dkt. 41, Gyandoh Decl. ¶¶ 7, 50. Class Counsel analyzed approximately 25,409 pages of documents provided by Defendants, and the Parties completed six fact depositions—including the four Class Representatives and Defendants' Rule 30(b)(6) representative—as well as three expert depositions. Gyandoh Decl. ¶ 58. The Parties also briefed Plaintiffs' motion for class certification, Defendants' motion to compel discovery, and Plaintiffs' unopposed motion for leave to amend. *See* Dkts. 46-99. Plaintiffs filed the operative

---

[2] To avoid unnecessary repetition, Plaintiffs incorporate and refer to the Gyandoh Declaration at ¶¶ 3-72 (detailing the procedural history, discovery practice, settlement negotiations, and settlement terms).

Amended Class Action Complaint on December 5, 2023, and Defendants answered shortly thereafter. Dkts. 100, 103. The Court denied Defendants' Motion to Compel Discovery the following day. *See* Dkt. 105.

Although the Court denied class certification on January 9, 2024, and the Seventh Circuit later denied Plaintiffs' Rule 23(f) petition, Plaintiffs continued to vigorously prosecute the action, including seeking reconsideration of class certification and opposing Defendants' motion for summary judgment after extensive expert discovery and briefing. *See* Dkts. 104, 116, 134-170, 176-178, 189-90.

Following the denial of class certification, Class Counsel sent Counsel for Defendants a demand proposing to resolve the litigation on behalf of a narrower settlement class. Gyandoh Decl. ¶ 59. The Parties thereafter engaged in months of arm's-length negotiations while Defendants' summary judgment motion remained pending. *Id.* ¶ 60. Those negotiations included substantial discussions concerning the appropriate settlement class, release, allocation methodology, and damages. *Id.* ¶ 61. Defendants denied all liability and the existence of any damages entirely, remaining adamant that they always acted prudently and the recordkeeping fees were always reasonable. *Id.* ¶ 60. Plaintiffs engaged the expert assistance of Michael Giest for determining the proper methodology and damages calculations related to Plaintiffs' core theory of liability: the Plan's excessive recordkeeping fees. *Id.* ¶ 62. On top of the Settlement amount attributable to Plaintiffs' theory, Plaintiffs negotiated for an additional $95,000 to be contributed to the Gross Settlement Fund to lessen the impact of any attorneys' fees and litigation expenses awarded by the Court, resulting in a negotiated Settlement amount of a $570,000.00 gross Settlement fund *Id.*

The Settlement Agreement states that "Class Counsel intends to seek to recover their attorneys' fees not to exceed $158,317.50, and litigation costs and expenses advanced and carried

by Class Counsel for the duration of the Class Action, not to exceed $95,000.00, which shall be recovered from the Gross Settlement Amount." Agreement § 14.1. Further, "[i]t shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or Class Representatives' Case Contribution Awards and/or modifies any of the proposed orders relating to Attorneys' Fees and Costs and/or Class Representatives' Case Contribution Awards." *Id*. § 19.3.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement, Granting Class Certification for Settlement Purposes, Approving Form and Manner of Settlement Notice, Preliminarily Approving Plan of Allocation, and Scheduling a Date for a Fairness Hearing, with supporting memorandum, declarations, the Settlement Agreement, and a declaration of Mark K. Gyandoh (Counsel for the class) and the Named Plaintiffs on August 16, 2024. *See* Dkts. 200-06. Although the Court denied the Motion without prejudice, it expressly permitted the Parties to renew their request with additional support regarding class certification, the proposed allocation plan, and the requested attorneys' fees and service awards. Dkt. 209. On May 6, 2025, Defendants filed their Notice of Intention to Proceed with Motion for Summary Judgment and Motion to Reconsider Order Denying Moot for Summary Judgment as Moot, to which Plaintiffs filed a response. *See* Dkts. 210-11. Subsequently, "[t]he court agree[d] with plaintiffs that it [wa]s premature to abandon the settlement process. Plaintiffs are correct that the court did not reject any portion of the settlement," and "grant[ed] plaintiffs' request to set a new deadline for a motion for class certification and preliminary approval to give the parties an opportunity to continue negotiating." Dkt. 212 at 2.

On July 15, 2025, Plaintiffs filed their renewed Motion for Preliminary Approval with their supporting memorandum and exhibits, including expanded legal analysis regarding settlement class certification. *See* Dkts. 213-220. Defendants filed a response stating that:

> During a videoconference on June 12, 2025, counsel for Defendants invited a revised settlement demand from Plaintiff for a modified settlement which would address the Court's concerns that Defendants did not believe were curable. Instead of proposing a revised demand, Plaintiffs' counsel suggested that they would send a draft pleading the following week in which they contended would address all of the Court's concerns in denying approval of the settlement without having to modify the settlement.

Dkt. 221 at 5.

Defendants stated that the "draft legal memorandum" Plaintiffs provided Defendants did not convince Defendants that the renewed motion would "adequately address a key concern of the Court." *Id*. "On July 14, the parties had a further discussion about Defendants' position, but Class Counsel still did not provide a revised settlement demand with a lower settlement payment that would account for a narrowed pool of plan participants included in the settlement." *Id*.

Although the Court concluded that "Plaintiffs have addressed most of the court's concerns," it requested additional revisions to the proposed plan of allocation before granting preliminary approval. Dkt. 224 at 1-2. On December 19, 2025, Plaintiffs filed their Second Renewed Unopposed Motion for Preliminary Approval, supporting memorandum, and exhibits that addressed the concerns found by the Court in the previous order by restructuring the Class with subclasses and modifying the calculations such that a lower pro-rata share of the Net Settlement Amount will go to Class Members with accounts post-2021 in order to reflect the alleged lower damages amounts for those Class Members. *See* Dkts. 225-227.

After reviewing the revised settlement, the Court granted preliminary approval, certified the Settlement Class and Subclasses under Rules 23(a), 23(b)(1), and 23(g), and found that it would

likely be able to grant final approval under Rule 23(e)(2). Dkt. 228 ("Preliminary Approval Order") at 2.

There was a highly successful notice campaign, using both email and first Class mail, with only two Class Members being ultimately unreachable under either method. See Gyandoh Decl. ¶¶ 76-82; RG/2 Decl. (attached to the Gyandoh Decl. as Exhibit 2), ¶¶ 8-10. The Notice program, in accordance with the Preliminary Approval Order, informed absent class members of their rights to object, how to object, and the deadline to file objections.[3] On June 22, 2026, the objection deadline passed, *see id*., with no objections being filed against the Settlement whatsoever, including no objections to the requests for fees, expenses, and case contribution awards. Gyandoh Decl. ¶¶ 86; RG/2 Decl. ¶ 11. The Notice explained:

> As part of the Settlement, Defendants have agreed to make a one-time payment of $570,000.00 (the "Gross Settlement Amount"). Class Counsel intends to ask the Court to approve up to one-third of $475,000 (which is the amount set aside to distribute to the Settlement Class), or $158,317.50 for its attorneys' fees.
>
> Class Counsel will also seek reimbursement for litigation expenses actually incurred and necessary for the prosecution of the litigation, including the pre-litigation investigation period, not to exceed $95,000.00, which also shall be recovered from the Gross Settlement Amount. In addition, Class Counsel will ask the Court to approve Class Representatives' Case Contribution Awards not to exceed $10,000.00 each for Class Representatives Brenda L. Lucero, Heather Barton, Ilona Kompaniiets and Cynthia Hurtado.

Consistent with the Court's Preliminary Approval Order, Fiduciary Counselors Inc., the independent fiduciary retained in connection with the Settlement, is scheduled to interview Class Counsel on July 20, 2026, and Class Counsel will submit the independent fiduciary's report to the Court before the Fairness Hearing. Gyandoh Decl. ¶¶ 46, 75. Fiduciary Counselors Inc. will review

[3] Available at www.creditunionerisasettlement.com/pdf/Credit_Union_ERISA_Notice.pdf ("Notice") last accessed July 12, 2026.

the Settlement, including the scope of the release, and requests for fees, expenses, and Case Contribution Awards. *Id.*; see also Dkt. 214 at 34-36 (explaining the role of the Independent Fiduciary in ERISA cases).

## III. STANDARD OF REVIEW

Plaintiffs' attorneys in a class action may petition the court for compensation for any award to the class resulting from the attorneys' efforts; "lawyer[s] who recover[ ] a common fund ... [are] entitled to a reasonable attorney's fee from the fund as a whole." *Weigand v. Grp. 1001 Ins. Holdings, LLC*, No. 1:23-CV-01452, 2024 WL 6891436, at *1 (S.D. Ind. Oct. 3, 2024) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Under FED. R. CIV. P. 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement."

## IV. ARGUMENT

### A. Plaintiffs' Request for Attorney's Fees Is Reasonable

Plaintiffs are requesting their "capped lodestar" of $158,317.50, or, as July 9, 2026, less than a quarter of their actual lodestar of $995,793.50. Gyandoh Decl., ¶¶ 68, 98, 101-02, Exhibit 4. Because Class Counsel's request equals a small fraction of the actual lodestar, and because awarding a lodestar multiplier would be appropriate (if not required under Seventh Circuit precedent), it is reasonable to award Plaintiffs' capped lodestar rather than one third of the net amount in the common fund after expenses. *See Matter of Cont'l Illinois Sec. Litig*., 962 F.2d 566, 568-71 (7th Cir. 1992) ("*Cont'l Illinois Sec. Litig.*") (Posner, J) (explaining that requesting a lodestar capped at the agreed upon amount is permissible, and the district court erred by not adjusting for the contingency arrangement, risk of loss at trial, and time-value of hourly rates after years of nonpayment).

As far as ERISA litigation is concerned, the Seventh "[C]ircuit has taken the position that, in awarding attorneys' fees, a district court may use the lodestar method, the percentage of recovery method, or some combination of the two." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995) (*Florin II*) (citing *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 565-66 (7th Cir.1994) (*Florin I*)); *see also Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,* 743 F.3d 243, 247 (7th Cir. 2014) ("*Florin* is still good law. The district court did not err, much less abuse its discretion, by choosing the lodestar method."); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.").

In *Florin I and II,* the Seventh Circuit held "that a risk multiplier is not merely available in a common fund case but *mandated*, if the court finds that counsel 'had no sure source of compensation for the services.'" *Florin II*, 60 F.3d at 1247 (quoting *Florin I,* 34 F.3d at 565) (emphasis added). After remand from *Florin I*, the district court awarded a percentage of the common fund with "only a 1.01 risk multiplier, in essence f[inding] that the attorneys for the class faced no risk in taking on the case," which the Seventh Circuit found untenable, especially considering the high risk of success based on "a number of facially plausible defenses to the action" and risks beginning since "the inception of the suit." *Id.*, at 1247-48. Also in ERISA cases, there is "a 'strong presumption that the lodestar represents the reasonable fee.'" *Laux v. Am. Axle & Mfg. Inc.*, No. 20-C-270, 2021 WL 1311430, at *2 (E.D. Wis. Apr. 8, 2021) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Moreover, Class Counsel is requesting the maximum dollar amount contemplated in the Settlement Agreement and communicated to the Class Members through the Notice. No objections to this request has been lodged. Gyandoh Decl. ¶ 91.

Lastly, "a reasonable fee" award is "informed by […] unweighted factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of Class Counsel's performance; and (4) information from other cases, including fees awarded in comparable cases." *Weigand*, 2024 WL 6891436, at *3 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) ("*Synthroid I*"). The fourth factor is typically consumed in the first three factors. While "not determinative," these factors "assist the Court in deciding whether a departure from the standard rate is appropriate." *Id.* (citing *Synthroid I*, 264 F.3d at 719).

**1. The actual agreements between the parties as compared to the marketplace and similar cases (Factors 1 and 4)**

**i. The Parties' Agreement**

Although Plaintiffs are seeking a capped lodestar amount, not the percentage of the fee method, Class Counsel's fee request was negotiated bearing in mind "'the value received from the settlement by the members of the class'—*i.e.*, the net common fund after deduction of administrative expenses, litigation expenses, and service awards" by ensuring that administrative expenses, a substantial cost to the Class in this long-running and complex litigation, did not impair the benefit of the Settlement that was derived from the value of the Settlement tethered to Plaintiffs' theory of liability. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 939 (N.D. Ill. 2022) ("*In re TikTok, Inc.*"); *Cont'l Illinois Sec. Litig.*, 962 F.2d at 5570 ("[I]f reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer."). The Parties first negotiated a Settlement amount based on an agreed-upon method for determining an amount related to Plaintiffs' theory of liability, meaning excessive recordkeeping fees, although Defendants

maintained there were no fiduciary breaches, let alone losses stemming from the alleged breaches. *See* Gyandoh Decl. ¶61. That initial amount was approximately $475,000.00. *Id*. The Parties agreed to add $95,000.00 to the Settlement for expense reimbursement, with Class Counsel being limited to asking for $95,000.00 in expense reimbursement. *See id*. ¶¶ 60, 62, 68, 70, 95; Notice. This remains true, even though Class Counsel's actual expenses presently total $150,340.69. Gyandoh Decl. ¶ 93.

As previously communicated to the Court and the Class, Class Counsel's fee request is based off one third of $475,000.00, the amount tied to the heart of Plaintiffs' claims, not one third of the gross $570,000 Common Fund, which would be $190,000.00. *See* Notice. The Settlement Agreement states that "Class Counsel intends to seek to recover their attorneys' fees not to exceed $158,317.50," and if "the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or Class Representatives' Case Contribution Awards" the Settlement will still be binding on the Parties. Agreement, §§ 14.1, 19.3. The four Class Representatives that were involved with the Settlement approve of every aspect of the Settlement, including the fees. *See* Dkts. 201-06; Dkt. 215-1 at 33-36 (Plaintiffs' signing the Agreement); Gyandoh Decl., ¶ 138, Exhibits. 15-18 (the declarations of Plaintiffs Brenda L. Lucero, Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado, respectively).

Plaintiffs are requesting fees in line with "fee agreements reached by sophisticated entities in the market" and "fees awarded in comparable cases" in multiple respects. *Weigand*, 2024 WL 6891436, at *3. As a threshold matter, courts in ERISA cases understand that "if this were not a class action litigation, a contingent fee in such a complex case would likely range between 30 and 40 percent of the recovery." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 2:08-cv-01432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012). Although Class Counsel is requesting a

capped lodestar, the amount falls on the lower end of that range, as it equals 27.78% of the gross Settlement amount, and one third of the $475,000.00 Settlement amount attributable to the liability portion of the settlement, before the additional fee portion. *See Holloway v. Kohler Co*., No. 23-CV-1242, 2024 WL 5088316, at *3 (E.D. Wis. Dec. 12, 2024) ("[C]lass counsel's proposed award is a contingent fee of 30% of the common fund, which is below the typical one-third market rate in ERISA cases.").

**ii. Class Counsel's rates and lodestar multiplier**

Capozzi charges reasonable hourly rates, and is requesting an amount that equals a fractional lodestar multiplier, well below the median in similar cases. As the Seventh Circuit instructs, the court should consider reasonable hourly rates when using a capped lodestar analysis, and should consider "[t]he cost of delay in receiving money to which one is entitled is the loss of the time value of money." *Cont'l Illinois Sec. Litig*., 962 F.2d at 571. Further, "ERISA litigation requires specialized expertise, and" Capozzi Adler is one of the "relatively few firms that have that expertise." *Hawkins v. Cintas Corp*., No. 19-CV1062, 2025 WL 523909, at *4 (S.D. Ohio Feb. 18, 2025) (approving of Capozzi Adler's fees and hourly rates). Hence why "it is appropriate to use an ERISA-specific market to assess the reasonableness of rates rather than a local market." *Id*. Likewise, in *George v. Kraft Foods Glob., Inc*., an ERISA excessive fee case from this Circuit, the court held that "the market for legal services in cases such as this is a national one" particularly where, like here, class members exist across the nation. No. 1:07-CV-1713, 2012 WL 13089487, at *3 (N.D. Ill. June 26, 2012); *see also Krueger v. Ameriprise Fin., Inc*., No. 11-CV-02781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (listing excessive fee cases using the national market rates).

Courts have overwhelmingly found Capozzi Adler's hourly rates reasonable, including within this Circuit and in recent years.[4] *See* Gyandoh Decl. ¶ 121 (listing cases); *see also Diaz v. BTG, Int'l, Inc*., No. 19-CV-1664, 2021 WL 2414580, *8 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc*., No. 19-CV-05738, 2021 WL 5609864 (E.D. Pa. June 11, 2021); *Davis v. Magna Int'l of Am., Inc*., No. 20-CV11060, 2025 WL 732300, at *2 (E.D. Mich. Jan. 27, 2025). In *Gaines v. BDO USA, LLP*, the court conducted a lodestar cross check and held that the "number of hours and hourly rate" presented by Capozzi was reasonable. No. 1:22-cv-01878 ¶ 5 (N.D. Ill. June 18, 2024) (Dkt. 62) (attached as Exhibit 14 to the Gyandoh Decl.). However, the court granted one third of the gross settlement fund in that case, which equaled "a modest lodestar multiplier of approximately 1.79 times Class Counsel's total lodestar." *Id*.; *see also Gaines v. BDO USA, LLP,* No. 1:22-cv-01878 (N.D. Ill. June 18, 2024) (Dkt. 61).

For its ERISA practice, Capozzi Adler charges partner rates of $850 to $990 per hour; mid-level and senior associate rates of $525 to$600 per hour; and paralegal and professional staff rates that range from $335 to $360 per hour. Professional staff and legal assistant rates are billed at $275 per hour. Gyandoh Decl. ¶ 106. These rates are commensurate with the level of skill, experience, and reputation involved. *Id*. Capozzi's rates are also in line with comparable firms conducting analogous work. *See id*. ¶¶ 107-16 (listing other ERISA firms' rates, with supporting exhibits). In particular, the firm of Izard Kindall & Raabe LLP submitted a declaration of their fees in the analogous ERISA case of *Holloway v. Kohler Co*., where the court granted their fee request that charged similar rates to Capozzi's. *See* 2024 WL 5088316, at *3; Gyandoh Decl. ¶ 115, Ex.10.

---

[4] 2026 examples include *Brooks v. CenterPoint Energy, Inc.*, No. 4:24-CV-2940 (S.D. Tx. June 16, 2026) (Dkt. 70); *Winkelman v. Whole Foods Market, Inc*., No. 1:23-cv-01352 (W.D. Tex. Jan. 23, 2026); *Singh v. Capital One Financial Corp*., No. 1:24-cv-08538 (S.D.N.Y. June 1, 2026) (Dkt. 54); *Kiskeravage, v. Lehigh Valley Health Network, Inc*., No. 5:24-cv 05567 (E.D. Pa. Mar. 27, 2026) (Dkt. 45).

Likewise, when accounting for inflation, using the U.S. Bureau of Labor Statistics inflation calculator,[5] Capozzi's hourly rates also compare favorably to the ERISA breach of fiduciary duty firm's rates approved by the court in *George*, 2012 WL 13089487. In *George*, "attorneys with 25 years or more experience" charged $885.60, which would be $1,371.86 today, while Capozzi's attorneys with the same experience charge $990.00. *Id.*, at *3; Gyandoh Decl. ¶¶ 106, 117. In *George*, the attorneys with 5 to 14 years of experience charged $498.15, or $988.99 today, which is lower than the $850.00 for the same level here. *See George*, 2012 WL 13089487, at *3; Gyandoh Decl. ¶¶ 106, 117. The attorneys in *George* with 2 to 4 years of experience charged $359.78, which is $525.41 today, roughly the same charged by Capozzi. *See George*, 2012 WL 13089487, at *3; Gyandoh Decl. ¶¶ 106, 117. Ultimately, these cases demonstrate that the rates underlying Capozzi's lodestar are reasonable.

Capozzi's actual lodestar is $995,793.50 (through July 9, 2026), although for purposes of this application, the Court may consider Capozzi's lodestar as of July 8, 2024 ($719,606.00), which does not include two years of additional time implementing this Settlement or time spent submitting Capozzi's renewed motion for preliminary approval. *See* Gyandoh Decl. ¶¶ 96-102; Dkt. No. 209 at 7. This lodestar also does not include future attorney time that will be spent administering the Settlement. This case spans over four years, and involved complex, adversarial litigation at every stage, extensive discovery, and intensive motion practice. *See* Section II, *supra*. Thus, it is no surprise that Capozzi's time totals 1,247.1 hours (and counting). Gyandoh Decl. ¶¶ 96, 102. While every second included was reasonable and necessary for the prosecution of this Action, the reasonableness of Capozzi's hours are especially so because Capozzi is not seeking reimbursement for all hours expended.

---

[5] *See* www.bls.gov/data/inflation_calculator.htm

Capozzi has capped its fees at $158,317.50, resulting in a fractional lodestar multiplier of .22, well below what courts typically find reasonable. Gyandoh Decl. ¶¶ 68, 102; *see In re TikTok, Inc.*, 617 F. Supp. 3d at 943 ("In practice, most multipliers fall between one and four."); *Spano v. Boeing Co.*, No. 06-CV-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) ("In risky [ERISA] litigation such as this, lodestar multipliers can be reasonable in a range between 2 and 5."); *Karpik v. Huntington Bancshares Inc.*, No. 17-CV-1153, 2019 WL 7482134, at *8 (S.D. Ohio Feb. 18, 2021) (finding a 3.3 multiplier reasonable "[b]ecause of the inherent risks of litigation" in an excessive fee case); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610, 2013 WL 6511860, at *8 (E. D. Mich. Dec. 12, 2013) (noting many ERISA cases award fees with multipliers above 1%). Courts in ERISA cases find fractional multipliers to be particularly reasonable. *See George*, 2012 WL 13089487, at *3 (awarding a contingency that was "one-quarter of the unenhanced value of Class Counsel's work based on current lodestar rates."); *Nguyen v. Westlake Servs. Holding Co.*, No. 8:23-CV-00854, 2025 WL 2087575, at *8 (C.D. Cal. Jan. 27, 2025); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010); *Krueger*, 2015 WL 4246879, at *2.

Unquestionably, requesting a fractional multiplier in this litigation is reasonable, considering the Seventh Circuit has held that it is an error not to "award a risk multiplier." *Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992); *Florin II*, 60 F.3d at 1247-48.

Lastly, the Gyandoh Declaration addresses in detail the topics this Court has identified in its "Standard Attachments for Civil Cases" at 39. The Gyandoh Declaration is signed by the undersigned, who is familiar with the billing practices involved and confirms that the hours have been reviewed for reasonableness and that counsel has exercised billing judgment for the number of hours charged to the client. Additionally, the Gyandoh Declaration attaches:

(1) contemporaneous logs, with separate entries for the hours spent on specific tasks. Each entry should indicate who performed the work and give a description of the task, *see* Gyandoh Decl., ¶ 96, Exhibit 4;

(2) the hourly rate(s) for the attorney(s) and other personnel involved in the case, *see id.*; and

(3) fee affidavits from other litigation, and public literature, confirming that the hourly rate(s) of Capozzi are in line with the market rate for the type of work performed and the amount of experience of the attorney who performed it. *See id.,* Exhibits. 5-14.

Moreover, the instant brief provides evidence that the total fee charged by Capozzi is reasonable by citing to instances where courts awarded similar fees for a similar type and amount of work.

**iii. Percentage-of-the fund crosscheck**

Using the percentage-of-the fund method as a crosscheck, Plaintiffs' request is reasonable because "one-third" the common fund is the "market rate in ERISA cases." *Holloway*, 2024 WL 5088316, at *3; *see also Weigand*, 2024 WL 6891436, at *3. Specifically, one third, or 33 1/3%, of the gross settlement fund is the typical award in ERISA breach of fiduciary duty cases involving excessive fees, and has even been awarded by ERISA cases in this Circuit. *See Gaines*, No. 1:22-cv-01878 ¶ 5; *Spano*, 2016 WL 3791123, at *1; *Beesley v. Int'l Paper Co.*, No. 3:06–CV–703, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014); *Davis*, 2025 WL 732300, at *1; *Colon v. Johnson*, No. 8:22-CV-888, 2024 WL 5133933, at *2 (M.D. Fla. Dec. 13, 2024), *R&R adopted*, No. 8:22-CV-888, 2024 WL 5131566 (M.D. Fla. Dec. 17, 2024); *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704, 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) *Krueger*, 2015 WL 4246879, at *1; *Kelly v. Johns Hopkins Univ.*, No. 16-CV-2835, 2020 WL 434473, at *3 (D. Md.

Jan. 28, 2020); *Pledger v. Reliance Trust Co*., No. 15-CV-4444, 2021 WL 2253497, at *5,7 (N.D. Ga. Mar. 8, 2021) ("The percentage used to calculate the requested fee in this case is consistent with experienced attorneys who handle complex ERISA litigation, and has been found reasonable in numerous cases in federal district courts."); *Karpik*, 2019 WL 7482134, at * 7 (same); *Krueger*, 2015 WL 4246879, at *2. Class Counsel's rates are reasonable compared to the marketplace.

Using the methodology in *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), the net amount of money available to the Settlement Class after deduction of expenses, totaling $130,519.00—which encompass three categories: (1) the Independent Fiduciary ($15,000), (2) Capozzi's cap on expenses ($95,000); and (3) R/G 2's estimate ($20,519.00) — and potential Case Contribution Awards ($40,000) would be $439,481. Gyandoh Decl. ¶¶ 70-72. One third of this amount is $146,493.67.

Thus, Class Counsel's capped lodestar fee request is reasonable when compared to the percentage of the fund method.

### 2. The risk of non-payment

"Larger contingency fees are generally needed to persuade lawyers to take riskier cases because there is a lower chance that they will receive anything at the end." *In re TikTok, Inc.*, 617 F. Supp. 3d at 941 (citing John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 481–82 (1981)); *see also Cont'l Illinois Sec. Litig*., 962 F.2d at 569 ("[T]he failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case."). That is precisely the case here. Risk is not only evidenced by the numerous dispositive motions submitted by Defendants throughout this years-long litigation, but also by the adverse Seventh Circuit precedent issued while Defendants' motion to dismiss was still pending. *See* Section II, *supra*; *In re Marsh ERISA Litig*., 265 F.R.D at 148 ("[T]he unsettled

nature of the law applicable to Plaintiffs' claims […] increases the risks for Plaintiffs' Counsel."); *Hawkins*, 2025 WL 523909, at *3 (explaining Class Counsel assume great risks in pursing breach of fiduciary duty cases on a contingency bases, with few attorneys incentivized to take on "ERISA litigation" because it "is both 'difficult[]' and—for many attorneys at least—'undesirab[le].'")

Just like the case of *Krueger*, "during the pendency of this action" the "Court of Appeals" issued an adverse precedent adding to "the risk, [and] the difficulty and novelty of the issues involved" that already exist in ERISA breach of fiduciary duty cases. *Krueger*, 2015 WL 4246879, at *1; *See* Dkt. 38 at 6 (discussing *Albert*, 47 F.4th 570). Yet, "Class Counsel[] demonstrated willingness to pursue this action for four years of intense, adversarial litigation," which "weigh[s] in favor of Plaintiffs' fee request." *Id*. Moreover, the complexity in ERISA does not just involve proving liability, but also in proving damages, therefore, making ERISA cases particularly undesirable. *See Kelly*, 2020 WL 434473, at *3 (finding this weighs in favor of a full fee award). To be sure, in excessive recordkeeping fee cases, litigation carries a high "risk of an adverse verdict" and "the risk of a low damage award after substantial investment of both time and money." *Diaz*, 2021 WL 2414580, at *6; *see also Davis*, 2025 WL 732300, at *2 (explaining "the complexity of the ERISA law issues presented and the acute risk of continued litigation" weigh in favor of the fee award); *Pinnell*, 2021 WL 5609864, at *1 n.2 (explaining in a similar breach of fiduciary duty case that "[Capozzi Adler] represented Participants on a contingent basis with the risk the action would not produce a recovery. This factor weighs in favor of approving the proposed fee.").

Class Counsel effectively and efficiently litigated this action from its inception until now. In that time, Class Counsel has never been paid for their work on this matter, taking the case on a wholly contingent basis. Instead, they faced the very real risk, in the face of staunch opposition

from highly qualified defense counsel, that they would receive nothing for their professional time spent, and cash outlays they invested in the case. Many courts find this factor weighs in favor of approving the requested fee. The Named Plaintiffs would not have been able to pursue this litigation other than on a contingency fee basis. Thus, the risk of this contingency fee case weighs in favor of a full fee award.

### 3. The caliber of Class Counsel's performance

Despite the risks of this litigation, Class Counsel was able to negotiate a Settlement that represents roughly 45% of the potential best-case damages as calculated by Plaintiffs. *See* Gyandoh Decl. ¶ 72. This is an extraordinary recovery compared to similar ERISA cases. *See*, *e.g., Johnson v. Fujitsu Tech. & Business of America, Inc.*, No. 16 cv-03698, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (recovering 10% of the estimated maximum damages); *Blackmon v. Zachary Holdings, Inc.*, No. 20-cv-00988, 2022 WL 3142362, at *4 (W.D. Tex. Aug. 5, 2022) (recovering 14-23%); *Sims v. BB&T Corp.*, No. 15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (similar). Indeed, "ERISA litigation requires specialized expertise, and there are relatively few firms that have that expertise." *Hawkins*, 2025 WL 523909, at *4; *see also Pledger*, 2021 WL 2253497, at *7 ("ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law" that "involve[s] highly technical knowledge of investment plans, investment knowledge, and industry practices."). Courts recognize that Capozzi is one such firm. *See*, *e.g.*, *id.*, at *3; *Davis*, 2025 WL 732300, at *3 (same); *Diaz*, 2021 WL 2414580, at *8 (appointing the undersigned as settlement Class Counsel in an ERISA excessive fee case and stating that we "appear well qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."); *Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-CV-1444, 2022 WL 22893879, at *4 (E.D. Pa. Mar. 10, 2022)

("[Capozzi] has extensive experience and has worked diligently to litigate Plaintiffs' claims.").

Plaintiffs retained attorneys who are highly qualified, experienced, and able to litigate this matter. Mr. Gyandoh, a partner and Chair of the Fiduciary Practice Group at Capozzi, is a highly qualified ERISA class action attorney. *See* Gyandoh Decl. ¶¶ 92, 123-24. Additionally, Capozzi has been named Lead or Co-Lead interim Class Counsel in numerous breach of fiduciary duty class actions across the nation. *Id*. ¶¶ 129-30. Throughout the litigation, Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' allegations and achieved an excellent Settlement in this Action, even after refusing Defendants' pressure to lower their settlement demand.

Relatedly, "[t]hat Class Counsel were able to secure a favorable settlement in the face of this opposition weighs in favor of" granting a full fee award. *In re TikTok, Inc.*, 617 F. Supp. 3d at 942. Counsel for Defendants, Holland & Knight's LLP[6], is one of the leading ERISA class action defense firms in the country. Capozzi demonstrated a high pedigree and body of work in this Action and is one of the few firms nationally with the ability to litigate complex ERISA matters, especially against highly able adversaries.

Ultimately, the Seventh Circuit factors for awarding attorney's fees all weigh in favor of granting the full fee requested.

### 4. Other Factors Supporting the Fee Award

#### i. No objections to attorneys' fees further supports the adequacy of plaintiffs' request

The Class Notice, which was mailed to over 2,500 potential Settlement Class Members, specified that Class Counsel would request attorneys' fees of up to $158,317.50. To date, there

---

[6] *See* https://www.hklaw.com/en/services/practices/litigation-and-dispute-resolution/erisa-litigation.

have been no objections to the requested attorneys' fees. *See* Gyandoh Decl., ¶¶ 82, 86, RG/2 Decl., ¶ 11. Further, opposing counsel does not oppose Plaintiffs' fee request.

In ERISA cases, it is highly supportive of a fee award that "none of the class members objected to the proposed settlement" and/or the fee requests. *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413, 2014 WL 4415919, at *4 n.3 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (an ERISA case); *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[N]o Class Member objected to the Settlement. As such, the Class reaction indicates the Class supports the Settlement."); *Davis*, 2025 WL 732300, at *3 ("Additionally, no Class Members have objected to the contemplated award of attorneys' fees."); *In re Marsh Erisa Litig.*, 265 F.R.D. at 151 ("The Independent Fiduciary's approval, together with the fact that only two objections have been filed-both meritless-weigh heavily in support of the Court's decision to award the requested fees and expenses.").

**ii. Time limitations imposed by the client or the circumstances**

As reflected by the sheer number of hours devoted by the attorneys and staff involved in litigating this case, a substantial amount of their time was devoted to this case at the preclusion of other work. *See* Gyandoh Decl., ¶¶ 96, 101-02. Courts around the country consider this a factor supporting approval of attorneys' fees in complex class action cases because "[t]here is an inherent preclusion of other work in litigating a complex case such as this on a contingency fee basis." *Shaw,* 2015 WL 1867861, at *6; *see also In re TikTok, Inc.*, 617 F. Supp. 3d at 942. Class Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingency fee rather than strictly working on paid hourly wages." *Id.* (citation omitted). There was "the possibility in a case of this kind that [Class Counsel], having given up other cases in order to actively pursue this case, will actually

recover no payment for [their] time and efforts." *Id*.

Undoubtedly, the risks of an unsuccessful result in this action, and therefore non-payment, were significant in this case.

**iii. Society benefits by incentivizing attorneys to litigate ERISA class actions**

Undoubtedly, "[c]lass actions such as this 'have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources.'" *Davis*, 2025 WL 732300, at *3 (citation omitted). "[I]t is well-established that there is a 'significant public interest in rewarding attorneys who represent employees and retirees in ERISA litigation in order to protect their retirement funds.'" *Hawkins*, 2025 WL 523909, at *3 (citation omitted); *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 381-82 ("Protecting retirement funds of workers is of genuine public interest and, thus, supports a fully compensatory fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. at 149-50 ("Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers," and "such lawsuits create incentives for fiduciaries to comply with ERISA."). Awarding attorneys' fees incentivizes the pursuit of future ERISA cases to society's benefit.

## B. The Court Should Reimburse Plaintiffs' Counsel for Expenses Incurred

"Class Counsel are also entitled to reimbursement of reasonable litigation expenses." *In re TikTok, Inc.*, 617 F. Supp. 3d at 946. As with other ERISA cases, "[a] cost award is authorized by both the parties' settlement agreement and the common fund doctrine" and FED. R. CIV. P. 23(h). *Cassell v. Vanderbilt Univ.,* No. 16-cv-02086, 2019 WL 13160853, at *2 (M.D. Tenn. Oct. 22, 2019). Class Counsel should be reimbursed the maximum $95,000 in litigation expenses they advanced in prosecuting this case, especially because Class Counsel actually incurred far greater

expenses and were able to keep costs low wherever possible. *See* Gyandoh Decl., ¶ 91. Similarly, in the case of *Davis*, the fee request was reasonable because the plaintiffs' actual costs were higher than the "capped" expenses they were seeking, and "no Class Member ha[d] objected to the request for reimbursement of expenses." *Davis*, 2025 WL 732300, at *4. The same is true here.

The Gyandoh Declaration provides an itemized list of reasonable and necessary expenses that are all expenses typically reimbursed in similar cases. *See* Gyandoh Decl. ¶¶ 92-100, Exhibit 3. In ERISA cases, " reasonable and necessary expenses[] includ[e] photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses, and expert fees and expenses." *In re Broadwing, Inc.*, 252 F.R.D. at 382; *Davis*, 2025 WL 732300, at *3. Independent Fiduciaries are also required in ERISA cases, and "$15,000" for an "independent fiduciary" is in line with market rates. *Nguyen*, 2025 WL 2087575, at *9; *see also Karpik*, 2021 WL 757123, at *9 ("$15,000 for" the independent fiduciary); *Nado v. John Muir Health*, No. 24-CV-01632, 2026 WL 82232, at *5 (N.D. Cal. Jan. 12, 2026) (same).

The expenses related to the settlement administration are also reasonable, and in fact $1,587 lower than RG/2 previously estimated when this Court preliminarily approved the Settlement. *See* Gyandoh Decl. ¶ 85; *see also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 864 (8th Cir. 2017) ("[T]he district court was entitled to rely on the estimates provided by the settlement administrator when deciding whether to approve the settlement."). RG/2's expenses are also in line with market rates in ERISA cases. *See Nado*, 2026 WL 82232, at **2, 5 (approving of $31,986.00 in settlement administration costs for a class of 19,744); *Karpik*, 2021 WL 757123, at *9 (finding the administrator's rate of $89,714.00 for mailing 38,846 Notices was "reasonable in relation to the size of the class."); *Randall v. GreatBanc Tr. Co.*, No. 22-CV-2354, 2026 WL

1068035, at *6, 9 (D. Minn. Apr. 20, 2026) (an ERISA awarding up to $418,237.00 in settlement administrative cost reimbursement for a class of 425,851 members); *see also Nat'l Veterans Legal Servs. Program v. United States*, 724 F. Supp. 3d 1, 11, 30–31 (D.D.C. 2024), *aff'd*, 170 F.4th 1353 (Fed. Cir. 2026) (approving of $1,077,000 in settlement administration costs for administering notice to over 500,000 class members through a similar notice program as here).

Additionally, "Class Counsel's incentive was to control costs as much as possible over the course of this protracted litigation, and there is no evidence they failed to do so." *Spano*, 2016 WL 3791123, at *4; *see also Nolte v. Cigna Corp.*, No. 2:07–CV–2046, 2013 WL 12242015, at *4 (C.D. Ill. Oct. 15, 2013); Gyandoh Decl. ¶ 91; *Krueger*, 2015 WL 4246879, at *3 (recognizing ERISA counsel with contingent fee agreement has a "strong incentive to keep expenses at a reasonable level"). For example, Class Counsel minimized expenses by utilizing its own ERISA expertise where necessary and controlling costs by eliminating travel expenses without sacrificing the national expertise they brought to benefit the Class. The expenses incurred are reasonable and should be rewarded.

Lastly, "the fact that Class Counsel does not seek interest as compensation for the time value of money or costs associated with advancing these expenses to the Class makes this fee request all the more reasonable." *Nolte*, 2013 WL 12242015, at *4; *see also Abbott v. Lockheed Martin Corp.*, No. 06–CV–701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (same).

The costs Counsel expended to provide a benefit to the Class should be reimbursed.

### C. The Requested Case Contribution Awards for Plaintiffs Are Reasonable

"A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [the plaintiffs'] efforts." *Savani v. URS Professional Solutions LLC,* 121 F. Supp. 3d 564, 577 (D.S.C. 2015). "Incentive awards for class

representatives are fairly common" in this Circuit and in ERISA cases. *Chesemore*, 2014 WL 4415919, at *4 (citing *Synthroid I*, 264 F.3d at 722–23). Such awards acknowledge representative plaintiffs' hard work and sacrifices in support of the class, as well as their promotion of the public interest.

Plaintiffs request that Class Representatives Brenda L. Lucero, Heather Barton, Ilona Kompaniiets, and Cynthia Hurtado be granted a Case Contribution Award in compensation for the time and effort they expended in successfully prosecuting this case to a successful resolution. Each of the Class Representatives has been closely involved in this litigation since its inception. They provided documents, reviewed the pleadings, endured depositions, and monitored Class Counsel and the progress of the litigation, including discussions about the terms of the Settlement. *See* Gyandoh Decl. ¶¶ 136-41. Named Plaintiffs have submitted declarations in support of their requests for case contribution awards. The declarations are attached to the Gyandoh Declaration as Exhibits 15 through 18.

Plaintiffs are seeking $10,000 per Plaintiff, awards that are well-deserved and in-line with, or below, the amounts awarded to other ERISA plaintiffs who have shown similar levels of commitment. In *Nolte*, the court awarded "25,000 incentive awards to each of the five Named Plaintiffs" because "the Named Plaintiffs devoted substantial amounts of their own time to benefit the class by responding to document requests, reviewing pleadings, assisting discovery and submitting to lengthy depositions." 2013 WL 12242015, at *4; *see also Beesley*, 2014 WL 375432, at *4 (same); *Krueger*, 2015 WL 4246879, at *3 (same); *Henderson v. Emory Univ.,* No. 16-CV-2920, 2020 WL 9848978, at *4 (N.D. Ga. Nov. 4, 2020) (same); *Spano*, 2016 WL 3791123, at *4 (awarding "$10,000 each to" plaintiffs who were deposed); *Diaz*, 2021 WL 2414580, at *9 ("[T]he $10,000.00 service award to each named Class Representative is reasonable and warranted.").

Plus, "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers." *Id.*; *see also Chesemore*, 2014 WL 4415919, at *5 (granting a case contribution award under similar circumstances in an ERISA case from this Circuit); *Dover v. Yanfeng US Automotive Interior Systems I LLC*, No. 20-cv-11643, 2023 WL 2309762, at *6. (E.D. Mich. Mar. 1, 2023) (awarding in an ERISA case $10,000 to each named plaintiff and noting that "the Court finds that plaintiffs' concerns regarding their future employment prospects are understandable.").

The circumstances of this case justify a $10,000 award for each Plaintiff.

## V. CONCLUSION

Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $158,317.50, approve the reimbursement of litigation expenses in the amount of $95,000, and approve Case Contribution Awards in the amount of $10,000 to each of the three Plaintiffs.

Dated: July 13, 2026

Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
James A. Wells, Esquire
(admitted *pro hac vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com
jamesm@capozziadler.com
jayw@capozziadler.com

*Attorneys for Plaintiffs, the Plan and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: *<u>/s/ Mark K. Gyandoh</u>*
Mark K. Gyandoh, Esq.